IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 17-31646 |
| MONTCO OFFSHORE, INC., *et al.*,[1] | § | |
| | § | Chapter 11 |
| Debtors. | § | |
| | § | (Joint Administration Requested) |

**EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES,
SALARIES, EMPLOYEE BENEFITS, AND OTHER COMPENSATION, (B) MAINTAIN
EMPLOYEE BENEFIT PROGRAMS AND PAY RELATED ADMINISTRATIVE
OBLIGATIONS, AND (C) PAY INDEPENDENT CONTRACTOR OBLIGATIONS,
(II) DIRECTING FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR,
AND PAY ALL CHECKS PRESENTED FOR PAYMENT AND TO HONOR
ALL FUND TRANSFER REQUESTS RELATED TO SUCH OBLIGATIONS,
AND (III) GRANTING RELATED RELIEF**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT
> YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY
> CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF
> YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE
> A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU
> MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE
> DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE
> WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT
> FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED
> WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE
> MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST
> ATTEND THE HEARING. UNLESS THE PARTIES AGREE
> OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
> HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
>
> EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT
> CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU
> WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO
> THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE
> EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU
> SHOULD FILE AN IMMEDIATE RESPONSE.
>
> REPRESENTED PARTIES SHOULD ACT THROUGH THEIR
> ATTORNEY.

---

[1] The Debtors in these chapter 11 cases, together with the last four (4) digits of each Debtor's federal tax identification number, are Montco Offshore, Inc. (1448) and Montco Oilfield Contractors, LLC (9886). The mailing address for the Debtors, solely for the purposes of notices and communications, is 17751 Hwy 3235, Galliano, Louisiana 70354.

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors (the "<u>Debtors</u>") file this *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Employee Benefits, and Other Compensation, (B) Maintain Employee Benefit Programs and Pay Related Administrative Obligations, and (C) Pay Independent Contractor Obligations, (II) Directing Financial Institutions to Receive, Process, Honor, and Pay All Checks Presented for Payment and to Honor All Fund Transfer Requests Related to Such Obligations, and (III) Granting Related Relief* (the "<u>Motion</u>").  In support of this Motion, the Debtors incorporate the statements contained in the *Declaration of Derek C. Boudreaux in Support of Chapter 11 Petitions and First Day Pleadings* (the "<u>First Day Declaration</u>")[2] and respectfully submit the following:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(4), 541, 1107, and 1108 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rules 4002-1 and 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "<u>Local Rules</u>").

## EMERGENCY CONSIDERATION

4.     The Debtors request emergency consideration of this Motion.   The Debtors

---

[2]     Capitalized terms used but not otherwise defined herein are used as defined in the First Day Declaration.

believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and the success of these chapter 11 cases. As discussed in detail below and in the First Day Declaration, any delay in granting the relief requested could hinder the Debtors' operations and cause immediate and irreparable harm. As such, the Debtors believe that emergency consideration is necessary and request that this Motion be heard at the Debtors' first-day hearing.

## BACKGROUND

5.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no request for the appointment of a trustee or examiner has been made and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

6.      Additional information regarding the Debtors and these chapter 11 cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these chapter 11 cases, is set forth in the First Day Declaration.

## RELIEF REQUESTED

7.      By this Motion,[3] the Debtors seek entry of an interim order (the "Interim Order"), substantially in the form attached hereto as **Exhibit A**, and subsequently a final order (the "Final Order"), substantially in the form attached hereto as **Exhibit B**:

---

[3]     Nothing herein shall be deemed to be an assumption of any executory contract that could bind the Debtors in the future. Authorization to pay amounts requested in this Motion shall not be deemed to constitute a postpetition assumption or adoption of any contract, program, or policy pursuant to section 365 of the Bankruptcy Code. Moreover, authorization to pay amounts requested in this Motion shall not affect the Debtors' rights to contest the amount or validity of any claim.

a) authorizing the Debtors to pay

    (i)    all prepetition obligations of the Debtors owing to or on behalf of Employees and Independent Contractors (the "Employee Claims" and "Independent Contractor Claims," respectively), whether accrued or currently due and payable;

