# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 17-31646** |
| **MONTCO OFFSHORE, INC.,** *et al.*,[1] | § | |
| | § | **Chapter 11** |
| **Debtors.** | § | |
| | § | **(Jointly Administered)** |

**ORDER (I) APPROVING (A) BIDDING PROCEDURES GOVERNING
SUBMISSION AND CONSIDERATION OF COMPETING TRANSACTIONS,
(B) BIDDING PROTECTIONS, (C) FORM AND MANNER OF NOTICE OF SALE
TRANSACTION AND SALE HEARING, AND (D) ASSUMPTION AND ASSIGNMENT
PROCEDURES FOR ANY TRANSFERRED CONTRACTS; (II) (A) SCHEDULING
AND AUTHORIZING DEBTOR TO CONDUCT AN AUCTION PURSUANT TO THE
BIDDING PROCEDURES, AND (B) AUTHORIZING DEBTOR TO ENTER INTO
THE PURCHASE AGREEMENT TO IMPLEMENT THE BIDDING
PROTECTIONS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Debtor Montco Offshore, Inc. (the "Debtor" or

"MOI") for entry of an order (I) approving (A) the bidding procedures governing the submission

and consideration of competing bids (individually, a "Competing Transaction" and, collectively,

the "Competing Transactions") for the purchase of substantially all of the Debtor's assets (the

"Purchased Assets"), in the form attached hereto as **Exhibit 1** (the "Bidding Procedures"),

(B) certain bidding protections for Falcon Global USA LLC ("Falcon USA" or the "Stalking

Horse"), (C) the form and manner of notice of the Auction, the acquisition of the Purchased

Assets (each as defined herein and, such sale, the "Proposed Transaction"), and a hearing to

approved the Proposed Transaction or a Competing Transaction (the "Sale Hearing"), and

---

[1]    The Debtors in these chapter 11 cases, together with the last four (4) digits of each Debtor's federal tax
       identification number, are Montco Offshore, Inc. (1448) and Montco Oilfield Contractors, LLC (9886). The
       mailing address for the Debtors, solely for the purposes of notices and communications, is 17751 Hwy 3235,
       Galliano, Louisiana 70354.

[2]    Capitalized terms not otherwise defined herein shall carry the meaning ascribed to such terms in the Motion.

(D) the procedures for assuming and assigning any executory contracts or unexpired leases in connection with the Proposed Transaction or a Competing Transaction, as applicable; (II) (A) authorizing and scheduling an auction for Competing Transactions (the "Auction"), if any, and the Sale Hearing, and (B) authorizing the Debtor to enter into the Purchase Agreement to the extent necessary to implement the Bidding Protections; (III) authorizing (A) the sale of Purchased Assets free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code and (B) the assumption and assignment of any executory contracts or unexpired leases transferred in connection with the Proposed Transaction or a Competing Transaction, as applicable; and (IV) granting related relief, all as more fully described in the Motion; and upon the record of the hearing held to consider the relief requested in the Motion (the "Hearing"); and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this case is proper before this Court pursuant to 28 U.S.C. § 1408.

B.      The Debtor has provided due and proper notice of the Motion and the relief requested therein, including, without limitation, the Bidding Procedures and the Bidding Protections, and no further notice is required except as set forth herein and in the Bidding Procedures.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

C.      The Debtor has articulated good and sufficient reasons for the Court to approve the Bidding Procedures.  Such good and sufficient reasons set forth in the Motion and as further

represented on the record of the Hearing are incorporated by reference herein, and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

D.      The Stalking Horse bid represents the highest and best offer the Debtor has received to date to purchase the Purchased Assets.

E.      Pursuit of the Stalking Horse as a "stalking horse" and its agreement as a "stalking-horse sale agreement" is in the best interests of the Debtor and its estate and creditors and is a sound exercise of the Debtor's business judgment.  The Purchase Agreement will enable the Debtor to secure a fair and adequate baseline price for the Purchased Assets and, accordingly, will provide a clear benefit to the Debtor's estate.

F.      The Debtor has demonstrated a compelling and sound business justification for the Court to approve (i) the Bidding Procedures, (ii) the Bidding Protections, (iii) the form and manner of notice of the Proposed Transaction, the Auction and the Sale Hearing, if any, and (iv) entry into the Purchase Agreement.

G.      The Bidding Procedures are commercially reasonable, necessary and appropriate, and represent the best method for maximizing the realizable value of the Purchased Assets.  The Bidding Procedures were negotiated at arms'-length and in good faith between the Debtor and the Stalking Horse.  The Stalking Horse has conditioned its bid on the terms and conditions of the Purchase Agreement, including the Break-Up Fee and Expense Reimbursement (together, the "Bidding Protections"), as described in the Bidding Procedures attached hereto as **Exhibit 1**.

H.      The Bidding Protections are fair and reasonable, were negotiated at arms'-length and in good faith, and provide a significant and demonstrable benefit to the Debtor's estate, creditors, equity interest holders and other stakeholders.

I.      The Debtor's obligations to make the payments or other conveyances required by the Bidding Protections, both under this Order and upon the conditions set forth in the Purchase Agreement, are (i) actual and necessary costs of preserving the Debtor's estate within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) of substantial benefit to the Debtor's estate, (iii) reasonable and appropriate, including in light of the size and nature of the Proposed Transaction, and the efforts that have been and will be expended by the Stalking Horse in connection with the Proposed Transaction, and (iv) a material inducement for, and condition necessary to ensure that, the Stalking Horse pursues the Proposed Transaction.

J.      The Procedures Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction, if any, and Sale Hearing, if any, and the Proposed Transaction free and clear of any liens, claims, encumbrances or interests pursuant to section 363(f) of the Bankruptcy Code, and any and all objection deadlines related thereto, and no other further notice shall be required for the Sale Motion, the Proposed Transaction, and the Bidding Procedures.

K.      Entry of this Order is in the best interests of the Debtor and its estate, creditors, interest holders and all other parties in interest.

L.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

M.      To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

**THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      All objections filed in response to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections are specifically overruled in all respects on the merits.

<u>**Notice of Sale Transaction**</u>

3.      The Procedures Notice, substantially in the form attached hereto as <u>**Exhibit 2,**</u> is approved.

4.      All parties in interest shall receive or be deemed to have received good and sufficient notice of (i) the Motion, (ii) the sale of the Purchased Assets (as set forth under the Purchase Agreement) free and clear of all liens, claims, encumbrances, or other interest pursuant to section 363 of the Bankruptcy Code, (iii) the Bidding Procedures, and (iv) the Auction and Sale Hearing, if any, and no further notice of the foregoing shall be required, if:

> a.  As soon as practicable, but no later than one (1) business day after entry of this Order, the Debtor causes the Procedures Notice to be filed with the Court and served by email, mail, facsimile or overnight delivery on: (i) counsel for the Stalking Horse; (ii) the Office of the United States Trustee for the Southern District of Texas; (iii) counsel to the Committee; (iv) counsel to the First Lien Agent; and (v) all other persons requesting notice under Bankruptcy Rule 2002 or as directed by the Court (for whom identifying information and addresses are available to the Debtor); and

> b.  As soon as practicable, but no later than one (1) business day after entry of this Order, the Debtor causes the Sale Notice to be published on the website of the Debtor's claims and noticing agent.