    (ii)    all prepetition amounts owed to American Express in connection with charges to the Amex Cards (as defined below); and

    (iii)    all prepetition amounts owed with respect to the Employee Benefits (as defined below), whether accrued or currently due and payable, including payment of all applicable plan administrators and other service providers;

b) authorizing the Debtors to continue Employee Benefits programs; and

c) directing all financial institutions to honor prepetition checks for payment (i) of the Employee Claims and the Independent Contractor Claims, (ii) on account of the Employee Benefits, and (iii) to American Express (collectively, the "Obligations") and prohibiting such financial institutions from placing any holds on, or attempting to reverse, any transfers made to satisfy the Obligations.

8.    In addition, the Debtors request that the Court schedule a final hearing to consider approval of this Motion on a final basis.

## OVERVIEW OF EMPLOYMENT AND COMPENSATION

9.    In the ordinary course of their businesses, the Debtors rely on the services of employed personnel (each, an "Employee" and collectively, the "Employees") to conduct their business operations, and the Debtors incur obligations to or on account of such Employees. Collectively, the Debtors have approximately 35 salaried full-time employees and approximately 70 vessel employees that are paid a day rate.  In the ordinary course of their businesses, the Debtors incur and pay obligations relating to the Employees' salaries, wages, and allowances (the "Compensation Obligations"), which are paid in arrears on the 5th (for days 16-31) and the 20th (for days 1-15) of each month.

10.     The Debtors do not use a third-party payroll administrator to facilitate payment of the Compensation Obligations.  Instead, non-debtor affiliate Montco, Inc. ("MI"), processes payroll, benefits and administration for each of Debtor Montco Offshore, Inc. ("MO") and Debtor Montco Oilfield Contractors, LLC ("MOC").  In advance of each payroll period, MI notifies each of the Debtors regarding how much needs to be funded for payroll, taxes and benefits for the respective Debtor's employees, and each Debtor transfers the necessary funds to MI in advance of the payroll periods.  MI remits the payroll taxes to the appropriate taxing authorities and all Employees are paid by direct deposit from MI.  MI does not receive any administrative fees for the payroll and benefits-related services provided to the Debtors; its role is simply to centralize and manage the system by which Employees are paid.

A.     **Employees**

11.     The Employees provide a variety of management, administrative, operational, and other support services for the Debtors, including, but not limited to, accounting, logistics, governmental compliance, and decommissioning operations.  The Employees' skills and knowledge of the Debtors' infrastructure and operations are essential to the continuation of the Debtors' businesses, and their ongoing, uninterrupted services are vital to the Debtors' operations during the pendency of these chapter 11 cases.

12.     The aggregate semi-monthly payroll for the Employees is approximately $440,000.00.  Because the Debtors have remitted payment to MI for the upcoming payroll period, the Debtors do not believe any amounts are owed to Employees as a result of prepetition wages and salaries.  Nonetheless, the Debtors seek authority to satisfy any unpaid prepetition Compensation Obligations to the extent such obligations exist.

**B.**     **Independent Contractors**

13.     In the ordinary course of their businesses, in addition to the Employees, the Debtors rely on the services of approximately twenty (20) consultants and independent contractors (collectively, the "Independent Contractors") to conduct their business operations, and the Debtors incur obligations to or on account of such Independent Contractors (the "Independent Contractor Obligations").  The Independent Contractors provide valuable services such as support, planning and execution of decommissioning and removal of offshore facilities and are therefore an integral component to the Debtors' businesses.   The Independent Contractors submit bi-monthly invoices to the respective Debtors and are paid bi-monthly in arrears directly from such Debtor.

14.     The aggregate, average bi-monthly payroll for the Independent Contractors is approximately $110,000 and the Debtors estimate that, as of the Petition Date, the Debtors owe approximately this amount on account of the Independent Contractor Obligations.   By this Motion, the Debtors seek authority to pay such prepetition Independent Contractor Obligations.