**Debtor's Entry Into the Purchase Agreement**

5.      The Debtor is authorized to enter into the Purchase Agreement, a copy of which is attached hereto as **Exhibit 3**, and any other related transaction documents contemplated thereunder consistent with the terms and conditions of the Purchase Agreement, and the Purchase Agreement is hereby approved solely to the extent necessary to implement the Bidding Procedures, including the Bidding Protections.

**Approval of the Bidding Procedures**

6.      The Bidding Procedures, attached hereto as **Exhibit 1**, are incorporated herein and approved in their entirety and shall apply with respect to any bids for, and the Auction and sale of, the Purchased Assets.  For the avoidance of doubt, the failure to specifically include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

7.      The Debtor is authorized to take or to refrain from taking any and all actions necessary or appropriate to implement the terms of the Bidding Procedures and the relief granted in this Order, without further order of the Court.

8.      The deadline for submitting a Qualified Bid (as defined in the Bidding Procedures) shall be **December 14, 2017 at 4:00 p.m.** (prevailing Central Time) (the "Bid Deadline").

9.      If the Stalking Horse bid is the only Qualified Bid for the Purchased Assets that is received by the Debtor by the Bid Deadline, (i) no Auction will be conducted for the Purchased Assets and the Stalking Horse will be the Winning Bid (as defined in the Bidding Procedures) for the Purchased Assets, and (ii) the Debtor shall file and serve, by **10:00 p.m. (prevailing Central**

**Time) on December 14, 2017**, (x) a notice indicating that the Auction has been cancelled with respect to the Purchased Assets and that the Stalking Horse is the Winning Bidder (as defined in the Bidding Procedures), (y) a notice seeking approval of the Purchase Agreement and proposed transaction, and (z) a proposed sale order (the "<u>Sale Order</u>") authorizing and approving the Purchase Agreement substantially in the form attached hereto as **<u>Exhibit 4</u>**.

10.     If one or more Qualified Bids has been submitted for a Competing Transaction in accordance with these Bidding Procedures, the Debtor will conduct an Auction on **December 15, 2017, at 10:00 a.m.** (prevailing Central time) at the offices of its co-counsel, DLA Piper LLP (US), 1000 Louisiana Street, Suite 2800, Houston, Texas 77002-5005, or such other location as may be announced prior to the Auction.  Within one (1) day of the designation of the Winning Bid, the Debtor shall file a notice of the Winning Bid, along with copies of the proposed purchase agreement and proposed Sale Order.

11.     The Court will conduct the Sale Hearing on **December 19, 2017 at 3:00 p.m. (prevailing Central Time)** or as soon thereafter as counsel may be heard, at which time the Court shall consider approval of the Proposed Transaction or a Competing Transaction, as applicable, and the entry of the applicable Sale Order.

12.     The Sale Hearing may be adjourned or rescheduled by the Debtor in its discretion (with consent of the Winning Bidder) without notice or with limited and/or shorten notice to parties, including by (i) an announcement of such adjournment on the record of the Sale Hearing or at the Auction, or (ii) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing.

## Approval of Bidding Protections

13.     The Debtor is hereby authorized to pay or otherwise provide the Stalking Horse with the Bidding Protections, and the Bidding Protections are hereby approved as an administrative expense against the Debtor's estate pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code payable pursuant to the terms and conditions of the Purchase Agreement as amended by the Bidding Procedures attached hereto, without further order of the Court.

14.     The Debtor's obligation to pay or otherwise carry out the terms of the Break-Up Fee and Expense Reimbursement, as provided by this Order and the Purchase Agreement, shall survive termination of the Purchase Agreement, the DIP Financing, any other loan agreement, or any other definitive agreement consistent with the terms and conditions of the Purchase Agreement that is executed by the Debtor and the Stalking Horse.

15.     Except for the Stalking Horse, no other party submitting an offer for a Competing Transaction (as defined in the Bidding Procedures), whether or not a Qualified Bid (as defined in the Bidding Procedures) shall be entitled to any expense reimbursement, break-up fee, termination fee, or similar fee or payment.

16.     The Debtor's obligations with respect to the Break-Up Fee and Expense Reimbursement under this Order and the Purchase Agreement, shall survive confirmation of any plan of reorganization or discharge of claims thereunder.

17.     Notwithstanding anything contained herein to the contrary, the Expense Reimbursement shall be paid in accordance with the Purchase Agreement as amended by the attached Bidding Procedures and after (a) counsel to either MOI or the Stalking Horse provides counsel to each of (i) the Debtor, (ii) the U.S. Trustee, and (iii) the Committee (with email being sufficient) ten (10) days' notice of a summary statement of the Stalking Horse Expenses (as

defined in the Bidding Procedures), and (b) there are no timely objections provided in accordance with this Paragraph with respect to the reasonableness of such Stalking Horse Expenses submitted by (i) the Debtor, (ii) the U.S. Trustee, or (iii) the Committee during such ten (10) day notice period.  To the extent there are any timely objections to the Stalking Horse Expenses, such objections must be sent in writing to the Stalking Horse and the Debtor such that they are received within the ten (10) day notice period (with email being sufficient), be specific and detailed, and relate solely to the reasonableness of the Stalking Horse Expenses.  If the Debtor, the U.S. Trustee, or the Committee submits an objection(s) to any portion of the Stalking Horse Expenses in accordance with this Paragraph, the parties shall seek to resolve such objection(s) consensually over a five (5) day period (the "Resolution Period"); *provided, however*, that if such objections are not resolved consensually during the Resolution Period, then the parties shall jointly move the Court for expedited consideration of any such unresolved objections.  Notwithstanding anything to the contrary herein, the Debtor shall pay any undisputed portion of the Expense Reimbursement fourteen (14) days after the initial presentment to the Debtor of the applicable summary statement.

## Executory Contracts and Unexpired Leases

18.     As soon as practicable, but not later than two (2) business days following entry of this Order, the Debtor shall file a schedule of cure obligations (the "Cure Schedule") for any executory contract or unexpired lease, if any, that the Debtor has identified to potentially be assumed and assigned in connection with the Potential Transaction or a Competing Transaction (each, an "Assumed and Assigned Agreement").  The Cure Schedule shall include: (i) a summary description of each Assumed and Assigned Agreement; and (ii) the amount, if any, the Debtor believes would be necessary to cure defaults under each Assumed and Assigned

Agreement pursuant to Sections 365(b)(1) and 365(f)(2)(A) of the Bankruptcy Code (the "Cure Costs").  Listing an executory contract or unexpired lease on the Cure Schedule does not mean that the Winning Bidder ultimately will identify such agreement to be assumed and assigned in connection with consummation of the Potential Transaction or a Competing Transaction, as applicable.  In addition, inclusion of any document in the Cure Schedule does not constitute, and is not deemed to be, a determination or admission by the Debtor or the Winning Bidder that such document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code.  The Cure Schedule may be amended or supplemented by the Debtor from time to time.