15.     The Independent Contractors typically submit invoices in arrears, and thus, as of the Petition Date, the Debtors have not paid certain Independent Contractors for prepetition services.  The Debtors believe that approximately three (3) Independent Contractors are owed in excess of the $12,850 statutory priority amounts provided by section 507(a)(4)(A) of the Bankruptcy Code as a result of prepetition wages and salaries.  The Debtors seek authority to satisfy (a) any unpaid prepetition Independent Contractor Obligations up to the $12,850 statutory priority provided by section 507(a)(4)(A) of the Bankruptcy Code during the first 21 days of these chapter 11 cases and (b) any remaining unpaid prepetition Independent Contractor Obligations in excess of the $12,850 statutory priority provided by section 507(a)(4)(A) of the

Bankruptcy Code upon entry of the Final Order.

## C.     Expense Reimbursements

16.     Approximately twenty (20) Employees have been issued American Express Corporate Cards (the "AmEx Cards") pursuant to a *Corporate Services Commercial Account Agreement* with American Express.  Employees may seek reimbursement of certain business expenses, such as travel, meals, operational needs and office supplies, that they incur through using their AmEx Cards in performing their employment duties (collectively, the "Expenses"). Under the agreement with AmEx, Employees are jointly and severally liable for the Expenses. AmEx Cards statements are paid by non-debtor affiliate, Montco, Inc. ("MI"), which remits payment on account of such Expenses.  Each of the Debtors (as well as each other non-debtor affiliate) is responsible for reimbursing MI for expenses incurred by its respective Employees.

17.     Based on the last 12 months of payroll, expense reimbursements for AmEx Card-use ranged between $150,000 to $200,000 per month in the aggregate, though the Debtors expect this number to significantly decrease as a result of certain required layoffs over the past several months.  Because of the irregular nature of requests for expense reimbursements, it is very difficult for the Debtors to determine the amount of unpaid Expenses at any given time.  The Debtors estimate that, as of the Petition Date, American Express is owed approximately $130,000 (of which approximately $120,000 was incurred by the Debtors' employees and approximately $10,000 was incurred by employees of non-debtor affiliates).

18.     It is essential to the continued seamless operation of the Debtors' businesses that the Debtors be permitted to continue to make payments for the charges incurred through use of the AmEx Cards.  Accordingly, the Debtors seeks authority to (a) satisfy any prepetition amounts due and owing to American Express and to reimburse outstanding prepetition Expenses,

(b) continue use of the AmEx Cards and American Express programs in place as of the Petition Date, and (c) continue to pay all amounts due and owing to American Express on account of the Expense reimbursements postpetition in the ordinary course of business.

**D.     Obligations Related to Payroll Taxes**

19.     The Debtors are required by law to withhold from Employees' salaries and wages certain amounts related to federal and state income taxes, social security taxes, Medicare taxes, and other taxes imposed by the law (each, a "<u>Withholding Tax</u>" and collectively, the "<u>Withholding Taxes</u>") and to remit any such withheld amounts to the appropriate taxing authorities (the "<u>Taxing Authorities</u>") according to schedules established by such Taxing Authorities.  The Debtors estimates that, on account of the Payroll Taxes, the Debtors withhold, in the aggregate, approximately $225,000 per month.

20.     As of the Petition Date, the Debtors believe that all prepetition Payroll Taxes have been paid in full.  Nonetheless, out of an abundance of caution, the Debtors seek authority to pay any unpaid prepetition Payroll Taxes, if any, pursuant to this Motion.

**E.     Garnishments and Other Withholdings**

21.     In the ordinary course of processing Employee payroll, the Debtors may be required by law to withhold from certain Employees' wages and salaries amounts on account of tax levies, child support, and court-ordered garnishments (collectively, "<u>Garnishments</u>"). Amounts withheld on account of Garnishments are remitted to the appropriate state and federal authorities.  On average, approximately $2,000 per month is withheld from Employees' salaries and wages on account of Garnishments.  As of the Petition Date, the Debtors believe all prepetition Garnishments have been paid in full.  Nonetheless, out of an abundance of caution, the Debtors seek authority to pay any unpaid prepetition Garnishments pursuant to this Motion.

22.     The Debtors have also in the past withheld certain amounts from certain office personnel employees' paychecks in satisfaction of loans made by the Debtors to such employees. The Debtors seek to continue to withhold such amounts in the ordinary course of business in accordance with prepetition practices.