19.     The Debtor shall serve a copy of the relevant portion of the Cure Schedule, together with a notice of assumption and assignment (an "Assumption and Assignment Notice") on each of the non-Debtor counterparties to the Assumed and Assigned Agreements listed on the Cure Schedule by first class mail on the date that the Cure Schedule is filed with the Court.

20.     Objections to the Cure Costs set forth in the Cure Schedule must be in writing, state the basis of such objection with specificity and be filed with the Court, and served upon counsel to the Debtor so be actually received on or before the date that is five (5) business days after service of the Assumption and Assignment Notice.

21.     Unless a non-Debtor party to an assumed and assigned agreement has timely and properly filed and served an objection to the assumption and assignment of its Assumed and Assigned Agreement or the Cure Costs, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-Debtor parties to the Assumed and Assigned Agreements for all purposes in the Bankruptcy Cases and shall constitute a final determination of the total Cure Costs required to be paid in connection with the assumption and assignment of the Assumed and Assigned Agreements (unless a portion of such costs are paid or satisfied in any manner, in

which case the Cure Costs shall be reduced).  In addition, absent a timely and properly filed and served objection, all non-Debtor counterparties to the Assumed and Assigned Agreements shall (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assumed and Assigned Agreements, and the Debtor and the Winning Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; and (ii) be forever barred, estopped and permanently enjoined from asserting or claiming against the Debtor, any Winning Bidder, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed and Assigned Agreement or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Agreement.

22.     If a non-Debtor counterparty to an Assumed and Assigned Agreement files an objection asserting a cure amount higher than the proposed Cure Amounts (the "Disputed Cure Amounts"), then (i) to the extent that the parties are able to consensually resolve the Disputed Cure Amounts prior to the Sale Hearing, the Debtor shall promptly provide the U.S. Trustee, the Stalking Horse, counsel to the Committee, and the First Lien Agent (collectively, the "Consultation Parties") with notice and an opportunity to object to such proposed resolution; or (ii) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing or the Consultation Parties raise an objection, the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount shall be determined at the Sale Hearing or at such other date and time as may be fixed by this Court.  All other objections to the proposed assumption and assignment of an Assumed and Assigned Agreement shall be heard at the Sale Hearing.

23.     Parties who wish to object solely to the assignment of the Assumed and Assigned Agreements to the Winning Bidder (including on the basis of adequate assurance of future performance as required by Section 365(f)(2)(B) of the Bankruptcy Code) may do so on the record of the Sale Hearing.

**Miscellaneous**

24.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or the Proposed Transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to a jury trial in connection with any disputes relating to the any of the foregoing matters.

25.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

26.     To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

27.     This Order shall be binding on all successors and assigns, including any trustee appointed in this chapter 11 case.

28.     Nothing in this Order shall be deemed to be an approval of the Proposed Transaction or any Competing Transaction (except to the extent necessary to implement the Bidding Procedures, including the Bidding Protections), and parties in interest reserve all rights to object to approval of the Proposed Transaction or any Competing Transaction.

29.     The Debtor and its professionals shall use best efforts to facilitate any potential bidder's request to confer with the First Lien Agent with respect to such party's potential Bid. Notwithstanding the foregoing, the First Lien Agent shall have no obligation, and is not directed, to confer with any potential bidder.

30.     Objections to approval of the sale of the Purchased Assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code to the Winning Bidder, must be in writing, state the basis of such objection with specificity and be filed with this Court and served so as to be actually received by the following parties on or before (x) if there is no Auction and the Stalking Horse is the Winning Bidder, **December 15, 2017 at 10:00 p.m.** (prevailing Central Time) (the "Stalking Horse Objection Deadline"), or (y) if an Auction is conducted, **December 18, 2017 at 4:00 p.m.** (prevailing Central Time) (the "Other Objection Deadline"): (i) Montco Offshore, Inc., Attn: Derek C. Boudreaux, 17751 Hwy 3235, Galliano, Louisiana 70354, (ii) co-counsel to the Debtors, DLA Piper LLP (US), Attn: David Avraham, 444 W. Lake Street, Suite 900, Chicago, Illinois 60606, and Drinker Biddle & Reath LLP, Attn: Vince Slusher, 1717 Main Street, Suite 5400, Dallas, Texas 75201, (iii) the Office of the United States Trustee for the Southern District of Texas, Attn: Stephen Statham, 515 Rusk Street, Ste. 3516, Houston, Texas 77002, (iv) counsel to the Committee Porter Hedges LLP, Attn: Joshua Wolfshohl, 1000 Main Street 36th Floor, Houston, Texas 77002, and (v) counsel for the First Lien Agent Norton Rose Fulbright US LLP, Attn: Kristian Gluck, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201.

31.     A party that fails to timely file an objection by the Stalking Horse Objection Deadline or Other Objection Deadline, as applicable, shall be (i) forever barred from asserting any objection to entry of the Sale Order or consummation of the Proposed Transaction or

Competing Transaction, as applicable, and (ii) deemed to have consented to entry of the Sale Order and consummation of the Proposed Transaction or Competing Transaction, as applicable, without limitation, for purposes of Section 363(f) of the Bankruptcy Code.

32.     Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply.

33.     This Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.

Dated: November ___, 2017
Houston, Texas

**THE HONORABLE MARVIN ISGUR**
**UNITED STATES BANKRUPTCY JUDGE**

## EXHIBIT 1

**(Bidding Procedures)**

**BIDDING PROCEDURES**

On March 17, 2017, Montco Offshore, Inc. ("MOI") and Montco Oilfield Contractors, LLC ("MOC") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The bankruptcy cases of MOI and MOC are jointly administered under Case No. 17-31646 (together, the "Bankruptcy Cases"), and are currently pending before the Honorable Marvin Isgur in the United States District Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"). Each Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

As part of their chapter 11 strategy, MOI is seeking to sell all or substantially all of its assets for the highest or best offer. A stalking horse bid (the "Stalking Horse Bid") has been submitted by Falcon Global USA LLC (and, together with, any other person or entity that is a permitted assignee of the Stalking Horse under the Purchase Agreement, the "Stalking Horse"). MOI and the Stalking Horse have finalized an asset purchase agreement (the "Purchase Agreement") for the purchase of substantially all of MOI's assets (as described in the Purchase Agreement, the "Purchased Assets").

The Stalking Horse Bid is subject to higher or better offers submitted in accordance with the terms and conditions of these Bidding Procedures and the Purchase Agreement. These Bidding Procedures describe, among other things: (A) the procedures for bidders to submit bids for the Purchased Assets; (B) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below); (C) the conduct of a subsequent auction for the Purchased Assets (an "Auction"), if necessary; and (E) the ultimate selection of the Winning Bidder(s) (as defined below) and Court approval thereof (collectively, the "Bidding Process").

The Debtor reserves the right to extend any of the dates set forth in these Bidding Procedures without further Order of the Bankruptcy Court subject to providing notice as described below; *provided, that* nothing herein shall authorize the Debtor to unilaterally extend the Bid Deadline or any date or deadlines set forth in the Purchase Agreement without the consent of the Stalking Horse.