## OVERVIEW OF EMPLOYEE BENEFIT PLANS

23.     In the ordinary course of their businesses, the Debtors make various benefit plans available to their Employees.  These benefit plans fall within the following categories: (a) paid time off, short-term disability pay, bereavement leave, jury duty leave, maternity/paternity leave, and military leave (together, the "Employee Leave Benefits"); (b) medical, dental, vision, and prescription-drug benefits, life insurance, accidental death and dismemberment ("AD&D") insurance, critical illness, disability, and workers' compensation (together, the "Health and Welfare Benefits"); (c) 401(k) plan pension (the "Retirement Benefits"); and (d) miscellaneous benefits (each of (a) – (d), an "Employee Benefit" and collectively, the "Employee Benefits"). Although the Debtors maintain certain Employee Benefits plans themselves, other Employee Benefits plans, such as the Health and Welfare Benefits plans, are maintained by third parties. By this Motion, the Debtors seek authority to pay any prepetition amounts owed on account of the Employee Benefits and to continue the Employee Benefits postpetition in accordance with prepetition practices.

### A.     Employee Leave Benefits

24.     The Employee Leave Benefits are provided and administered by the Debtors. Eligible Employees accrue paid time off and related benefits as generally described below. Through this Motion, the Debtors seek authority to continue the Employee Leave Benefits postpetition in accordance with prepetition practices.

25.    **Vacation Days**.  Employees employed by the Debtors for less than five (5) years receive one (1) week of vacation days per year and those who have been employed for more than five (5) years receive two (2) weeks of vacation days per year.  Unused vacation days may not be carried over to the next year.  Employees who are terminated are not compensated for accrued but unused vacation days unless otherwise required by law.

26.    **Maternity/Paternity Leave**.  The Debtors provide, among other things, up to 12 weeks of unpaid maternity and paternity leave for eligible Employees in compliance with the Family and Medical Leave Act.

27.    **Short-Term Disability**.  The Debtors also maintain a short-term disability policy for certain eligible Employees for which the Debtors do not make any contributions.  These Employees will continue to be paid 60% of their full compensation during their short term disability leave ("Short-Term Disability").  This type of leave may run concurrently with an Employee's Family and Medical Leave Act leave, and is intended to compensate Employees absent from work because of a "temporary medical disability," which is intended to include extended leave for pregnancy and childbirth.  If an Employee participates in any of the Health and Welfare Benefits plans, the Employee's Short-Term Disability will have no effect on such participation.

28.    **Other**.  The Debtors do not have a formal paid time off policy with respect to sick days, personal days, bereavement leave, jury duty leave, or military leave.  Employees that require days off from work for these matters simply provide notice to the applicable Debtor's management team as soon as practical.

**B.      Health and Welfare Benefits Plans**

29.      The Debtors sponsor several Health and Welfare Benefits plans to provide benefits to eligible Employees.  The Health and Welfare Benefits include medical, vision, dental, and prescription drug plans, life and AD&D insurance, critical illness, long-term disability benefits, workers' compensation, and health spending accounts (collectively, the "Health Benefits Plans").  MI administers the following health benefits plans through various network providers (the "Health Benefits Providers") to eligible Employees and their families:

| Type of Benefits | Network Provider |
|---|---|
| Medical | Blue Cross and Blue Shield of Louisiana |
| Dental | Metlife |
| Vision | Metlife |
| Prescription Drug | Express Scripts, Blue Cross and Blue Shield of Louisiana |
| Life Insurance | Metlife |
| Accidental Death and Dismemberment (AD&D) | Metlife |
| Critical Illness | All State |
| Long Term Disability | Metlife |
| Worker's Compensation | Am. Longshore Mutual Assoc., Ltd. And Manufacturer's Alliance Ins. Co. |

30.      The Debtors maintain a self-insured medical plan that is administered by Blue Cross and Blue Shield of Louisiana ("BCBS").  Each week, the Debtors reimburse BCBS the amount of the actual claims arising under the medical and prescription policies ("Health Benefit Claims") for their respective Employees.  The average monthly prescription claims for the past three (3) months is approximately $35,000 and the average monthly insurance claims paid by the Debtors is approximately $69,000.   In addition, the Debtors pay, through MI, BCBS administrative fees of approximately $3,400 every month.  As of the Petition Date, the Debtors

estimate approximately $10,000 of Health Benefit Claims are outstanding based on historical data, including those which may have not yet been submitted.  The Debtors seek authority to pay such prepetition Health Benefits Claims through this Motion.