For information regarding any of the Purchased Assets, contact the following persons:

> Houlihan Lokey, Inc.
> Attn: Adam Dunayer and Michael Boone
> 100 Crescent Court, Suite 900, Dallas, Texas 75201
> Tel. (214) 220-8497
> email: ADunayer@HL.com and MBoone@HL.com

**Summary of Important Dates**

| Date | Event |
|---|---|
| **December 14, 2017 at 4:00 p.m.**<br><br>(prevailing Central Time) | Bid Deadline |
| **December 19, 2017 at 3:00 pm.**<br>(prevailing Central Time) | Sale Hearing |
| *If the Debtor does not Receive a Qualified Bid in respect of the Purchased Assets* | |
| **December 14, 2017** at 10:00 p.m.<br><br>(prevailing Central Time) | Deadline to file<br><br>• Notice of Cancellation of Auction<br><br>• Notice Seeking Approval of the Purchase Agreement and Sale Transection<br><br>• A proposed Sale Order |
| **December 15, 2017 at 10:00 p.m.**<br><br>(prevailing Central Time) | Deadline to object to the sale of the Purchased Assets to the Stalking Horse |
| *If the Debtor receives a timely Qualified Bid in respect of the Purchased Assets* | |
| **December 15, 2017 at 10:00 a.m.** | Auction Date |
| **December 16, 2017 at 10:00 p.m.**<br>(prevailing Central Time) | Deadline for Debtor to file and service notice of Winning Bidder<br><br>Deadline to submit a proposed Sale Order |
| **December 18, 2017 at 4:00 p.m.**<br>(prevailing Central Time) | Deadline to object to the sale of the Purchased Assets to the Winning Bidder |

A.      **Definitions**

        1.      Subject to paragraph 2 hereof, all capitalized terms used but not otherwise defined herein shall have the meanings given to them in:

                a.      first, the *Order (I) Approving (A) Bidding Procedures Governing Submission and Consideration of Competing Transaction, (B) Bidding Protections (C) Form and Manner of Notice of Sale Transaction and Sale*

*Hearing, and (D) Assumption and Assignment Procedures for Any Transferred Contracts; (II) (A) Scheduling and Authorizing Debtor to Conduct an Auction Pursuant to the Bidding Procedures, and (B) Authorizing Debtor to Enter Into the Purchase Agreement to Implement the Bidding Procedures; and (III) Granting Related Relief* entered December [4], 2017 [ECF. No. ___] (the "Bid Procedures Order");

b.      second, if not defined in the Bid Procedures Order, *Emergency Motion of Debtor Montco Offshore, Inc. for an Order (I) Approving (A) Bidding Procedures Governing Submission and Consideration of Competing Transaction, (B) Bidding Protections (C) Form and Manner of Notice of Sale Transaction and Sale Hearing, and (D) Assumption and Assignment Procedures for Any Transferred Contracts; (II) (A) Scheduling and Authorizing Debtor to Conduct an Auction Pursuant to the Bidding Procedures, and (B) Authorizing Debtor to Enter Into The Purchase Agreement to Implement the Bidding Procedures; (III) authorizing (A) the sale of Purchased Assets free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code, and (B) the Assumption and Assignment of any Transferred Contracts; and (IV) granting related relief* dated November 24, 2017 2017 [ECF. No. ___] (the "Bid Procedures Motion"); and

c.      third, if not defined in the Bidding Procedures Order or the Bidding Procedures Motion, title 11 of the United States Code (as amended, the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as applicable.

2.      Notwithstanding the definitions that may appear in the Bidding Procedures Order or Bidding Procedures Motion, as used in these Bidding Procedures, the terms below are defined as follows:

a.      "Affiliate" means, with respect to any person or entity, any other person or entity that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such person or entity, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such person or entity, whether through ownership of voting securities, by contract or otherwise.

b.      "Bankruptcy Case" means the chapter 11 case of the Debtor pending before the Bankruptcy Court as Case No. 17-31646.

c.      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, before which the Bankruptcy Case is pending.

d.   "<u>Bid</u>" means a signed document from a Potential Bidder received by the Bid Deadline (defined below) that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid or sale transaction.

e.   "<u>Break-Up Fee</u>" means 3% of the Credit Bid Amount.

f.   "<u>Claims Assignment Agreement</u>" means that certain agreement between the Stalking Horse, the lenders under the MOI's first lien prepetition facility (the "<u>First Lien Facility</u>") and debtor-in-possession financing facility (the "<u>DIP Facility</u>"), and JPMorgan Chase Bank, N.A., as agent under the First Lien Facility and DIP Facility (the "<u>First Lien Agent</u>" and, collectively, the "<u>Secured Lenders</u>") under which the Secured Lenders agree to sell, assign, and transfer all of their respective rights, title, interest, and obligations in, to, and under the DIP Facility and the First Lien Facility, as applicable, against the Debtor to effectuate the Proposed Transaction.

g.   "<u>Committee</u>" means the Official Committee of Unsecured Creditors appointed in the Debtor's Chapter 11 Case.

h.   "<u>Debtor</u>" or "<u>MOI</u>" means Montco Offshore, Inc.

i.   "<u>Expense Reimbursement</u>" means the amount of the reasonable, out-of-pocket costs, fees and expenses of the Stalking Horse or any of its Affiliates (including legal, financial advisory, accounting, and other similar costs, fees, and expenses) incurred in connection with the formulation, negotiation, submission of and/or pursuant to the Purchase Agreement and/or the Proposed Transaction, and related documentation and transactions (collectively, "<u>Stalking Horse Expenses</u>") up to an aggregate amount of $1,000,000 (absent further order of the Court or consent of the Committee).

j.   "<u>Proposed Transaction</u>" means the acquisition of the Purchased Assets by the Stalking Horse in accordance with terms set forth in the Purchase Agreement and the Claims Assignment Agreement.

k.   "<u>Purchase Price</u>" The purchase price for the Purchased Assets (as may be adjusted pursuant to the terms and conditions of the Purchase Agreement) shall be: (x) $131,099,286.35 (the "<u>Credit Bid Amount</u>"), representing the expected outstanding obligations and indebtedness of MOI under the DIP Facility and the First Lien Credit Agreement as of the Closing Date, to be satisfied in the form of a credit bid pursuant to section 363(k) of the Bankruptcy Code (the "<u>Credit Bid</u>"), and (y) the release of the liabilities arising under the DIP Facility and First Lien Credit Agreement equal to the Credit Bid Amount.

l.      "Stalking Horse" or "Falcon USA" means Falcon Global USA LLC, and any other person or entity that is a permitted assignee of the Stalking Horse under the Purchase Agreement.

**B.      Assets to be Sold**

1.      All Purchased Assets are available for sale.   A party who is interested in purchasing any of the Purchased Assets may submit a bid to purchase all or a portion of such assets as set forth herein.

**C.      Participation Requirements and Due Diligence**

1.      To participate in the bidding process and the Auction (as defined below), a person or entity interested in pursuing a competing transaction (a "Competing Transaction") for all or a portion of the Purchased Assets (each, a "Potential Bidder") must first deliver the following materials to the Debtor and its advisors as provided more fully herein:

a.      An executed confidentiality agreement in form and substance satisfactory to the Debtor and its advisors (the "Confidentiality Agreement").  Without limiting the foregoing sentence, the Confidentiality Agreement will provide that all non-public information about the Debtor, its property and interests in property received by a Potential Bidder will be kept strictly confidential in accordance therewith and used only in connection with analyzing a Competing Transaction.

b.      Written evidence that enables the Debtor and its advisors following consultation with the Committee and Chase[3] to reasonably determine whether a Potential Bidder has the financial, operational, and other ability to close the Competing Transaction and provide adequate assurance of future performance under all contracts and leases to be assumed in connection therewith.