31.     The Debtors are required to pay annual premiums in exchange for the remaining benefits provided to Employees who subscribe to the Health Benefits Plans.  Such premiums for the Health Benefits Plans coverage are funded by the Debtors, but also partly subsidized by Employee contributions withheld from paychecks.  In the ordinary course of business, each Health Benefits Plan premium may vary as the number of Employees enrolled in the Health Benefits Plans changes and as the Health Benefits Providers change their prices.

32.     To participate in the Health Benefits Plans, the Debtors are required to pay annual premiums of approximately $36,000 in the aggregate.  All premiums to Health Benefits Providers are paid in advance.  Because the obligations to the Health Benefits Providers are prepaid, the Debtors do not believe any prepetition amounts are owed on account of the Health Benefits Plans.  Nonetheless, out of an abundance of caution, by this Motion, the Debtors seek authority to pay any unpaid prepetition amounts on account of the Health Benefits Plans, including any prepetition amounts owed to BCBS as the claims administrator with respect to the self-insured medical plan.

### i.     COBRA

33.     The Debtors maintain an account with Wageworks, Inc. ("Wageworks") for health insurance under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") benefits to employees who have been terminated.  As of the Petition Date, there are less than five former employees who participate in COBRA insurance.  The Debtors do not pay for the COBRA insurance for these former employees, rather, those costs are paid by the former employees.  The Debtors do pay approximately $100 per month in administrative fees to

Wageworks for administering the COBRA insurance. The Debtors do not believe that any prepetition amounts are owed Wageworks. However, out of an abundance of caution, the Debtors seek authority to pay any prepetition amounts to Wageworks for administering the COBRA benefits through this Motion.

### ii. Life Insurance, AD&D Insurance, Critical Illness Insurance, and Long-Term Disability

34.      The Debtors offer life insurance (the "<u>Life Insurance Plan</u>"), AD&D insurance (the "<u>AD&D Insurance Plan</u>"), critical illness (the "<u>Critical Illness Insurance</u>") and long-term disability benefits (the "<u>Long-Term Disability Plan</u>") to eligible Employees. The Debtors pay (a) approximately $11,000 in premiums each month on account of the Life Insurance Plan, AD&D Insurance Plan, Critical Illness Insurance and Long-Term Disability Plan. Such premiums are paid in advance, and as such, as of the Petition Date, the Debtors do not believe they owe any prepetition amounts with respect to the Life Insurance Plan, AD&D Insurance Plan, Critical Illness Insurance, and Long-Term Disability Plan. Nonetheless, out of an abundance of caution, the Debtors request authority to pay any prepetition amounts with respect to such plans.

### iii. Workers' Compensation

35.      In the ordinary course of business and in the jurisdictions where the Debtors operate, the Debtors are required to maintain workers' compensation insurance. The Debtors maintain two workers' compensation insurance policies which are administered by Am. Longshore Mutual Assoc., Ltd. ("<u>ALMA</u>") and Manufacturer's Alliance Ins. Co. ("<u>Manufacturer's Alliance</u>"). The worker's compensation policy administered by ALMA (the "<u>ALMA Policy</u>") covers the Debtors' Independent Contractors and certain of MO's employees. The maritime employer's policy administered by Manufacturer's Alliance ("<u>Manufacturer's Alliance Policy</u>") covers all remaining employees of the Debtors. The Debtors pay

approximately $40,000 annually for the Manufacturer's Alliance Policy and do not believe that there is any amounts outstanding as of the Petition Date. The Debtors pay approximately $10,000 to $15,000 per month for the ALMA Policy. As of the Petition Date, the Debtors estimate that approximately $12,000 is owed on the ALMA Policy.