2.      All Potential Bidders, whether deemed Qualified Bidders (as defined below) or not, consent to the jurisdiction of the Bankruptcy Court to determine matters concerning the Competing Transaction and their bids (each, a "Bid") (whether or not one is made), the Auction, or the marketing process generally and waive any right to any other venue.

3.      Any Potential Bidder wishing to conduct due diligence concerning a Competing Transaction shall be granted

a.      reasonable access to the Debtor's management during normal business hours and

---

[3] For purposes of these Bidding Procedures, to the extent that any Bid proposes to pay, in cash, to Chase, for the benefit of the lenders under the DIP Facility and the First Lien Credit Agreement, the full amount of outstanding obligations and indebtedness of MOI under the DIP Facility and the First Lien Credit Agreement, then Chase's consultation rights shall be abrogated as to such Bid.

b.     access to all relevant information regarding the Bidding Procedures and the business of the Debtor reasonably necessary to enable a Potential Bidder to evaluate the Competing Transaction.

4.     The Debtor shall make such document access available to Potential Bidders through an electronic dataroom as soon as reasonably practicable following execution of the Confidentiality Agreement. Potential Bidders interested in conducting due diligence should contact the Debtor's investment banker, Houlihan Lokey, Inc. ("Houlihan"), Attn: Michael H. Boone (phone: 214.220.8497; email: MBoone@HL.com). Notwithstanding the foregoing, Houlihan is not required to provide confidential, business-sensitive or proprietary information to any person if the Debtor, following consultation with the Committee, reasonably believes that such disclosure would be detrimental to the interests of the Debtor's estate. All due diligence must be completed before the Bid Deadline (as defined below). No condition(s) allowing or regarding further due diligence will be accepted after the Bid Deadline unless otherwise determined by the Debtor and its advisors following consultation with the Committee. Potential Bidders are required to exercise their own discretion before relying on any information provided by the Debtor regarding the Competing Transaction. Neither the Debtor, the Committee, nor any of their representatives or advisors are responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders pursuant hereto.

5.     The Debtor and its advisors, following consultation with the Committee and Chase shall: (a) receive and evaluate any Bids from Potential Bidders; (b) negotiate offers made for Competing Transactions; (c) request information from Potential Bidders, engage in discussions with Potential Bidders, and take such other actions to determine whether any Bid constitutes or could lead to a Qualified Bid (as defined below); and (d) take any other actions contemplated under these Bidding Procedures.

**D.**     **Submission of Bids**

1.     Any Potential Bidder interested in proposing a Competing Transaction must deliver written and electronic copies of its Bid in both PDF and MS-WORD format to the Bid Notice Parties (as defined below) so as to be received no later than **4:00 p.m. (prevailing Central Time) on December 14, 2017** (the "Bid Deadline").

2.     In order for a Bid to be considered, it must be a "Qualified Bid." A Potential Bidder will be deemed to be a "Qualified Bidder" if the Debtor and its advisors, in their sole discretion and following consultation with the Committee, and JPMorgan Chase Bank, N.A., solely in its capacity as agent under the First Lien Facility and the DIP Facility ("Chase" or "First Lien Agent"), determine that such Potential Bidder submitted a Qualified Bid. **For the avoidance of doubt, the Stalking Horse shall automatically be a Qualified Bidder and its Bid shall automatically be a Qualified Bid**.

3.     A Bid will be considered a "Qualified Bid" only if the Bid satisfies each of the following requirements (capitalized terms used in this section may be defined later in the Bidding Procedures):

a.  <u>Purchase Price; Minimum Bid</u>.   The Bid contains terms that in the Debtor's business judgment after consultation with Chase or the Committee's independent determination (i) has a value greater than $136,132,264.94 and (ii) proposes an alternative transaction that provides substantially similar or better terms than the Proposed Transaction; *provided, however*, that bidders may also submit Bids for individual assets or a combination of assets (each a "<u>Partial Bid</u>").   The Debtor, in its business judgment (after consultation with the First Lien Agent), or the Committee, in its reasonable discretion, will determine whether such Partial Bids qualify as Qualified Bids; *provided, that*, to be considered a Qualified Bid, the Debtor or the Committee must reasonably conclude that a Partial Bid, when taken together with other Partial Bids, satisfies the criteria for being a Qualified Bid.

b.  <u>Unconditional Offer</u>.   The Bid provides that it shall remain irrevocable until the earlier of (y) the close of the Auction, or (z) in the event it becomes the Back-Up Bid, until the Back-Up Bid Expiration Date (defined below).

c.  <u>Commitment</u>.   The Bid is made by a person or entity that reasonably demonstrates evidence of fully committed and firm financing for each component of such Bid and other ability to consummate the Competing Transaction, in each case acceptable to the Debtor in its sole discretion, following consultation with the Committee and Chase;

d.  <u>Closing Date</u>.   The Bid provides for an outside close date for the Competing Transaction of sixty (60) days following entry of the Sale Order in respect of such Bid;

e.  <u>Authorization</u>.   The Potential Bidder provides written evidence that it has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its Bid and the execution of the agreements associated therewith, or a representation that no such authorization or approval is required;

f.  <u>Form of Consideration</u>.   The Bid provides that any cash portion of the purchase price will be paid in cash, cash equivalents, or such other consideration acceptable to the Debtor in its sole discretion following consultation with the Committee and Chase;

g.  <u>Deposit</u>.   The Potential Bidder provides by wire transfer of immediately available funds to the Debtor or its designee before the Bid Deadline of an earnest money cash deposit (the "<u>Deposit</u>") of not less than five percent (5%) of the total consideration provided under the Bid;

h.  <u>Regulatory Approval</u>.   The Potential Bidder provides evidence reasonably satisfactory to the Debtor following consultation with the Committee and

Chase that the Potential Bidder is reasonably likely to obtain regulatory approval, if any is required, promptly and prior to consummating the Competing Transaction;

i.   <u>Marked Agreement</u>.  The Bid is submitted in the form of a legally binding agreement (the "<u>Bidder Agreement</u>"), which shall be in the form of an asset purchase agreement for the purchase of some or all of the Debtor's assets, fully executed by the Potential Bidder in a clean copy and marked to show the proposed changes to the Purchase Agreement in a redlined copy, that further:

   i.   identifies the Potential Bidder and any Affiliates who are also submitting a Bid (even if not members of the same investor group), if applicable;

   ii.   is not subject to any conditions, representations, or terms not included in the Purchase Agreement that the Debtor determines to be unacceptable;

   iii.   describes with specificity the total consideration proposed to be paid to MOI's estate in the Competing Transaction;

   iv.   is not conditioned upon the Bankruptcy Court's approval of any bidding protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment;

   v.   is not conditioned upon tax or other due diligence;

   vi.   does not contain any condition to closing of the Competing Transaction relating to the receipt of any third-party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approval or third-party consents required under the Purchase Agreement);

   vii.   expressly acknowledges and represents that the Potential Bidder: (A) has had an opportunity to conduct any and all due diligence regarding the Competing Transaction prior to making its Bid, (B) has relied solely upon its own independent review, investigation and/or inspection of any documents in making its Bid or that of any of its legal, financial or other advisors, and (C) did not rely upon any written or oral statements representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business of the Debtor or the Competing Transaction, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Bidder Agreement ultimately accepted and executed by the Debtor;

        viii.     identifies each and every executory contract and unexpired lease that the Potential Bidder desires MOI to assume or reject at the closing and provides evidence of such Potential Bidder's ability to provide adequate assurance of future performance of such contracts or leases to be assumed (as required by section 365(b)(1)(C) of the Bankruptcy Code) along with the Bid; and

        ix.     contains other information reasonably required by the Debtor and its advisors following consultation with the Committee and Chase.