36.     The Debtors are not aware of any outstanding prepetition workers' compensation claims and do not believe that any significant prepetition amounts are owed on account of the workers' compensation coverage. As of the Petition Date, the Debtors do not believe that they owe any prepetition amounts with respect to workers' compensation claims. Nonetheless, because payment of the workers' compensation claims is essential to the continued operation of the Debtors' businesses under the laws of the jurisdictions in which they operate, the Debtors seek authority to pay any and all prepetition workers' compensation claims and to continue to fund the workers' compensation insurance policy in the ordinary course of business.

**iv.     Health Flex Spending Accounts**

37.     The Debtors currently have approximately twenty (20) Employees who participate in a health flexible spending account ("FSA") and/or a dependent care FSA. As of the Petition Date, the Debtors contribute approximately $3,000 per month for their employees. The Debtors seek authority to continue contributing to the FSAs through this Motion as an Employee Benefit.

**C.     Retirement Benefits**

38.     The Debtors provide Retirement Benefits to certain eligible Employees. Specifically, the Debtors participate in a 401(k) plan for the benefit of certain eligible Employees (the "401(k) Plan"). Each Employee participant in the 401(k) Plan may elect to contribute a percentage of his or her salary to the 401(k) Plan, subject to limitations under applicable law

(such discretionary contribution, a "Plan Contribution").    The Debtors do not match the Employee's contributions to the 401(k) plan.

39.    The 401(k) Plan is provided and administered by Professional Capital Services. The Debtors estimate that, as of the Petition Date, approximately $20,000 is outstanding on account of the 401(k) Plan owed to Professional Capital Services.    Through this Motion, the Debtors seek authority to pay such prepetition amounts and to continue the 401(k) Plan.    The Debtors estimate that going forward, the cost associated with the 401(k) Plan will range from $20,000 to $30,000 per payroll period.

**D.      Company Vehicles**

40.    The Debtors provide a monthly vehicle allowance to nine of the Debtors' Employees to lease vehicles (the "Company Vehicles") for business and personal use. The monthly vehicle allowance is paid on the first of the month in arrears and range from $750 to $850 per employee.    The Debtors believe approximately $3,500 of prepetition amounts are owed on account of the Company Vehicles.    Through this Motion, the Debtors seek authority to continue providing allowances for and making payments on account of the Company Vehicles consistent with prepetition practices.

**E.      Miscellaneous Benefits**

41.    The Debtors provide certain eligible Employees with other benefits, including, but not limited to, cellular phones and wireless devices (ie. MiFi devices) on the Debtors' phone and data plan (collectively, the "Miscellaneous Benefits).    The Debtors estimate the Miscellaneous Benefits cost approximately $6,500 per month.    The Debtors pay these expenses as they arise in the ordinary course of business and believe that no amounts are owed on account of prepetition

miscellaneous benefits.  However, in an abundance of caution, the Debtors seek authority to pay any prepetition amounts owed on account of the Miscellaneous Benefits.

## BASIS FOR RELIEF

42.     Under section 507(a)(4)(A) of the Bankruptcy Code, claims of employees against a debtor for "wages, salaries, or commissions, including vacation, severance, and sick leave pay," that are "earned within 180 days before" the date on which a debtor's chapter 11 case is commenced are afforded priority unsecured status up to $12,850 per individual. 11 U.S.C. § 507(a)(4)(A).  Similarly, under section 507(a)(5) of the Bankruptcy Code, employees' claims for contributions to certain employee benefits plans are also afforded priority unsecured status to the extent of $12,850 per employee covered by such plans, less any amount paid pursuant to section 507(a)(4) of the Bankruptcy Code. 11 U.S.C. § 507(a)(5).