4.     A Potential Bidder that desires to make a Bid must deliver written electronic copies of its Bid prior to the Bid Deadline to the following (collectively, the "Bid Notice Parties"):

    a.     Montco Offshore, Inc., Attn: Derek C. Boudreaux, 17751 Hwy 3235, Galliano, Louisiana 70354, Tel. (877) 666-6826, email: Derek.Boudreaux@montco.com.

    b.     Debtor's Counsel:  DLA Piper LLP (US), Attn: David Avraham, 444 W. Lake Street, Suite 900, Chicago, Illinois 60606, Tel. (312) 368-4000, email: david.avraham@dlapiper.com; and Drinker Biddle & Reath LLP, Attn: Vince Slusher, 1717 Main Street, Suite 5400, Dallas, Texas 75201, Tel. (469) 357-2500.

    c.     Debtor's Investment Banker: Houlihan Lokey ("Houlihan"), Attn: Adam Dunayer and Michael Boone, 100 Crescent Court, Suite 900, Dallas, Texas 75201, Tel. (214) 220-8497, email: ADunayer@HL.com and MBoone@HL.com.

    d.     Committee's Counsel: Porter Hedges LLP, 1000 Main Street 36th Floor, Houston, TX 77002, Attn: Joshua Wolfshohl, email: jwolfshohl@porterhedges.com.

    e.     JPMorgan Chase Bank, N.A's counsel: Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201, email: kristian.gluck@nortonrosefulbright.com and ryan.manns@nortonrosefulbright.com.

5.     After the Bid Deadline, the Debtor and its advisors, following consultation with Chase, and independently, the Committee, shall determine which Bids, if any, are Qualified Bids and which of the Qualified Bids represent(s) the then-highest or otherwise best Bid for a Competing Transaction (the "Initial Highest Bid" and the entity submitting such Bid, the "Initial Highest Bidder").  The Debtor and its advisors, in their sole discretion and following consultation with the Committee and Chase, may consider a bid or bids on individual or groups of the Debtor's assets as a Qualified Bid, and may designate one or a combination of such bids as the Initial Highest Bid.  To the extent practicable, at least one (1) business day prior to the Auction, each Qualified Bidder that timely submitted a Qualified Bid (including, for the avoidance of doubt, the Stalking Horse) will be advised of such Initial Highest Bids and the Debtor shall distribute copies of such Initial Highest Bids (with the identities of other Qualified

Bidders redacted) to the Committee and to other Qualified Bidders who have submitted Qualified Bids.

6.    The Debtor reserves the right to waive noncompliance with any bid requirement following consultation with the Committee and Chase.

7.    "<u>As Is, Where Is</u>."  A Competing Transaction shall be without representations or warranties of any kind, nature or description by the Debtor, its advisors, agents or estate, or any other party, except to the extent set forth in the definitive documentation between the Debtor and the Winning Bidder (as defined below).

**E.    Pre-Auction Procedures**

1.    <u>Failure to Receive Qualified Bids</u>

    a.    If no Qualified Bid for the Purchased Assets, other than the one submitted by the Stalking Horse, is received by the Bid Deadline, the Debtor will not conduct the Auction and shall file and serve, by **10:00 p.m. (prevailing Central Time) on December 14, 2017**, (x) a notice indicating that the Auction has been cancelled with respect to the Purchased Assets and that the Stalking Horse is the Winning Bidder, (y) a notice seeking approval of the Purchase Agreement and proposed transaction, and (z) a proposed sale order (the "<u>Sale Order</u>") authorizing and approving the Purchase Agreement and related transactions.

        i.    If no Qualified Bid is received, the deadline to Object to the Sale of the Purchased Assets to the Stalking Horse (the "<u>Stalking Horse Objection Deadline</u>") shall be **December 15 at 10:00 p.m. (prevailing Central Time)**.

        ii.    The Debtor shall seek the entry of the Sale Order at a hearing before the Bankruptcy Court (the "<u>Sale Hearing</u>") on **December 19, 2017 at 3:00 p.m. (prevailing Central Time)**.

2.    <u>The Auction</u>

    a.    If one or more Qualified Bids has been submitted for a Competing Transaction in accordance with these Bidding Procedures, the Debtor will conduct an Auction on **<u>December 15, 2017, at 10:00 a.m. (prevailing Central Time)</u>**, with respect to such Qualified Bids in order to determine the highest and best Bid(s) (the "<u>Winning Bid(s)</u>") to submit for approval by the Bankruptcy Court at the Sale Hearing (as defined below).

    b.    The Auction shall be organized and conducted by the Debtor at the offices of its co-counsel, DLA Piper LLP (US), 1000 Louisiana Street, Suite 2800, Houston, Texas 77002-5005, or such other location as may be announced prior to the Auction to the Auction Participants. The Auction will be recorded by stenographic means by an authorized court reporter.

c.      The deadline to Object to the Sale of the Purchased Assets to a Winning Bidder at the Auction must be filed and received no later than (shall be **December 18, 2017 at 4:00 p.m. (prevailing Central Time)** (the "Other Objection Deadline").

d.      In the Debtor's reasonable discretion (after consultation with the Winning Bidder(s)), any Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties, including by (A) an announcement of such adjournment at the Sale Hearing or at the Auction or (B) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing.

## F.      Auction Procedures

1.      The only persons or entities who will be permitted to Bid at the Auction are the authorized representatives of each Qualified Bidder (the "Auction Participants").  While only the Auction Participants may make Qualified Bids at the Auction, the Auction may be attended and viewed also by the Debtor and representatives of the Committee and Chase, and their respective advisors and/or other authorized representatives. Any other person wishing to attend the Auction may do so by contacting counsel to the Debtor, David Avraham at david.avraham@dlapiper.com, no later than three (3) days prior to the start of the Auction.

2.      Each Qualified Bidder shall be required to represent that it has not engaged in any collusion with respect to the marketing process or the Competing Transaction.