43.     Under section 363(b)(1) of the Bankruptcy Code, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code and the doctrine of necessity,[4] the bankruptcy court may exercise its broad grant of equitable powers to permit the payment of prepetition obligations when such payment is essential to the continued operation of the debtor's business.  *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that

---

[4]     Although the "necessity of payment" doctrine has been widely accepted, the Court in *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) developed an alternative test to determine whether payment of certain pre-petition unsecured claims prior to confirmation of a plan of reorganization would be appropriate.  Under the CoServ test, a debtor must show that (a) it is critical that the debtor deal with the claimant; (b) unless the debtor deals with the claimant, the debtor risks the probability of harm, or alternatively, loss of economic advantage to the estate of the debtor's going concern value, which is disproportionate to the amount of the claimant's pre-petition claim; and (c) there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.  *Id.; see also In re Scotia Dev., LLC*, No. 07-20027, 2007 WL 2788840 (Bankr. S.D. Tex. Sept. 21, 2007).  Although the CoServ analysis appears to be applicable only to the treatment of pre-petition vendor claims, the payment of the Employee Claims would satisfy the CoServ test.

section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court . . . recognize[s] the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"). Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first twenty-one days of a case where doing so is "necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003.

## A. Payment of the Obligations is Essential to the Debtors' Continued Operations.

44.     The Employees and Independent Contractors are essential to the Debtors' businesses. Any delay in paying or failure to pay the Obligations could irreparably impair the morale of the Debtors' workforce at the time when their dedication, confidence, retention, and cooperation are most crucial. It could also inflict a significant financial hardship on their families. The Debtors cannot risk such a substantial disruption to their business operations, and it is inequitable to put the Employees and Independent Contractors at risk of such hardship.

45.     Payment of the Obligations in the ordinary course of business would enable the Debtors to focus on continuing to operate during the pendency of these chapter 11 cases, which would benefit all parties in interest. Without this relief, otherwise loyal Employees and Independent Contractors may seek other work opportunities, thereby putting at risk the Debtors' continued operations throughout the enterprise. Payment of the Obligations will enable the Debtors to continue to operate their businesses in an economic and efficient manner without disruption.

46.     Payment of Payroll Taxes would not prejudice other creditors because Payroll Taxes generally give rise to priority claims under section 507(a)(8) of the Bankruptcy Code. In any event, Payroll Taxes that the Debtors withhold are held in trust for the Taxing Authorities.

The withheld funds are not property of the Debtors' estates under section 541 of the Bankruptcy Code. *See Begier v. IRS*, 496 U.S. 53, 66-67 (1990) (concluding that withholding taxes are property held by a debtor in trust for another and are therefore not property of the debtor's estate).

47.     Payment of administrative fees to the administrators of the Employee Benefit plans is also necessary. Without the continued service of these administrators, the Debtors will be unable to continue to honor their obligations to Employees under the Employee Benefit plans. This Motion requests only permission for the Debtors, in their discretion, to (a) make payments consistent with existing policies to the extent such payments could otherwise be inconsistent with the provisions of the Bankruptcy Code and (b) continue to honor practices, programs, and policies with respect to Employees as such were in effect before the Petition Date.

48.     In these chapter 11 cases, prepetition Employee Obligations and Independent Contractor Obligations constitute priority claims under sections 507(a)(4) and (a)(5) of the Bankruptcy Code. As of the Petition Date, the Debtors (a) do not believe any Employees are owed in excess of $12,850; and (b) believe approximately three (3) Independent Contractors are owed in excess of $12,850. As priority claims, the Employee Obligations and Independent Contractor Obligations must be paid in full before the Debtors may make distributions on account of their general unsecured obligations.

49.     To the extent that any Employee or Independent Contractor is in fact owed any amount that either exceeds the statutory threshold or otherwise is not covered by sections 507(a)(4) or (a)(5) of the Bankruptcy Code, the payment of such amount is both necessary and appropriate to administer the Debtors' estates and may be authorized under sections 363(b) and 105(a) of the Bankruptcy Code pursuant to the doctrine of necessity. The Debtors cannot

operate their businesses without their Employees and Independent Contractors.  Failure to pay any amounts owed for work they have already performed would be strongly detrimental to the morale of the Debtors' workforce and could cause a crisis of confidence among them.  The Debtors cannot be put at risk of such avoidable instability in their businesses.  Accordingly, the Court should authorize the Debtors to pay all amounts currently owed to their Employees and Independent Contractors.