3.      The Auction shall be conducted by the Debtor in accordance with such procedures and requirements as may be established at the discretion of the Debtor and its advisors following consultation with the Committee and Chase to result in the highest and best offer for the Purchased Assets, which rules shall be announced prior to commencement of the Auction, and may include the determination of the amount of time between Qualified Bids, the conducting of multiple rounds of open bidding, and to declare that the Auction has ended when no further Bids are timely made or otherwise.  Following consultation with the Committee and Chase, the Debtor may waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are: (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of the Bankruptcy Court, or any order of the Bankruptcy Court entered in connection with the Debtor's Bankruptcy Case; (b) disclosed to each Auction Participant; and (c) do not modify the provisions of the Bidding Procedures or Purchase Agreement in any way.

4.      The first Qualified Bid at the Auction shall be deemed to have been made by the Initial Highest Bidder, in the amount of the Initial Highest Bid.  Thereafter, the Auction will continue in the manner determined by the Debtor above; *provided, however*, (i) additional Bids must be Qualified Bids (except that such subsequent additional or revised Qualified Bids made at the Auction need not be received by the Bid Deadline) and (ii) additional Qualified Bids must be made in higher increments of at least $100,000 in cash or other assets (the "Minimum Bid Increment").

5.      The Debtor shall determine following consultation with the Committee and Chase, subject to final determination(s) by the Bankruptcy Court as to the Winning Bid(s) and the Winning Bidder(s), whether a Qualified Bid by a Qualified Bidder at the Auction matches or is higher and better than the prior Qualified Bid.

6.      At the conclusion of the Auction, the Debtor, following consultation with the Committee and Chase, shall:

      a.      select the Winning Bid and the Back-Up Bid;

      b.      notify the person(s) that made the Winning Bid (the "Winning Bidder") that the offer of such person(s) has/have been determined by the Debtor to be the Winning Bid, subject only to Bankruptcy Court approval; and

      c.      file a notice with the Bankruptcy Court announcing the Winning Bidder and conduct the Sale Hearing on **December 19, 2017 at 3:00 pm** (prevailing Central Time).

7.      Nothing herein shall bind the Committee or Chase with respect to the Debtor's selection of the Winning Bidder, and the Committee and Chase reserve all rights with respect to objecting to the Debtor's selection of the Winning Bidder.  Prior to the commencement of the Sale Hearing, the Winning Bidder(s) shall complete and sign all agreements and documents as necessary to bind the Winning Bidder to all of the terms and conditions contemplated by their respective Winning Bid.

8.      Each Winning Bidder's Deposit (if not the Stalking Horse) shall be applied by the Debtor against the purchase price to be paid by such Winning Bidder or held by the Debtor and forfeited, as the case may be.

9.      The Debtor shall not be deemed to have finally accepted any Qualified Bid unless and until such Qualified Bid and the Debtor's acceptance thereof have been authorized by order of the Bankruptcy Court following the conclusion of the Sale Hearing.

10.     If an Auction is conducted, the Qualified Bidder (including the Stalking Horse) or, in the case of joint bids, Qualified Bidders with the next highest or otherwise best Qualified Bid both with respect to individual bids and joint bids , as determined by the Debtor in the exercise of its business judgment, after consultation with the Committee and Chase, at the Auction shall be required to serve as back-up bidders (such bid or bids, the "Back-Up Bid" and, such bidder or bidders, the "Back-Up Bidders") and keep such bid open and irrevocable until the Back-Up Bid Expiration Date.  Following the Sale Hearing, if the Winning Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Winning Bidder, the Back-Up Bidders will be deemed to be the new Winning Bidder, and the Debtor will be authorized, but not required, to consummate the sale with the Back-Up Bidders without further order of the Bankruptcy Court.

**G.      Post-Auction Process**

1.      A Winning Bidder shall, within one (1) business day after the close of the Auction, submit to the Debtor fully executed revised documentation memorializing the terms and conditions of the Winning Bid (unless otherwise extended by the Debtor in writing). Promptly following the submission of such documentation, the Debtor shall file with the Bankruptcy Court notice of the Winning Bid and Winning Bidder.

2.      Except to the extent otherwise provided in the Purchase Agreement, the Back-Up Bid shall remain open and irrevocable until the first to occur of (i) consummation of the transaction with a Winning Bidder at the Auction, (ii) the Debtor's release of the bidder's obligations to serve as the Back-Up Bid, (iii) February 20, 2018, and (iv) solely in the event that the Stalking Horse Bid is the Back-Up Bid, twenty (20) days after entry of a Sale Order approving the Winning Bid (such date, the "Back-Up Bid Expiration Date"). If the transaction with a Winning Bidder is terminated prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed the Winning Bidder and shall be obligated to consummate the Back-Up Bid as if it were the Winning Bid.

3.      At the Sale Hearing, the Debtor will present a Winning Bid to the Bankruptcy Court for approval.  Unless otherwise required pursuant to the Debtor's fiduciary duties, the Debtor shall not consider any bids submitted after the conclusion of the Auction

4.      Deposits.  No later than five (5) business days after the Auction, the Debtor (or escrow agent) shall return to each Qualified Bidder (other than the Winning Bidder(s)) its Deposit, plus any interest accrued thereon.  Upon the authorized return of such Deposit, the bid of such Potential Bidder shall be deemed revoked and no longer enforceable.

**<u>EXHIBIT 2</u>**

**(Procedures Notice)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 17-31646 |
| MONTCO OFFSHORE, INC., *et al.*,[1] | § | |
| | § | Chapter 11 |
| Debtors. | § | |
| | § | (Jointly Administered) |

## NOTICE OF BIDDING PROCEDURES, AUCTION AND SALE HEARING FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF MONTCO OFFSHORE, INC.

      **PLEASE TAKE NOTICE** that on November 24, 2017, Debtor Montco Offshore, Inc. (the "Debtor" or "MOI") in the above-captioned case (the "Chapter 11 Case") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), filed a motion [ECF No. [ ]] (the "Motion")[2] with the United States Bankruptcy Court for the Southern District of Texas (the "Court") for entry of an order (I) approving (A) bidding procedures governing the submission and consideration of competing bids to buy the Purchased Assets (individually, a "Competing Transaction" and collectively, the "Competing Transactions"), in the form attached thereto as Exhibit 1 (the "Bidding Procedures"), (B) certain bidding protections for Falcon Global USA LLC ("Falcon USA" or "Stalking Horse"), (C) the form and manner of notice of the Auction, Proposed Transaction, and Sale Hearing, and (D) the procedures for assuming and assigning any transferred contracts; (II) (A) authorizing and scheduling an auction for Competing Transactions (the "Auction"), if any, and a hearing to approve any transaction with respect to the winning bid(s) designated by MOI (the "Sale Hearing"), and (B) authorizing the Debtor to enter into that certain Purchase Agreement, dated [_____], 2017, a copy of which is attached as Exhibit 3 to Bidding Procedures Order the "Purchase Agreement"), solely to the extent necessary to implement the Bidding Protections; (III) authorizing (A) the sale of substantially all of MOI's assets (as defined in the Purchase Agreement, the "Purchased Assets") free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code and (B) the assumption and assignment of any transferred executory contracts and unexpired leases; and (IV) granting related relief, all as more fully described in the Motion

      **PLEASE TAKE FURTHER NOTICE** that on December [4], 2017, the Court entered an order [ECF No. ____] (the "Bidding Procedures Order"). The Bidding Procedures Order, among other things: (I) approved (A) the Bidding Procedures governing submission and consideration of competing transactions, (B) the Bidding Protections (C) the form and manner of

---

[1]    The Debtors in these chapter 11 cases, together with the last four (4) digits of each Debtor's federal tax identification number, are Montco Offshore, Inc. (1448) and Montco Oilfield Contractors, LLC (9886). The mailing address for the Debtors, solely for the purposes of notices and communications, is 17751 Hwy 3235, Galliano, Louisiana 70354.