50.     Bankruptcy courts in the Fifth Circuit have granted authority for a debtor's payment of obligations similar to the Obligations described herein.  *See, e.g.*, *In re Goodrich Petroleum Corporation*, No. 16-31975 (MJI) (Bankr. S.D. Tex. May 4, 2016); *In re RAAM Global Energy Co.*, No. 15-35615 (MJI) (Bankr. S.D. Tex. Oct. 28, 2015); *In re Univ. Gen. Health Sys., Inc.*, No. 15-31086 (LZP) (Bankr. S.D. Tex. Mar. 2, 2015); *In re ATP Oil & Gas Corp.*, No. 12- 36187 (MJI) (Bankr. S.D. Tex. Aug. 21, 2012).

**B.     The Debtors' Banks Should be Authorized to Honor Checks, Wire Transfers, and Electronic Fund Transfers.**

51.     The Debtors have sufficient liquidity to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks, wire transfers, or electronic fund transfer requests as relating to an authorized payment in respect of the payments requested to be made through this Motion.  Accordingly, the Debtors believe that checks, wire transfers, and electronic transfer requests, other than those relating to authorized payments, will not be honored inadvertently.

52.     The Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and

all checks, wire transfers, or electronic fund transfer requests in respect of the relief requested in this Motion. Further, the Debtors also seek authority to issue new postpetition checks, wire transfers, or electronic funds transfer requests to replace any prepetition checks, wire transfers, or electronic funds transfers that may be dishonored or rejected as a result of the commencement of these chapter 11 cases.

## REQUEST FOR IMMEDIATE RELIEF

53.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the petition date "to the extent that relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. For the reasons discussed herein and in the First Day Declaration, authorizing the Debtors to, among other things, pay prepetition amounts owed on account of the Compensation Obligations, Independent Contractor Obligations and Employee Benefits and to continue the Employee Benefits plans in the ordinary course of business, as well as granting the other relief requested herein, is critical to enabling the Debtors to effectively transition to operating as chapter 11 debtors and to preserve their business operations. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations. For the reasons discussed herein and in the First Day Declaration, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

54.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

55.     The Debtors expressly reserve, and do not waive, any and all rights with respect to the relief requested in this Motion, including, but not limited to: (a) the right to dispute the amount, validity, or priority of any and all liens, claims, or causes of action asserted against their estates on any basis; and (b) the right to assert that any postpetition actions taken by any creditor or party in interest are in violation of any laws or provisions of the Bankruptcy Code, specifically including section 362 of the Bankruptcy Code.  In addition, nothing in this Motion or the relief requested herein should be interpreted as the assumption or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.

## NOTICE

56.     Notice of this Motion has been provided by delivery to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) each of the Debtors' 20 largest unsecured creditors; (c) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (d) the Internal Revenue Service; (e) all plan administrators and service providers referenced herein; (f) counsel to the Prepetition Agent and the Prepetition Lenders; and (g) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules.  In light of the nature of the relief requested in this Motion, the Debtors submit that no further notice is necessary.

**NO PRIOR REQUEST**

57.     No prior motion for the relief requested herein has been made to this Court or any

other court.

**CONCLUSION**

The Debtors respectfully request that the Court enter the Interim Order and the Final

Order, substantially in the forms attached hereto as **Exhibits A** and **B**, respectively, and grant

such other and further relief to which the Debtors may be justly entitled.

Dated:  March 17, 2017          **DLA PIPER LLP (US)**
        Houston, Texas

By:  */s/ Vincent P. Slusher*
     Vincent P. Slusher (State Bar No.
     00785480)
     DLA Piper LLP (US)
     1717 Main Street, Suite 4600
     Dallas, Texas 75201-4629
     Telephone: (214) 743-4500
     Facsimile: (214) 743-4545
     vince.slusher@dlapiper.com

     -and-

     David E. Avraham (*pro hac vice* pending)
     Adam C. Lanza (*pro hac vice* pending)
     DLA Piper LLP (US)
     444 W. Lake Street, Suite 900
     Chicago, Illinois 60606-0089
     Telephone: (312) 368-4000
     Facsimile: (312) 236-7516
     david.avraham@dlapiper.com
     adam.lanza@dlapiper.com

     *Proposed Counsel for the Debtors and*
     *Debtors in Possession*

## **CERTIFICATE OF SERVICE**

I certify that on March 17, 2017, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/Vincent P. Slusher*
Vincent P. Slusher