[2]    Capitalized terms not otherwise defined herein shall carry the meaning ascribed to such terms in the Motion.

notice of the sale process, and (D) assumption and assignment procedures; (II) (A) authorized the Debtor to conduct an auction pursuant to the bidding procedures and scheduled an auction and related sale hearing, and (B) authorized the Debtor to enter into the Purchase Agreement to implement the Bidding Procedures; and (III) granted related relief.

**PLEASE TAKE FURTHER NOTICE** that, as contemplated by the Bidding Procedures Order, the Debtor will consider Competing Transactions.

**PLEASE TAKE FURTHER NOTICE** that the "Bid Deadline" is **4:00 p.m. (prevailing Central Time) on December 14, 2017**. A Potential Bidder that desires to submit a proposal for a Competing Transaction is required under the Bidding Procedures to deliver written electronic copies of all materials comprising its Bid prior to the Bid Deadline to:

a.   Montco Offshore, Inc., Attn: Derek C. Boudreaux, 17751 Hwy 3235, Galliano, Louisiana 70354, Tel. (877) 666-6826, email: Derek.Boudreaux@montco.com.

b.   Debtor's Co-Counsel:  Drinker Biddle & Reath LLP, Attn: Vince Slusher, 1717 Main St., Ste. 5400, Dallas, Texas 75201, Tel. (469) 357-2500, email: vince.slusher@dbr.com and DLA Piper LLP (US), Attn: David Avraham, 444 West Lake Street, Ste. 900, Chicago, Illinois 60606, Tel. (312) 368-4000, email: david.avraham@dlapiper.com.

c.   Debtor's Investment Banker: Houlihan Lokey ("Houlihan"), Attn: Adam Dunayer and Michael Boone, 100 Crescent Court, Suite 900, Dallas, Texas 75201, Tel. (214) 220-8497, email: ADunayer@HL.com and MBoone@HL.com.

d.   Committee's Counsel: Porter Hedges LLP, 1000 Main Street 36th Floor, Houston, Texas 77002, Attn: Joshua Wolfshohl, email: jwolfshohl@porterhedges.com.

e.   JPMorgan Chase Bank, N.A's counsel: Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201, email address: kristian.gluck@nortonrosefulbright.com and ryan.manns@nortonrosefulbright.com.

**Unless otherwise agreed by the Debtor, any person or entity that does not submit a bid by the Bid Deadline shall not be permitted to participate in the Auction.**

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures Order, if one or more Qualified Bids has been submitted for a Competing Transaction in accordance with these Bidding Procedures prior to the Bid Deadline, the Debtor will conduct an Auction on **December 15, 2017, at 10:00 a.m. (prevailing Central Time)**, with respect to such Qualified Bids at the offices of its counsel, DLA Piper LLP (US), DLA Piper LLP (US), 1000 Louisiana Street, Suite 2800, Houston, Texas 77002-5005, or such other location as may be announced

prior to the Auction to the Auction Participants.  If Qualified Bids are not received by the Debtor as stated in the immediately preceding sentence, the Debtor will not hold the Auction.

**PLEASE TAKE FURTHER NOTICE** that any person or entity wishing to submit a bid for a Proposed Transaction is urged to review the Bidding Procedures, the Bidding Procedures Order and the Motion.  Copies of the Motion and the exhibits thereto, and the Bidding Procedures Order (including the Bidding Procedures attached as Exhibit 1 to the Bidding Procedures Order) may be reviewed (a) during regular Court hours at the United States Bankruptcy Court, 515 Rusk Avenue, Houston, TX 77002, or (b) free of charge on the Debtors' restructuring website, bmcgroup.com/Montco.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing is currently scheduled to be held on **December 19, 2017 at 3:00 p.m. (prevailing Central Time)** at the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Avenue, Houston, TX 77002, Courtroom 404, to consider MOI's selection of the highest or best bid and the Proposed Transaction or Competing Transaction, as applicable.  The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the Bankruptcy Court's docket.

**PLEASE TAKE FURTHER NOTICE THAT OBJECTIONS TO ANY RELIEF REQUESTED IN THE MOTION, INCLUDING THE REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, MUST BE IN WRITING, FILED AND SERVED SO AS TO BE <u>ACTUALLY</u> <u>RECEIVED</u> BY**

- **DECEMBER 15, 2017 AT 10:00 P.M. (PREVAILING CENTRAL TIME)** if there is no Auction and the Stalking Horse is designated as the Winning Bidder; or

- **DECEMBER 18, 2017 AT 4:00 P.M. (PREVAILING CENTRAL TIME)** if there is an Auction conducted

by: (i) Montco Offshore, Inc., Attn: Derek C. Boudreaux, 17751 Hwy 3235, Galliano, Louisiana 70354, (ii) co-counsel to the Debtors, DLA Piper LLP (US), Attn: David Avraham, 444 W. Lake Street, Suite 900, Chicago, Illinois 60606 and Drinker Biddle & Reath LLP, Attn: Vince Slusher, 1717 Main Street, Suite 5400, Dallas, Texas 75201, (iii) the Office of the United States Trustee for the Southern District of Texas, Attn: Stephen Statham, 515 Rusk Street, Ste. 3516, Houston, Texas 77002, (iv) counsel to the Committee Porter Hedges LLP, Attn: Joshua Wolfshohl, 1000 Main Street 36th Floor, Houston, Texas 77002, and (v) counsel for Chase Norton Rose Fulbright US LLP, Attn: Kristian Gluck, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201.

This Notice is qualified in its entirety by the Bidding Procedures Order. All persons and entities are urged to read the Bidding Procedures Order, when entered, and the provisions thereof carefully. To the extent that this notice is inconsistent with the Bidding Procedures Order, the terms of the Bid Procedures Order shall govern.

Dated: November [___], 2017
Dallas, Texas

**DRINKER BIDDLE & REATH LLP**

By:    /s/ *DRAFT*        
Vincent P. Slusher (State Bar No. 00785480)
Drinker Biddle & Reath LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201-7367
Telephone: 469.357.2571
Facsimile: 469.327.0860
vincent.slusher@dbr.com

- and -

**DLA PIPER LLP (US)**

Daniel M. Simon (admitted pro hac vice)
David E. Avraham (admitted pro hac vice)
DLA Piper LLP (US)
444 W. Lake Street, Suite 900
Chicago, Illinois 60606-0089
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
daniel.simon@dlapiper.com
david.avraham@dlapiper.com

*Counsel for the Debtors*

**Exhibit 3**

**(Purchase Agreement)**

[To be filed]

**Exhibit 4**

**(Sale Order)**

[To be filed]