## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 17-31646** |
| **MONTCO OFFSHORE, INC., *et al.*,**[1] | § | |
| | § | **Chapter 11** |
| **Debtors.** | § | |
| | § | **(Jointly Administered)** |

## AMENDED PLAN OF REORGANIZATION OF DEBTOR MONTCO OFFSHORE, INC. AND AMENDED PLAN OF LIQUIDATION OF DEBTOR MONTCO OILFIELD CONTRACTORS, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Vincent P. Slusher (State Bar No. 00785480)
**Drinker Biddle & Reath LLP**
1717 Main Street, Suite 5400
Dallas, Texas 75201
Telephone: (469) 357-2500
Facsimile: (469) 327-0860
vince.slusher@dbr.com

Daniel M. Simon (admitted *pro hac vice*)
David E. Avraham (admitted *pro hac vice*)
**DLA Piper LLP (US)**
444 W. Lake Street, Suite 900
Chicago, Illinois 60606-0089
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
daniel.simon@dlapiper.com
david.avraham@dlapiper.com

*Attorneys for the Debtors*

Dated: December 26, 2017

---

[1]   The Debtors in these chapter 11 cases, together with the last four (4) digits of each Debtor's federal tax identification number, are Montco Offshore, Inc. (1448) and Montco Oilfield Contractors, LLC (9886).  The mailing address for the Debtors, solely for the purposes of notices and communications, is 17751 Hwy 3235, Galliano, Louisiana 70354.

## TABLE OF CONTENTS

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION** ............................ 1
    **A.**   *Defined Terms* ..................................................................... 1
    **B.**   *Rules of Interpretation* ....................................................... 13
    **C.**   *Exhibits and Schedules* ...................................................... 13

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** ............................................... 14
    **A.**   *Administrative Claims* ........................................................ 14
    **B.**   *Professional Compensation and Reimbursement Claims and the Professional Fee Reserve* ...................................... 14
    **C.**   *Priority Claims* ................................................................. 15
    **D.**   *General* ............................................................................ 15

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** ................................................................................. 15
    **A.**   *Summary* .......................................................................... 15
    **B.**   *Classification and Treatment of Claims and Equity Interests for the Debtors* .... 16
    **C.**   *Special Provision Governing Unimpaired Claims* .............................. 18
    **D.**   *Nonconsensual Confirmation* ............................................. 18

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ........................................ 19
    **A.**   *Contribution of Assets to Falcon JV and/or Falcon USA Sub* ............................ 19
    **B.**   *Exit Facility* ...................................................................... 19
    **C.**   *Falcon JV Common Equity* ................................................. 20
    **D.**   *Employment Terms* ........................................................... 20
    **E.**   *Rights and Powers of the Reorganized Debtor* ............................... 20
    **F.**   *Directors/Officers of the Reorganized Debtor on the Effective Date* ................. 21
    **G.**   *Transfer and Vesting of Property of MOI* ................................... 21
    **H.**   *Orgeron Note* ................................................................... 21
    **I.**   *Establishment of Liquidating Trust* ....................................... 21
    **J.**   *Appointment of the Liquidating Trustee* .................................. 22
    **K.**   *Liquidating Trust Committee* ............................................... 22
    **L.**   *Plan and Liquidating Trust Funding* ...................................... 22
    **M.**   *Vesting and Transfer of Liquidating Trust Assets to the Liquidating Trust and Retention of MOC Causes of Action* .................................. 26
    **N.**   *Liquidating Trust Expenses* ................................................. 27
    **O.**   *Role of the Liquidating Trustee* ............................................ 27
    **P.**   *Reorganized MOI Reporting Obligations to Liquidating Trustee* ..................... 28
    **Q.**   *Beneficiaries of the Liquidating Trust* ................................... 28
    **R.**   *Preservation of Right to Conduct Investigations* ........................... 29
    **S.**   *Prosecution and Resolution of Causes of Action* ........................... 29
    **T.**   *Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets* ............................................................................. 29
    **U.**   *Books and Records of the Liquidating Debtor* ............................... 30
    **V.**   *Termination of the Liquidating Trust* ..................................... 30
    **W.**   *Operations of the Debtors Between the Confirmation Date and the Effective Date* 31

**X.**    *Establishment of the Administrative Claims Bar Date* .........................31
**Y.**    *Term of Injunctions or Stays* .........................31
**Z.**    *Creditors' Committee* .........................31
**AA.**   *Debtors' Professionals*.........................32

**ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS**.........................**32**
**A.**    *Initial Distribution Date* .........................32
**B.**    *Disputed Reserve* .........................32
**C.**    *Subsequent Distributions* .........................33
**D.**    *Delivery of Distributions*.........................33
**E.**    *Manner of Cash Payments Under the Plan* .........................34
**F.**    *Time Bar to Cash Payments by Check* .........................34
**G.**    *Compliance with Tax Requirements* .........................34
**H.**    *No Payments of Fractional Dollars and Minimum Distributions* .....................34
**I.**    *Interest on Claims* .........................35
**J.**    *No Distribution in Excess of Allowed Amount of Claim*.........................35
**K.**    *Setoff and Recoupment* .........................35

**ARTICLE VI DISPUTED CLAIMS**.........................**35**
**A.**    *No Distribution Pending Allowance* .........................35
**B.**    *Resolution of Disputed Claims* .........................35
**C.**    *Objection Deadline* .........................36
**D.**    *Estimation of Claims* .........................36

**ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .........................**36**
**A.**    *Assumption and Rejection of Executory Contracts and Unexpired Leases*.........36
**B.**    *Claims Based on Rejection of Executory Contracts and Unexpired Leases* .......37
**C.**    *Cure Claims* .........................37
**D.**    *Insurance Policies*.........................37

**ARTICLE VIII CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** .................**38**
**ARTICLE IX INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS**.........................**39**
**A.**    *Compromise and Settlement* .........................39
**B.**    *Releases*.........................39
**C.**    *Exculpation* .........................40
**D.**    *Injunction* .........................41
**E.**    *Release of Liens* .........................42

**ARTICLE X RETENTION OF JURISDICTION**.........................**42**
**ARTICLE XI MISCELLANEOUS PROVISIONS** .........................**43**
**A.**    *Final Fee Applications* .........................43
**B.**    *Payment of Statutory Fees* .........................43
**C.**    *Modification of the Plan* .........................43
**D.**    *Revocation of Plan* .........................44
**E.**    *Successors and Assigns* .........................44
**F.**    *Governing Law and Construction* .........................44
**G.**    *Reservation of Rights* .........................44

|  |  |  |
|---|---|---|
| **H.** | *Article 1146 Exemption* | 45 |
| **I.** | *Section 1125(e) Good Faith Compliance* | 45 |
| **J.** | *Further Assurances* | 45 |
| **K.** | *Service of Documents* | 45 |
| **L.** | *Filing of Additional Documents* | 47 |
| **M.** | *No Stay of Confirmation Order* | 47 |

**AMENDED PLAN OF REORGANIZATION OF DEBTOR MONTCO OFFSHORE, INC. AND AMENDED PLAN OF LIQUIDATION OF DEBTOR MONTCO OILFIELD CONTRACTORS, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, the Debtors in the above-captioned Chapter 11 Cases hereby respectfully propose the following amended plans of reorganization and liquidation under chapter 11 of the Bankruptcy Code.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation, fees or expenses Allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code, arising under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code or otherwise rendered prior to the Effective Date, or thereafter in connection with: (i) applications Filed pursuant to sections 328, 330 and 331 of the Bankruptcy Code; (ii) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been Filed for any such amount; and (iii) applications for allowance of Administrative Expenses.  To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

2.    "*Additional Assets*" means (a) proceeds of the sale, if such sale occurs, of that certain real property secured by that certain Louisiana Multiple Indebtedness Mortgage by David J. Hebert and Tish Guidry Hebert in favor of MOI recorded in the Clerk of Court's office for Lafourche Parish, Louisiana as Inst. Number 1141936 and bearing the municipal address 329 Chateau Drive, Lockport, Louisiana 70314; (b) that certain 2003 Maverick Flats Fishing Boat with 90 hp Yamaha Engine, (c) that certain 2011 John Deere Lawnmower, and (d) that certain 2013 Polaris Ranger Side by Side 4x4.

3.    "*Administrative Claims*" means Claims that have been timely Filed before the Administrative Claims Bar Date, pursuant to the deadline and procedure set forth in the Plan or Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b) (including claims under sections 503(b)(3)(F) and 503(b)(9)), 507(b) or 1114(e)(2) of the Bankruptcy Code), including, without

limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (ii) all fees and charges assessed against the Estates under chapter 123 of title 28 of the U.S. Code, 28 U.S.C. §§ 1911–1930); provided, however, that such Administrative Claims shall not include claims for Accrued Professional Compensation.

4.      "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days after the entry of the Confirmation Order and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim.

5.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.      "*Alliance Secured Claim*" means the secured portion of that certain Claim No. 156 filed by Alliance Energy Services, LLC against MOI (and duplicated at Claim No. 157 filed by Alliance Energy Services, LLC against MOC), which shall be deemed an Allowed Other Secured Claim, in the amount of $7,404,467.81.

7.      "*Alliance Settlement Agreement*" means that claim settlement agreement by and among Lee Orgeron, Alliance Energy Services, LLC, Alliance Offshore, LLC, and Stephen Williams, the material terms and conditions of which are appended hereto as **Exhibit A**.

8.      "*Alliance Subordinated Secured Claim*" means $3,404,467.81 of the Alliance Secured Claim, which shall be subordinated in payment pursuant to Article III.B.3(b).

9.      "*Allowed*" means, with respect to any Claim or Equity Interest, except as otherwise provided herein: (i) a Claim or Equity Interest that has been scheduled by the Debtors in their schedules of liabilities as other than disputed, contingent or unliquidated; (ii) a Claim or Equity Interest that either is not Disputed or has been allowed by a Final Order; (iii) a Claim or Equity Interest that is allowed: (a)  in any stipulation of amount and nature of such Claim or Equity Interest executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (b) in any stipulation with the Liquidating Trustee or the Reorganized Debtor, as applicable, of the amount and nature of such Claim or Equity Interest executed on or after the entry of the Confirmation Order; or (c) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (iv) a Claim or Equity Interest that is allowed pursuant to the terms of this Plan; or (v) a Disputed Claim as to which a proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.  Any claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no proof of claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors or Reorganized Debtor, as applicable.  For the avoidance of doubt, a proof of claim Filed after the General Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

2

**10.**     "*Annual Free Cash Flow Payment*" has the meaning set forth in Article IV.L.3(a).

**11.**     "*Available Cash*" means, with respect to the Reorganized Debtor, on the date of determination, the amount of the Reorganized Debtor's Cash on hand.

**12.**     "*Avoidance Actions*" include all avoidance actions under Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code.

**13.**     "*Bankruptcy Code*" means sections 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time and as applicable to the Chapter 11 Cases.

**14.**     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**15.**     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas, the Local Rules of the Bankruptcy Court, and general orders and chamber procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

**16.**     "*Black Elk Adversary Proceeding*" means the adversary proceeding styled *Montco Oilfield Contractors, LLC v. Black Elk Energy Offshore Operations, LLC,* et al., No. 17-03249 commenced by MOC on May 18, 2017 in its Chapter 11 Case.

**17.**     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as that term is defined in Federal Rules of Bankruptcy Procedure 9006(a).

**18.**     "*Cash*" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and readily marketable securities or instruments issued by an Entity, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000) having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.  When Cash is referred to as MOI's Cash, MOC's Cash, the Reorganized Debtor's Cash, the Liquidating Debtor's Cash or the Liquidating Trust's Cash, it shall mean Cash belonging to such entity at the specified time set forth herein.

**19.**     "*Causes of Action*" means any and all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, defenses, counterclaims and crossclaims (including, without limitation, all claims and any Avoidance Actions, recovery, subordination or other actions against Insiders and/or any other entities under the Bankruptcy Code) now owned or hereafter acquired by the Debtors, the Debtors in Possession, and/or the Estates that are or

3

may be pending or on or have accrued prior to the Effective Date against any person or entity other than any Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date; provided, however, that "*Causes of Acton*" shall exclude any Causes of Action released in the Plan.

20.     "*Chapter 11 Cases*" means the chapter 11 cases commenced when each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date and assigned Case Nos. 17-31646 and 17-31647, jointly administered under Case No. 17-31646.

21.     "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

22.     "*Claims Objection Bar Date*" means the deadline for objecting to scheduled Claims or proofs of Claim, which shall be one hundred eighty (180) days after the Effective Date; provided, however, that the Liquidating Trustee may seek one or more extensions of this date by Filing an appropriate motion with the Bankruptcy Court.

23.     "*Class*" means a category of Claims or Equity Interests as set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

24.     "*Common Units*" means equity units in the Falcon JV.

25.     "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court on the docket in these Chapter 11 Cases.

26.     "*Confirmation Hearing*" means the hearing to consider confirmation of the Plan in accordance with sections 1128(a) and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

27.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents, which order shall be in form and substance satisfactory to the Debtors and the Plan Sponsor.

28.     "*Consummation*" means the occurrence of the Effective Date.

29.     "*Contributed AR*" means, collectively, Contributed MOC AR and Contributed MOI AR.

30.     "*Contributed MOC AR*" means outstanding MOC accounts receivables generated prior to, but not collected as of, the Effective Date.

31.     "*Contributed MOI AR*" means outstanding MOI accounts receivables generated prior to, but not collected as of, the Effective Date.

32.     "*Contribution Agreement*" means that certain Joint Venture Contribution and Formation Agreement, dated as of August 10, 2017, as amended, modified, restated or supplemented from time to time, by and between the Plan Sponsor and MOI, pursuant to which, among other things, the Plan Sponsor and MOI, or Reorganized Debtor, as applicable, will effectuate a series of transactions with respect to the contribution of certain assets to the Falcon

4

JV or Falcon USA Sub, as applicable, a copy of which shall be filed as part of the Plan Supplement.

**33.**     "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

**34.**     "*Creditors' Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases by the U.S. Trustee for the Southern District of Texas, pursuant to section 1102 of the Bankruptcy Code, on March 29, 2017, as such committee may be reconstituted from time to time.

**35.**     "*Debtors*" or "*Debtors in Possession*" means MOI and MOC, and each is referred to as a "*Debtor*".

**36.**     "*December Interest Payment Amount*" means Cash in the aggregate total amount of $542,319.21 that is otherwise due and owing on December 31, 2017 by (a) MOI to the First Lien Lenders under the First Lien Credit Agreement for accrued interest in the amount of $433,053.69, and (b) MOI to the DIP Lenders under the DIP Loan Agreement for accrued interest in the amount of $109,265.52.

**37.**     "*DIP Facility*" means any debtor-in-possession financing facility or facilities established pursuant to the DIP Loan Agreement.

**38.**     "*DIP Facility Claims*" means any Claim derived from or based upon the DIP Loan Agreement.

**39.**     "*DIP Lenders*" means the lenders party to the DIP Loan Agreement from time to time, each in its capacity as such.

**40.**     "*DIP Loan Agreement*" means the credit agreement and related security agreements, mortgages and similar documents governing the DIP Facility, dated May 5, 2017, by and among the Debtors, the DIP Lenders, and JPMorgan Chase Bank, N.A., as agent.

**41.**     "*DIP Order*" means the *Final Order (i) Authorizing Debtors to Obtain Postpetition Superpriority Secured Financing, (ii) Authorizing Use of Cash Collateral, (iii) Granting Adequate Protection, and (iv) Granting Certain Related Relief* [Docket No. 256].

**42.**     "*Disclosure Statement*" means the *Disclosure Statement for the Debtors' Plans of Reorganization and Liquidation*, dated December 26, 2017, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time in compliance with the Disclosure Statement Order, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and which shall be in form and substance reasonably acceptable to the Debtors, the Creditors' Committee, the Plan Sponsor, and the First Lien Agent.

**43.**     "*Disclosure Statement Order*" means the order conditionally approving the Amended Disclosure Statement entered by the Bankruptcy Court on December 21, 2017 [Docket No. 730].

WEST\278410733.12

44.     "*Disputed*" means any Claim or Equity Interest or any portion thereof:  (i) that is listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (ii) as to which the Debtors, the Reorganized Debtor, the Creditors' Committee, the Liquidating Trustee or any other party in interest with standing has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (iii) otherwise disputed by the Liquidating Trustee, the Debtors, or the Reorganized Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

45.     "*Disputed Reserve*" means the reserve fund created pursuant to Article V.B.1 herein.

46.     "*Distributions*" means the distributions of Cash or other consideration on account of Allowed Claims to be made under and in accordance with the Plan.

47.     "*Effective Date*" means the date specified by the Debtors (with the prior written consent of the Plan Sponsor) in a notice filed with the Bankruptcy Court, the form and substance of which shall be reasonably acceptable to the Plan Sponsor, as the date on which the Plan shall take effect, which date shall be following the date by which (i) the Confirmation Order becomes a Final Order and no stay of the Confirmation Order is in effect, unless the Debtors and the Plan Sponsor elect in their sole discretion, to consummate the Plan on an earlier date if an appeal is timely filed; and (ii) all conditions specified in Article VIII of the Plan have been satisfied or waived in accordance with the Plan.

48.     "*Employment Terms*" means a summary of the material employment-related terms (including any compensation package, incentive plan, or bonus), if any, between, on the one hand, Falcon JV and, on the other hand, Lee Orgeron.

49.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

50.     "*Equity Interest*" means any equity interest in the Debtors that existed immediately prior to the Petition Date, including all common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of the Debtors and options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of the Debtors (whether or not arising under or in connection with any employment agreement), including any claim against the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

51.     "*Estate*" or "*Estates*" means the estate(s) of each Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

52.     "*Executory Contract and Unexpired Lease Assumption and Assignment Schedule*" means the schedule designating the Executory Contracts and Unexpired Leases to be assumed and assigned to either Falcon USA Sub, Falcon JV or the Reorganized Debtor, as applicable, and setting forth the monetary cure amount the Debtors believe to be owed with respect to each such Executory Contract and Unexpired Lease.

WEST\278410733.12

53.   "*Executory Contracts and Unexpired Leases*" means all contracts and leases between a Debtor and any third parties that are "executory contracts" or unexpired leases as such terms are used in section 365 of the Bankruptcy Code.

54.   "*Exit Facility*" means a first lien revolving credit facility and term loan under the Exit Facility Credit Agreement, plus any hedges, swaps, or other instruments entered into with any lenders (or affiliates as may be permitted) under the Exit Facility.

55.   "*Exit Facility Credit Agreement*" means the credit agreement, to be dated as of the Effective Date, providing for the Exit Facility.

56.   "*Exit Facility Documents*" means the Exit Facility Credit Agreement and other loan documents, related to or evidencing the loans and obligations thereunder, to be dated as of the Effective Date, governing the Exit Facility, each in form and substance acceptable to MOI, the Plan Sponsor and the First Lien Agent.

57.   "*Exit Facility Lenders*" means, collectively, the lenders from time to time party to the Exit Facility Credit Agreement.

58.   "*Falcon JV*" means Falcon Global Holdings LLC, a Delaware limited liability company to be jointly formed by the Reorganized Debtor and the Plan Sponsor and capitalized as described in this Plan and the Contribution Agreement, or its designee(s).

59.   "*Falcon USA Sub*" means Falcon Global USA LLC, a Delaware limited liability company to be formed by Falcon JV and capitalized as described in this Plan and the Contribution Agreement, or its designee(s).

60.   "*File*" or "*Filed*" or "*Filing*" means, with respect to any pleading, the entry of such pleading on the docket of the Chapter 11 Cases and its service in accordance with the Bankruptcy Rules.

61.   "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

62.   "*Final Order*" means an order, determination or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered on the docket in the Debtors' Chapter 11 Cases (or on the docket of such other court of competent jurisdiction) which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no appeal or petition for certiorari or appropriate motion has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order, determination or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice and as to which the time for any subsequent appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no such subsequent appeal or petition for certiorari or appropriate motion has been timely taken, or has been resolved by the court to which the order, determination or judgment was so subsequently appealed.

WEST\278410733.12

63.     "*First Lien Agent*" means JPMorgan Chase Bank, N.A., in its capacity as administrative agent under the First Lien Credit Agreement and the other First Lien Loan Documents.

64.     "*First Lien Credit Agreement*" means that certain Second Amended and Restated Credit Agreement, dated as of January 29, 2016 (as amended, restated, supplemented, or otherwise modified from time to time thereafter), by and among Montco Offshore, Inc. and ORE, as borrowers, the First Lien Agent and the First Lien Lenders.  MOC is a guarantor under the First Lien Credit Agreement.

65.     "*First Lien Lenders*" means, collectively, the lenders from time to time party to the First Lien Credit Agreement.

66.     "*First Lien Loan Documents*" means the First Lien Credit Agreement and the other Loan Documents (as defined in the First Lien Credit Agreement), and any other document related to or evidencing the loans and obligations thereunder.

67.     "*First Lien Secured Claims*" means the Claims against the Debtors as of the Petition Date arising under the First Lien Loan Documents comprised of the Revolving Loan, the Term A-1 Loan, and the Term C Loan (as each of those terms is defined in the First Lien Credit Agreement), which shall be Allowed, and not subject to any counterclaim, defense, offset, or reduction of any kind, in the principal amount of $115,838,650, plus the accrued but unpaid interest (at the non-default contract rate), expenses, and any and all other obligations due or recoverable under the First Lien Credit Agreement (as calculated in accordance with the First Lien Credit Agreement) in the amount of $260,636.35; provided however, the term First Lien Secured Claims shall not include the obligations owed by ORE, and guaranteed by MOI, under the Term A-2 Loan (as defined in the First Lien Credit Agreement).

68.     "*Free Cash Flow*" means, for a given time period, the consolidated earnings before interest, taxes, depreciation and amortization (*i.e.*, EBITDA) of Falcon JV as computed from the consolidated income statements of Falcon JV and prepared in accordance with generally accepted accounting principles in the United States for such time period consistently applied by the Falcon JV in accordance with its past practice, *less* (a) cash principal and cash interest due and paid during such time period to the senior lenders under the Exit Facility, *less* (b) (i) cash capital expenditures of Falcon JV actually made and not included in the calculation of EBITDA for such period or a prior period, (ii) other expenses of Falcon JV actually paid and not included in the calculation of EBITDA for such period or a prior period, during such period, and less (c) tax distributions made by Falcon JV to its holders of Common Units during such period.

69.     "*General Bar Date*" means July 31, 2017 at 5:00pm (prevailing Central time) as established in the Notice of Chapter 11 Bankruptcy Case [Docket No. 86].

70.     "*General Unsecured Claims*" means all unsecured Claims asserted against the Debtors.

71.     "*Initial Trust Funding*" is defined in Section IV(L)(2) of the Plan.

**72.** "*Impaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**73.** "*Initial Distribution Date*" means that date when the Reorganized Debtor or the Liquidating Trustee, as applicable, makes a distribution to holders of Allowed Claims pursuant to the provisions of the Plan.

**74.** "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

**75.** "*Insurance Policies*" means the insurance policies issued to or for the benefit of any Debtor(s) or any of their predecessors-in-interest and any agreements, documents or instruments related thereto.

**76.** "*Intercompany Claims*" means Claims or Causes of Action held by one Debtor against the other Debtor.

**77.** "*JV Agreement*" means the Limited Liability Company Agreement, governing the Falcon JV to be entered into concurrently with the consummation of the transactions contemplated by the Contribution Agreement.

**78.** "*Lafourche Parish Tax Refund*" means a tax refund in the amount of approximately $1.3 million that is expected to be paid to MOI from Lafourche Parish, Louisiana in or about the summer of 2018.

**79.** "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

**80.** "*Liquidating Debtor*" means MOC.

**81.** "*Liquidating Event*" means (a) (i) any sale, lease, exchange, assignment, or other transfer, directly or indirectly, of all or substantially all of the assets of the Reorganized Debtor; (ii) any sale, lease, exchange, assignment, or other transfer, directly or indirectly, of all or substantially all of the equity interests in the Reorganized Debtor; (iii) any merger or consolidation to which the Reorganized Debtor is a party; or (iv) any liquidation and/or dissolution of the Reorganized Debtor; (b) for so long as the Reorganized Debtor or one of its Affiliates holds Common Units, (i) any sale, lease, exchange, assignment, or other transfer, directly or indirectly, of all or substantially all of the assets of the Falcon JV and its direct or indirect subsidiaries taken as a combined whole, (ii) any sale, lease, exchange, assignment, or other transfer, directly or indirectly, of all or substantially all of the equity interests in Falcon JV, which transaction includes all or a portion of the Common Units held by the Reorganized Debtor, (iii) any merger or consolidation to which Falcon JV or Falcon USA Sub is a party, or (iv) any liquidation and/or dissolution of Falcon JV or Falcon USA Sub; and (c) any sale or other transfer, directly or indirectly, by the Reorganized Debtor of all or a portion of its Common Units that does not occur in connection with any transaction described in clause (a) or (b) of this definition.  A Liquidating Event shall not include a financing transaction not associated with a Liquidating Event.

**82.** "*Liquidating Trust*" means the trust described in Article IV.H of the Plan that shall effectuate the wind down of MOC, and shall make Distributions pursuant to the terms of the Plan and Liquidating Trust Agreement.  With respect to any action required or permitted to

be taken by the Liquidating Trust, the term includes the Liquidating Trustee or any other person authorized to take such action in accordance with the Liquidating Trust Agreement.

**83.** "*Liquidating Trust Agreement*" means the agreement, substantially in the form included in the Plan Supplement and approved by the Creditors' Committee, after consultation with holders of Other Secured Claims, establishing the Liquidating Trust in conformity with the provisions of the Plan, which shall be approved in the Confirmation Order and entered into by the Liquidating Debtor, on behalf of the Liquidating Trust beneficiaries, and the Liquidating Trustee on the Effective Date.

**84.** "*Liquidating Trust Assets*" means, without limitation, (i) the Initial Trust Funding; (ii) Contributed AR and all proceeds therefrom; (iii) all Causes of Action of the MOC Estate, including but not limited to the Black Elk Adversary Proceeding; (iv) all rights of the Liquidating Trust to payment set forth in Article IV.L in respect of Annual Free Cash Flow Payments, if any, and Net Cash Proceeds, if any; (v) all other rights of the Liquidating Trust to payment set forth herein; and (vi) all products and proceeds from any of the foregoing.

**85.** "*Liquidating Trust Committee*" means the committee created hereunder that shall provide oversight and direction to the Liquidating Trustee in accordance with the terms of the Liquidating Trust Agreement.

**86.** "*Liquidating Trust Interests*" means the uncertificated beneficial interests in the Liquidating Trust representing the right of each holder of an Other Secured Claim and each holder of an Allowed General Unsecured Claim to receive Distributions from the Liquidating Trust in accordance with Article IV.L of this Plan and the Liquidating Trust Agreement.

**87.** "*Liquidating Trustee*" means the Person appointed by the Creditors' Committee, after consultation with the Liquidating Debtor, to administer the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and as identified in the Plan Supplement.

**88.** "*MOC*" means Montco Oilfield Contractors, LLC, a debtor in possession in Case No. 17-31647 currently pending in the Bankruptcy Court.

**89.** "*MOC Causes of Action*" means Causes of Action belonging to MOC or its Estate against any and all third parties.

**90.** "*MOI*" means Montco Offshore, Inc. (and, upon the conversion of its corporate form as contemplated as a condition to the occurrence of the Effective Date, such successor entity), a debtor in possession in Case No. 17-31646 currently pending in the Bankruptcy Court.

**91.** "*MOI Causes of Action*" means Causes of Action that previously belonged to MOI or its Estate against any and all third parties.

**92.** "*MOI Contribution Assets*" means those assets specified in the Contribution Agreement that are to be contributed by MOI (or the Reorganized Debtor) to the Falcon JV and/or Falcon USA Sub.  The MOI Contribution Assets shall include, without limitation, (a) all six vessels (and related assets) owned by MOI directly, (b) 100% of the ownership interest of Montco Global, LLC (which entity will be transferred to MOI by Montco International, LLC, an

Affiliate of MOI, prior to the consummation of the transactions contemplated by the Contribution Agreement), and (c) the Orgeron Note.

**93.** "*Net Cash Proceeds*" means (without duplication with any Free Cash Flow) the aggregate Cash proceeds received by the Reorganized Debtor in respect of any Liquidating Event (whether pursuant to a distribution by Falcon JV in accordance with the terms and conditions of the JV Agreement or otherwise), if any, net of (a) direct costs of the Reorganized Debtor relating to such Liquidating Event, including reasonable legal, accounting and investment banking fees, and sales commissions, and (b) taxes paid or payable by the Reorganized Debtor as a result of such Liquidating Event after the Reorganized Debtor has fully utilized all available net operating losses, tax credits and other tax benefits to reduce such taxes paid or payable.

**94.** "*Other Secured Claims*" means Claims against MOI, other than the First Lien Secured Claims or the DIP Facility Claims, that are (i) secured by a Lien on property in which the MOI Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or (ii) subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the MOI Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**95.** "*ORE*" means Orgeron Real Estate, L.L.C.

**96.** "*Orgeron Note*" means that certain promissory note issued by Lee Orgeron to MOI, dated October 28, 2013, in the original principal amount of $20 million.

**97.** "*Person*" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or any other entity as such term is defined in section 101(15) of the Bankruptcy Code.

**98.** "*Petition Date*" means March 17, 2017, the date on which the Debtors filed the Chapter 11 Cases.

**99.** "*Plan*" means this joint plan of reorganization and liquidation under chapter 11 of the Bankruptcy Code, including, without limitation, all applicable exhibits, supplements, appendices and schedules hereto, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, which shall be in form and substance acceptable to the Plan Sponsor.

**100.** "*Plan Sponsor*" means, SEACOR LB Holdings LLC.

**101.** "*Plan Sponsor Contribution Assets*" means those assets specified in the Contribution Agreement that are to be contributed by the Plan Sponsor to the Falcon JV and/or the Falcon USA Sub.  The Plan Sponsor Contribution Assets shall include, without limitation, (a) all nine vessels (and related assets) owned indirectly by the Plan Sponsor through a subsidiary of the Plan Sponsor, (b) $15 million in Cash to be used for working capital purposes, and (c) 100% of its ownership interest in each of SEACOR LB Offshore (MI), LLC and C-Lift LLC (which indirectly owns two vessels).

102.   "*Plan Supplement*" means, collectively, (i) the exhibits to the *Notice of Supplement to the Debtors' Plans of Reorganization and Liquidation* [Docket No. 543], including, among other documents relevant to the implementation of the Plan and the Contribution Agreement, and (ii) any additional supplement(s) to the Plan which additional supplement(s) shall in each case be in form and substance acceptable to the Plan Sponsor and the other parties to such documents (to the extent applicable with respect to each document). The Debtors shall provide counsel to the Creditors' Committee with a copy of the Plan Supplement as soon as reasonably practicable and shall consider, in good faith, any comments the Creditors' Committee may timely provide.

103.   "*Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code.

104.   "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that respective Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interests under the Plan.

105.   "*Procedures Order*" means that certain order entered by the Bankruptcy Court on August 10, 2017 [Docket No. 394].

106.   "*Professional*" means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered and awarded reimbursement of expenses incurred prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

107.   "*Professional Fee Claim Bar Date*" means the date that is forty-five (45) days after the Effective Date.

108.   "*Professional Fee Reserve*" means a reserve funded on the Effective Date from the Reorganized Debtor's and the Liquidating Trust's Cash on hand, as of the Effective Date, which shall initially be funded in an amount equal to the estimated Accrued Professional Compensation allocable to each respective Debtor through the Effective Date provided by each Professional before the Effective Date.  The Professional Fee Reserve shall not be encumbered.

109.   "*Releasees*" means each of the Debtors, the Creditors' Committee, the Plan Sponsor, the First Lien Lenders, the First Lien Agent, the Falcon JV, Falcon USA Sub, the Reorganized Debtor, the Exit Facility Lenders, each of their respective Affiliates, and each of their and their respective Affiliates' current and former Representatives; *provided*, *however*, that each such Person or Entity shall only be released as specifically set forth in Article IX of the Plan.

110.   "*Reorganized Debtor*" means MOI from and after the Effective Date.

111.   "*Representatives*" means, with regard to an Entity, its direct and indirect shareholders, managers, officers, directors, employees, advisors, members, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other

12

representatives (including their respective officers, directors, employees, independent contractors, members and professionals) and each of their predecessors, successors and assigns.

112.   "*Schedules*" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

113.   "*U.S. Trustee*" means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the Southern District of Texas.

114.   "*Unimpaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not Impaired.

**B.**   *Rules of Interpretation*

1.   For purposes herein:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (ii) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) any reference herein to an existing document or exhibit having been filed or to be filed means that document or exhibit, as it may thereafter be amended, modified or supplemented; (iv) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (v) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (viii) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.   The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.   All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**C.**   *Exhibits and Schedules*

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into, and are a part of the Plan, as if set forth herein.  All exhibits and schedules to the Plan, including the Plan Supplement, shall be filed with the Clerk of the Bankruptcy Court not later than the earlier of (i) ten (10) days prior to the commencement of the Confirmation Hearing and (ii) five (5) days prior to the deadline for filing objections to confirmation of the Plan.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtors' claims agent by a written request sent to the following address:

| **If by Regular Mail:** | **If by Messenger or Overnight Delivery:** |
|---|---|
| BMC Group | BMC Group |
| Attn: Montco Claims Processing | Attn: Montco Claims Processing |
| PO Box 90100 | 3732 West 120th Street |
| Los Angeles, CA 90009 | Hawthorne, CA 90250 |

## ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

**A.**     *Administrative Claims*

The Reorganized Debtor and the Liquidating Trustee shall pay, to the extent allocable to their respective Estate, each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim, in Cash, (a) on the later of:  (i) five (5) Business Days after the Effective Date (or, if not then due, within five (5) Business Days after the date when such Allowed Administrative Claim is due in the ordinary course of business); (ii) if such Claim is Disputed and is Allowed after the Effective Date, on the date that is five (5) Business Days after such Claim is Allowed by a Final Order; and (iii) at such later date and upon such terms as may be agreed upon by a holder of an Allowed Administrative Claim and the Reorganized Debtor or the Liquidating Trustee, as applicable; or (b) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that Administrative Claims do not include Administrative Claims Filed after the Administrative Claims Bar Date.

**B.**     *Professional Compensation and Reimbursement Claims and the Professional Fee Reserve*

All Professionals employed by the Debtors or the Creditors' Committee in these Chapter 11 Cases shall (i) provide to the Debtors and the Liquidating Trustee an estimate of their Accrued Professional Compensation through the Effective Date before the Effective Date, and (ii) file all requests for allowance of compensation and reimbursement of expenses pursuant to sections 328, 330 or 503(b) of the Bankruptcy Code for services performed and expenses incurred in these Chapter 11 Cases through the Effective Date by no later than the Professional Fee Claim Bar Date.

On the Effective Date, the Reorganized Debtor and the Liquidating Trustee shall establish and fund the Professional Fee Reserve in accordance with the estimates provided by the Professionals in accordance with the preceding sentence, which estimates shall be reasonably acceptable to the Plan Sponsor.  In the event of excess amounts remaining in the Professional Fee Reserve after all Allowed Claims of Professionals have been paid in full, such excess amounts shall be transferred to the Reorganized Debtor and/or the Liquidating Trust based on the amounts allocable to each of them.

The Confirmation Order shall establish the date the Bankruptcy Court shall hear and determine, all applications for final allowances of compensation or reimbursement of expenses

under sections 328, 330 or 503(b) of the Bankruptcy Code.  Parties in interest shall have thirty (30) days from the Professional Fee Claim Bar Date to formally object to any such fee requests.

**C.**     *Priority Claims*

The Reorganized Debtor shall pay each holder of an Allowed Priority Claim the full unpaid amount of such Allowed Priority Claim in Cash, on the later of: (i) five (5) Business Days after the Effective Date; (ii) five (5) Business Days after the date such Allowed Priority Claim becomes Allowed; and (iii) the date such Allowed Priority Claim is payable under applicable non-bankruptcy law.

**D.**     *General*

Allowed Administrative Claims and Allowed Priority Claims shall be paid in full, by the Reorganized Debtor and the Liquidating Trust based on amounts allocable to each Debtor from Cash held by the Reorganized Debtor and Liquidating Trustee, as applicable.  Allowed Claims for Accrued Professional Compensation shall be paid in full, immediately upon allowance, from the Professional Fee Reserve to the extent of such reserve and, if insufficient funds remain in the reserve, by the Reorganized Debtor and/or the Liquidating Trustee based on amounts allocable to each Debtor from their respective Cash on hand and proceeds of Contributed AR.

# ARTICLE III

# CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.**     *Summary*

**1.**     Except for Administrative Claims and Priority Claims, all Claims against and Equity Interests in each Debtor are placed in consolidated Classes.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims or Priority Claims, as described in Article II.

**2.**     The following table classifies Claims against and Equity Interests in the Debtors, collectively, for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that such Claim or Equity Interest or any portion thereof qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and distribution purposes.

**B.**     *Classification and Treatment of Claims and Equity Interests for the Debtors.*

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1. | DIP Facility Claims | Not impaired | Deemed to Accept |
| 2. | First Lien Secured Claims | Impaired | Entitled to Vote |
| 3. | Other Secured Claims | Impaired | Entitled to Vote |
| 4. | General Unsecured Claims | Impaired | Entitled to Vote |
| 5A. | Equity Interests in MOI | Not Impaired | Deemed to Accept |
| 5B. | Equity Interests in MOC | No Distribution | Deemed to Reject |

   **1.**     *DIP Facility Claims (Class 1)*

           (a)     *Classification*:  Class 1 consists of DIP Facility Claims.

           (b)     *Treatment*:   Except as otherwise set forth in Article IV.L.2 hereof, the DIP Lenders shall be paid in full in cash on the Effective Date in full and final satisfaction, settlement and discharge of, and in exchange for, the DIP Facility Claims.

           (c)     *Voting*:  Class 1 is Unimpaired and, therefore, holders of DIP Facility Claims in Class 1 are deemed to have accepted the Plan.

   **2.**     *First Lien Secured Claims (Class 2)*

           (a)     *Classification*:  Class 2 consists of the First Lien Secured Claims.

           (b)     *Allowance*:  The First Lien Secured Claims shall be Allowed and not subject to any counterclaim, defense, offset, or reduction of any kind, in the amount of $116,099,286.35.

           (c)     *Treatment*:  On the Effective Date, except to the extent that a holder of an Allowed First Lien Secured Claim agrees to less favorable treatment, and except as otherwise set forth in Article IV.L.2 hereof, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed First Lien Secured Claim, each holder of an Allowed First Lien Secured Claim shall receive payment of its Allowed First Lien Secured

Claim from the Exit Facility. All amounts payable under the First Lien Loan Documents arising after the Petition Date shall be paid in accordance with the terms of the DIP Order and this Plan.

(d) *Voting*: Class 2 is Impaired and, therefore, each holder of an Allowed First Lien Secured Claim will be entitled to vote to accept or reject the Plan.

3. *Other Secured Claims (Class 3)*

(a) *Classification*: Class 3 consists of all Other Secured Claims.

(b) *Treatment*: Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, until the earlier of (i) each such holder being paid in full on account of its Allowed Other Secured Claim, and (ii) the Trust Disbursement Termination Date, in full and final satisfaction and discharge of, and in exchange for, each Allowed Other Secured Claim, each holder of an Allowed Other Secured Claim shall receive: (w) following payment in full of all Allowed Administrative Claims and Allowed Priority Claims, such holder's Pro Rata share (among holders of Allowed Class 3 Claims) of Available Cash, if any, and proceeds of Contributed MOI AR, if any; (x) such holder's Pro Rata share (among holders of Allowed Class 3 claims) of each Annual Free Cash Flow Payment from the Reorganized Debtor; (y) in the event of the occurrence of a Liquidating Event, such holder's Pro Rata share (among holders of Allowed Class 3 Claims) of Net Cash Proceeds from such Liquidating Event from the Reorganized Debtor; and (z) such holder's Pro Rata share (among holders of Allowed Class 3 Claims and Allowed Class 4 Claims) of Distributions from all other Liquidating Trust Assets, other than those Liquidating Trust Assets described in Sections 3(b)(w)-(y) hereof. For the avoidance of doubt, the calculation of a holder's Pro Rata share shall be reduced by payments already received under this section. Notwithstanding the foregoing, the Alliance Subordinated Secured Claim shall only receive the treatment described in Sections 3(b)(w)-(y) hereof following payment in full of all other Allowed Class 3 Claims, and until such time as the Alliance Subordinated Secured Claim receives such treatment hereunder, the Pro Rata share of all other Allowed Class 3 Claims for the purposes of Sections 3(b)(w)-(y) hereof shall be determined without regard to the Alliance Subordinated Secured Claim.

(c) *Voting*: Class 3 is Impaired and, therefore, each holder of an Other Secured Claim will be entitled to vote to accept or reject the Plan.

4. *General Unsecured Claims (Class 4)*

(a) *Classification:* Class 4 consists of General Unsecured Claims.

(b) *Treatment:* Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a different treatment, until the earlier of (i) each such holder being paid in full on account of its Allowed General Unsecured Claim, and (ii) the Trust Disbursement Termination Date, in full and final satisfaction and discharge of and in exchange for each Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive: (x) following payment in full of all Allowed Other Secured Claims, including the Alliance Subordinated Secured Claim, such holder's Pro Rata share (among holders of Allowed Class 4 Claims) of each Annual Free Cash Flow Payment from the Reorganized Debtor; (y) in the event of the occurrence of a Liquidating Event, and following payment in full of all Other

Secured Claims in connection with such Liquidating Event, such holder's Pro Rata share (among holders of Allowed Class 4 Claims) of Net Cash Proceeds from such Liquidating Event from the Reorganized Debtor; and (z) such holder's Pro Rata share (among holders of Allowed Class 3 Claims and Allowed Class 4 Claims) of Distributions from all other Liquidating Trust Assets, other than those Liquidating Trust Assets described in Sections 4(b)(x)-(y) hereof.   For the avoidance of doubt, the calculation of a holder's Pro Rata share shall be reduced by payments already received under this section.

(c)     *Voting:*   Class 4 is Impaired and, therefore, the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

**5.**     *Equity Interests in MOI (Class 5A)*

(a)     *Classification:*  Class 5A consists of Equity Interests in MOI.

(b)     *Treatment:*  All existing Equity Interests in MOI shall remain outstanding, and, on and after the Effective Date, shall evidence equity interests in the Reorganized Debtor.

(c)     *Voting:* Class 5A is Unimpaired and, therefore, holders of Equity Interests are deemed to have accepted the Plan.

**6.**     *Equity Interests in MOC (Class 5B)*

(a)     *Classification:*  Class 5B consists of Equity Interests in MOC.

(b)     *Treatment:* All Equity Interests in MOC shall be deemed canceled upon the Effective Date.

(c)     *Voting:* Class 5B is Impaired and will receive no Distribution under the Plan and therefore, holders of Equity Interests in MOC are deemed to have rejected the Plan and are not entitled to vote on the Plan.

**C.**     *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**D.**     *Nonconsensual Confirmation*

The Debtors reserve the right to seek, with the prior written consent of the Plan Sponsor, confirmation of the Plan under section 1129(b) of the Bankruptcy Code.  To the extent that any Class votes to reject the Plan, the Debtors, with the prior written consent of the Plan Sponsor, further reserve the right to modify the Plan in accordance with Article XI.C herein.

# ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

### Provisions Specific to the Reorganized Debtor (MOI)

**A.**     *Contribution of Assets to Falcon JV and/or Falcon USA Sub*

On the Effective Date, (i) MOI (or the Reorganized Debtor) will contribute the MOI Contribution Assets to the Falcon JV (a subset of which will then be contributed to Falcon USA Sub), and (ii) the Plan Sponsor will contribute the Plan Sponsor Contribution Assets to the Falcon JV (a subset of which will then be contributed to Falcon USA Sub), in each case pursuant to the terms and conditions of the Contribution Agreement.  The MOI Contribution Assets and the Plan Sponsor Contribution Assets shall be contributed to the Falcon JV free and clear of all Liens, Claims and encumbrances (other than the Liens securing (A) the Exit Facility; (B) with respect to the contribution to the Falcon JV of the ownership interests in Montco Global, LLC and SEACOR LB Offshore (MI), LLC, the Loan Agreement, dated as of August 3, 2015, as amended or modified from time to time, providing for a Senior Secured Term Loan, by and between Falcon Global LLC, Falcon Pearl LLC and Falcon Diamond LLC, as joint and several borrowers, DNB Markets, Inc., Clifford Capital Pte. Ltd. and NIBC Bank N.V., as mandated lead arrangers, DNB Markets, Inc., as book runner, DNB Bank ASA, New York Branch, as facility agent and security trustee, and the lenders party thereto; and (C) with respect to the contribution to the Falcon JV of the ownership interests in C-Lift LLC, (I) the Credit Agreement, dated as of June 6, 2013, as amended or modified from time to time, providing for a Senior Secured Credit Facility, by and between SEACOR Eagle, LLC, as borrower, DNB Bank ASA, as facility agent and security trustee, and the lenders party thereto, and (II) the Credit Agreement, dated as of June 6, 2013, as amended or modified from time to time, providing for a Senior Secured Credit Facility, by and between SEACOR Hawk, LLC, as borrower, DNB Bank ASA, as facility agent and security trustee, and the lenders party thereto), except as otherwise provided in the Contribution Agreement, which shall be authorized in the Confirmation Order.  The contribution of each of the MOI Contribution Assets and the Plan Sponsor Contribution Assets to the Falcon JV shall be deemed to be an admiralty sale, pursuant to 46 U.S. Code § 31326, and is free and clear of all Liens, Claims and encumbrances (other than as described in the immediately preceding sentence).

**B.**     *Exit Facility*

On the Effective Date, Falcon USA Sub shall enter into the Exit Facility Documents evidencing the Exit Facility, secured by Liens on all of Falcon USA Sub's assets (including the Orgeron Note) and guaranteed by, and secured by all of the assets, of each of the subsidiaries of Falcon USA Sub.  In addition, the Exit Facility will be guaranteed by SEACOR Marine Holdings Inc. up to the amount of interest accruing during the first two years of the Exit Facility.  The Confirmation Order shall provide the attachment and automatic perfection of the Liens securing the Exit Facility.

WEST\278410733.12

C.      *Falcon JV Common Equity*

On the Effective Date, the Reorganized Debtor and the Plan Sponsor shall collectively receive 100% of the Common Units, which shall be allocated between them in proportion to the respective value of the MOI Contribution Assets and the Plan Sponsor Contribution Assets (net of related liabilities), as more fully described in the Contribution Agreement and the JV Agreement.

It is currently expected that, as of the Effective Date, the Reorganized Debtor will own not less than 25% of the Common Units in Falcon JV; provided, however that the percentage ownership of Common Units of each of the Reorganized Debtor and the Plan Sponsor, as of the Effective Date, shall be subject to final determination pursuant to the terms and conditions of the Contribution Agreement and the JV Agreement.

D.      *Employment Terms*

The Employment Terms, when taken as a whole, shall reflect terms that are no better than what is customary in the applicable market and shall be consistent with the Plan Sponsor's past practices.  The Debtors shall disclose the Employment Terms to counsel to the Creditors' Committee (on a confidential basis) at least seven (7) days prior to the Confirmation Hearing. To the extent that any of the Employment Terms are not finally determined by the Plan Sponsor as of such date, MOI or the Reorganized Debtor, as applicable, shall disclose to counsel to the Creditors' Committee or the Liquidating Trustee (each on a confidential basis), as applicable, such Employment Terms promptly following the date on which such terms are finally agreed upon.   Additionally, the Reorganized Debtor shall disclose to the Liquidating Trustee on a confidential basis, any material modifications to and/or payments that are inconsistent with the Employment Terms (including bonuses or other types of incentive compensation) substantially contemporaneous with such modifications and/or payments.  Notwithstanding the foregoing, the restrictions set forth in this section, including all reporting requirements, concerning the Employment Terms shall terminate upon the Trust Disbursement Termination Date.

E.      *Rights and Powers of the Reorganized Debtor*

The Reorganized Debtor shall be deemed the MOI Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth herein.

The Reorganized Debtor shall be authorized and empowered as a representative of the MOI Estate to institute, prosecute, settle, compromise, abandon or release all MOI Causes of Action that are not contributed to the Falcon JV pursuant to the terms and conditions of the Contribution Agreement, at its own expense.  The Reorganized Debtor shall be authorized and empowered as a representative of the MOI Estate and shall have the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy  Rule 2004, including, without limitation, the right to: (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (ii) liquidate any assets not contributed to the Falcon JV or Falcon USA Sub; (iii) make Distributions to holders of Allowed Claims against MOI in accordance with this Plan; (iv) object to Disputed Claims filed against MOI and prosecute, settle or otherwise resolve such objections; (v) establish and administer any

reserves for Disputed Claims that may be required; (vi) perform administrative services related to implementation of this Plan; and (vii) complete and file the federal, state and local tax returns, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of MOI or its Estate for any tax incurred during the administration of the Chapter 11 Case, as determined under applicable tax laws.

**F.**     *Directors/Officers of the Reorganized Debtor on the Effective Date*

On the Effective Date, the directors and executive officers of MOI who served immediately prior to the Effective Date will serve as the directors and officers of the Reorganized Debtor, and their identities shall be disclosed in the Plan Supplement.

**G.**     *Transfer and Vesting of Property of MOI*

On the Effective Date, MOI shall become the Reorganized Debtor.  In connection therewith, on the Effective Date, all of MOI's rights, title and interests in all property of the Estate, whether it be real or personal (except for any property transferred to the Falcon JV or Falcon USA Sub or any of their subsidiaries pursuant to the Contribution Agreement or this Plan, which is governed by Article IV.A and Article VII.A herein), shall automatically vest in the Reorganized Debtor free and clear of all Claims, Liens and encumbrances.  For the avoidance of doubt, MOI's rights, title and interests in that certain adversary proceeding styled *Montco Offshore, Inc. v. Alliance Energy Services, LLC, Oceaneering International, Inc., C&G Welding, Inc., and Aqueos Corporation*, Adv. Proc. No. 17-03402, which adversary proceeding shall be dismissed with prejudice on the Effective Date, shall not be transferred to the Falcon JV or Falcon USA Sub or otherwise vest in the Reorganized Debtor.

**H.**     *Orgeron Note*

Notwithstanding anything to the contrary in this Plan, Lee Orgeron shall not be released from his obligations under the terms of the Orgeron Note, and the Orgeron Note shall continue to be secured by the collateral described in the Orgeron Note.

### Provisions Specific to the Liquidating Debtor (MOC)

**I.**     *Establishment of Liquidating Trust*

On the Effective Date, the Liquidating Trustee shall sign the Liquidating Trust Agreement and, in his or her capacity as Liquidating Trustee, accept all Liquidating Trust Assets on behalf of the beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Liquidating Trust Assets not in his or her possession.  The Liquidating Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date.  Thereupon, the Debtors shall not have any interest in or with respect to the Liquidating Trust Assets.

The Liquidating Trust shall be established for the purposes of (i) liquidating any non-Cash Liquidating Trust Assets; (ii) prosecuting and resolving the MOC Causes of Action; (iii) maximizing recovery of the Liquidating Trust Assets for the benefit of the beneficiaries thereof; (iv) objecting to Claims; and (v) distributing the proceeds of the Liquidating Trust

21

Assets to the beneficiaries in accordance with this Plan and the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidating Trust.

**J.**     *Appointment of the Liquidating Trustee*

The Liquidating Trustee shall be selected by the Creditors' Committee, after consultation with the Liquidating Debtor, and appointed pursuant to the Confirmation Order.  Following appointment, the Liquidating Trustee shall act only in accordance with the Plan and the Liquidating Trust Agreement, and in such capacity shall have the same powers as the board of directors and officers of the Liquidating Debtor, subject to the provisions hereof and of the Liquidating Trust Agreement (and all bylaws, articles of incorporation and related corporate documents are deemed amended by this Plan to permit and authorize the same).  The Liquidating Trustee may be removed at any time by the Liquidating Trust Committee, with or without cause, upon at least ten (10) days' prior written notice to the United States Trustee and the Liquidating Trustee.  In the event of resignation or removal, death or incapacity of the Liquidating Trustee, the Liquidating Trust Committee shall designate another Person or Entity to serve as Liquidating Trustee and thereupon the successor Liquidating Trustee, without any further act or need for an order of the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor; provided, however, that the Liquidating Trustee shall be deemed removed on the date that MOC's Chapter 11 Case is closed, and no successor thereto shall be designated.  The Liquidating Trustee shall be entitled to compensation payable from the Liquidating Trust Assets as set forth in the Liquidating Trust Agreement.

**K.**     *Liquidating Trust Committee*

The Liquidating Trust Committee shall be composed of no fewer than five (5) members, selected prior to the Confirmation Date as follows: three (3) members shall be selected by the Creditors' Committee, one (1) member shall be selected by a majority of holders of Class 3 Other Secured Claims, and one (1) member shall be selected by MOI.  The Liquidating Trust Committee may authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities hereunder have concluded. Unless earlier dissolved, the Liquidating Trust Committee shall be dissolved as of the date on which the Liquidating Trust terminates, pursuant to Article IV.V herein.

**L.**     *Plan and Liquidating Trust Funding*

**1.**     After funding its allocable share of the Professional Fee Reserve, the Reorganized Debtor shall use all Available Cash as of the Effective Date to pay Allowed Administrative Claims and Allowed Priority Claims.

**2.**     Upon satisfaction of the foregoing, remaining Available Cash, if any, shall be used to pay Allowed Other Secured Claims in accordance with Section 3 of Article III.B hereof. Notwithstanding the treatment described in Section 3 of Article III.B hereof:

(a)     if, as of the Effective Date, Available Cash for payment to Allowed Other Secured Claims does not equal or exceed $1.6 million, then holders of Allowed Other Secured

Claims (other than the Alliance Secured Claim) shall receive from the Reorganized Debtor or MOI, as applicable, in addition to the treatment described in Section 3 of Article III.B hereof, (i) the Additional Assets, *plus* (ii) a payment on a Pro Rata basis (among holders of Allowed Other Secured Claims (other than the Alliance Secured Claim)) by the Reorganized Debtor or MOI, as applicable, of that portion of the December Interest Payment Amount in an amount necessary to increase Available Cash for payment to Allowed Other Secured Claims to $1.6 million, provided, however, that to the extent the December Interest Payment Amount is not sufficient to increase Available Cash to $1.6 million, the First Lien Lenders and DIP Lenders shall have no obligation to fund additional amounts so that Available Cash is $1.6 million;

(b)     if, as of the Effective Date, Available Cash for payment to Allowed Other Secured Claims equals or exceeds $1.6 million, but, as of the date that is 270 days after the Effective Date, holders of Allowed Other Secured Claims have not received an aggregate payment of $3 million, then holders of Allowed Other Secured Claims (other than the Alliance Secured Claim) shall receive from the Reorganized Debtor, in addition to the treatment described in Section 3 of Article III.B hereof, (i) the Additional Assets, *plus* (ii) any remaining portion of the December Interest Payment Amount necessary to increase Available Cash for payment to Allowed Other Secured Claims to $3 million in the aggregate (the "Second Backstop Payment"); provided, however, that to the extent any remaining portion of the December Interest Payment Amount is not sufficient to increase Available Cash to $3 million, in the aggregate, the First Lien Lenders and the DIP Lenders shall have no obligation to fund additional amounts so that Available Cash is $3 million.   Any remaining amount of the December Interest Payment Amount, after payment, if at all, of the Second Backstop Payment, shall be paid by the Reorganized Debtor to the Exit Facility Lenders for distribution to the First Lien Lenders and the DIP Lenders in amounts equal to their pro-rata portion of the December Interest Payment Amount; and

(c)     if Available Cash for payment to Allowed Other Secured Claims equals or exceeds $1.6 on the Effective Date, and if holders of Allowed Other Secured Claims have received an aggregate payment of $3 million as of the date that is 270 days after the Effective Date, then:

(i)     the Reorganized Debtor shall pay the December Interest Payment Amount to the Exit Facility Lenders for distribution to the First Lien Lenders and the DIP Lenders in amounts equal to their pro-rata portion of the December Interest Payment Amount;

(ii)     the Additional Assets shall vest in the Reorganized Debtor in accordance with Article IV.G hereof, provided that, in such case, the Reorganized Debtor shall use best efforts to sell the Additional Assets and, upon such sale, transfer the proceeds, if any, to the Exit Facility Lenders; and

(iii)     subject to the prior written consent of the Plan Sponsor, Contributed MOI AR generated between the Confirmation Date and the Effective Date, if any, shall be paid by the Reorganized Debtor to the Falcon JV, provided that, if all or any portion of such Contributed MOI AR is not paid to the Falcon JV in accordance with this subclause (iii), then such portion of such Contributed MOI AR will be paid by the Reorganized Debtor to the Liquidating Trustee to fund the Liquidating Trust.

23

(d)     Notwithstanding the foregoing or any other provision hereof, if the Reorganized Debtor receives the Lafourche Parish Tax Refund on a date that is later than 270 days after the Effective Date, the Reorganized Debtor shall transfer that amount of the Lafourche Parish Tax Refund equal to the Second Backstop Payment made under Section L.2(b) hereof to the Exit Facility Lenders for distribution to the First Lien Lenders and the DIP Lenders in amounts equal to their pro-rata portion of the December Interest Payment Amount.

3.     On the Effective Date, the Liquidating Trust will be initially funded with (a) all Available Cash after accounting for the provisions set forth in Section 1 hereof, if any; (b) all remaining MOC Cash; and (c) additional Cash of $500,000 to be contributed by certain of the Releasees (the "Initial Trust Funding").

4.     The Reorganized Debtor shall continue to disburse to the Liquidating Trust until the earliest of (x) a Liquidating Event, provided, however, that following a Liquidating Event, the Reorganized Debtor shall continue to pay the Liquidating Trust the Net Cash Proceeds payable to the Liquidating Trust with respect to such Liquidating Event pursuant to paragraph 3(b) below until all such amounts pursuant to paragraph 3(b) below are paid in full, and (y) the date on which the Liquidating Trust recovers an aggregate total amount to satisfy, in full, all Allowed Other Secured Claims and Allowed General Unsecured Claims (the "Trust Disbursement Termination Date").   Subject to the immediately preceding sentence, the Reorganized Debtor shall fund the Liquidating Trust as follows:

(a)     For each year (or any portion of a year) from the Effective Date through the Trust Disbursement Termination Date, the Reorganized Debtor shall pay to the Liquidating Trust solely from, and to the extent of, Available Cash, an annual amount equal to the sum of (A) the product of (i) the Free Cash Flow for such period multiplied by (ii) the decimal equivalent of the Reorganized Debtor's percentage ownership of the outstanding Common Units of Falcon JV, such percentage ownership to be calculated pursuant to the terms of the JV Agreement and as of the end of the period for which Free Cash Flow is computed, plus (B) the positive difference, if any, between (i) the amount of all tax distributions received by the Reorganized Debtor from Falcon JV during such period less (ii) the aggregate amount of federal and state income taxes actually paid by the equity owners of the Reorganized Debtor during such period with respect to their ownership interest in the Reorganized Debtor after the application of any net operating losses, tax credits and other tax benefits available to reduce such taxes.  Such annual amount shall be computed annually as of, and for the period ended on, December 31 of each calendar year beginning with the 2018 calendar year, or as of, and for the period ended at, the end of a portion of a calendar year if such payment obligation is terminated prior to December 31 of a year.  Each such annual payment by the Reorganized Debtor is herein referred to as an "Annual Free Cash Flow Payment."  Each Annual Free Cash Flow Payment shall be paid to the Liquidating Trustee within 30 days after the date such payment is required to be computed; provided, however no Annual Free Cash Flow Payments shall be made to the Trust, but shall instead accrue without interest, unless and until the Reorganized Debtor has sufficient Available Cash for payment of such Annual Free Cash Flow Payment, in whole or in part.  Each such Annual Free Cash Flow Payment shall be accompanied by a reasonably detailed computation of such payment with explanatory notes reasonably required for a reader to understand the methods used in the computation of such Annual Free Cash Flow Payment, in each case, prepared by Reorganized MOI.

(b)     The Reorganized Debtor shall also pay to the Liquidating Trust (if, when and solely to the extent that, the Reorganized Debtor has sufficient Available Cash therefor) all of the Net Cash Proceeds actually received by the Reorganized Debtor and/or its shareholders and Affiliates in connection with any Liquidating Event, if any, until either (i) all Allowed Other Secured Claims and Allowed General Unsecured Claims have been paid in full, or (ii) the full amount of any such Net Cash Proceeds in respect of such Liquidating Event have been paid to the Liquidating Trust.

(c)     From the Effective Date through the Trust Disbursement Termination Date, the Falcon JV (i) shall make distributions of "*Available Cash*" (as defined in the JV Agreement) of Falcon JV, if any, from time to time (but not less frequently than annually), to its respective equity owners, unless the board of managers for the Falcon JV determines that making such distributions is not in the business interest of the Falcon JV, and (ii) shall not knowingly take any action to facilitate a scheme or effort by the Reorganized Debtor to hinder, materially delay payment to, or defraud the Reorganized Debtor's creditors.

(d)     From the Effective Date through the Trust Disbursement Termination Date, if, and solely to the extent that, Reorganized Debtor, in its capacity as a holder of Common Units, has voting rights, consent or approval rights with respect to any of the following matters arising pursuant to the terms of the Falcon JV, then the Reorganized Debtor, in its capacity as a holder of Common Units, shall not vote for, consent to or approve any of the following matters without the prior written consent of the Liquidating Trustee, which consent shall not be unreasonably withheld, conditioned or delayed: (i) any proposed amendment to the JV Agreement or other governing documents of Falcon JV, or Falcon JV's direct or indirect subsidiaries, that directly reduces Reorganized Debtor's entitlement to any distribution of cash or property from Falcon JV, or (ii) any distribution of cash or property from Falcon JV to the holders of Common Units in Falcon JV, in respect of such holders' Common Units, in which the Reorganized Debtor's percentage share of such distribution is less than the Reorganized Debtor's percentage ownership of the Common Units (as determined pursuant to the terms and conditions of the JV Agreement) at the time of such distribution.

(e)     For so long as funds are or may become payable to the Liquidating Trust pursuant to this paragraph L, the due and punctual payment and performance by the Reorganized Debtor of its obligations under this paragraph L, shall be secured by a first priority, perfected security interest in all equity interests of the Reorganized Debtor outstanding on the Effective Date and thereafter issued by the Reorganized Debtor; *provided, however,* that the foreclosure of such security interest shall entitle the Liquidating Trust only to a charging order with respect to distributions from the Reorganized Debtor and shall not entitle the Liquidating Trust to become the owner of such equity interests.

(f)     Notwithstanding anything herein to the contrary (including, without limitation, the definitions of "*Free Cash Flow*" and "*Annual Free Cash Flow Payment*"), nothing in the Plan or Confirmation Order shall govern, amend, modify, change, limit, or affect the terms of any agreement or other arrangement relating to the organization, operation, or governance, of the Falcon JV or any of its direct or indirect subsidiaries (including, without limitation, the Contribution Agreement and JV Agreement and any organizational or other governing documents of any direct or indirect subsidiary of Falcon JV), including, without limitation, that,

for the avoidance of doubt, (i) the definition and calculation of each of the Annual Free Cash Flow Payment and Free Cash Flow shall in no event whatsoever be binding on, enforceable against, or create any obligation on the part of, Plan Sponsor or any of its Affiliates or Falcon JV or any of Falcon JV's direct or indirect subsidiaries, and (ii) the definition of "*Free Cash Flow*" set forth in Article I.A(60) herein shall be used solely and exclusively for the purposes specifically set forth in the Plan and/or Confirmation Order.

**M.** *Vesting and Transfer of Liquidating Trust Assets to the Liquidating Trust and Retention of MOC Causes of Action*

Pursuant to Bankruptcy Code section 1141(b), the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all liens, Claims and interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; provided, however, that the Liquidating Trustee may abandon or otherwise not accept any non-Cash Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value to the Liquidating Trust. Any non-Cash Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall not be property of the Liquidating Trust.

The Liquidating Trust Assets include the MOC Causes of Action. These claims and Causes of Action include, but are not limited to, the following:

(a) Avoidance Actions pursuant to chapter 5 of the Bankruptcy Code and state law counterparts, such as claims for preferential and fraudulent transfers that previously belonged to MOC or its Estate.

A list of known transfers is set forth in the MOC's statement of financial affairs, which is incorporated herein. In addition, all secured creditors scheduled as "disputed" in MOC's Schedule D are subject to claims for fraudulent and/or preferential transfers on account of their asserted security interests;

(b) state and common law claims and Causes of Action that previously belonged to MOC or its Estate. Such Causes of Action may include, but are not limited to those identified in the Disclosure Statement or the Plan Supplement and include, without limitation, Causes of Action to collect or enforce the Contributed MOC AR; and

(c) all claims and Causes of Action asserted in, or that could be asserted in, the Black Elk Adversary Proceeding.

The Liquidating Trustee shall be authorized to prosecute any MOC Causes of Action on behalf of the Liquidating Trust.

No holder of a Claim should accept this Plan on the assumption that the holder (or any other person) will not be sued. The Liquidating Trustee may bring any viable MOC Cause of Action against the holder of a Claim or against any other person. Creditors and Interest holders are advised that if they received an avoidable transfer, they may be sued whether or not they vote to accept the Plan.

26

**N.**     *Liquidating Trust Expenses*

Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses and obligations incurred by the Liquidating Trustee in administering the applicable provisions of this Plan, the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from, as applicable, the Liquidating Trust shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee.  Such expenses shall be paid in accordance with the Liquidating Trust Agreement.

**O.**     *Role of the Liquidating Trustee*

**1.**     The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Liquidating Trust Assets; (b) pay taxes or other obligations incurred by the Liquidating Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of Liquidating Trust Assets; (d) calculate and implement Distributions of Liquidating Trust Assets; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidating Trust Agreement, Causes of Action vested in the Liquidating Trust; (f) resolve issues involving Claims and Equity Interests in accordance with this Plan, including but not limited to objecting to Claims; and (g) undertake all administrative functions of the Plan and the Liquidating Debtor's Chapter 11 Case, including the payment of fees payable to the United States Trustee and the ultimate closing of the Liquidating Debtor's Chapter 11 Case.  The Liquidating Trust is the successor to the Liquidating Debtor and its Estate.

**2.**     On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Liquidating Debtor and its Estate; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trust determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or required.

**3.**     The Liquidating Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code section 345 or in other prudent investments, provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

**4.**     The Liquidating Trust shall have the right to object to Claims not otherwise Allowed in connection with post-Effective Date Claims allowance process.

**5.**     In no event later than thirty (30) Business Days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidating Trust has been distributed in accordance with this Plan, the Liquidating Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients and dates of all

27

Distributions made by the Liquidating Trustee under this Plan through each applicable reporting period.

**6.** The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan. The Liquidating Trust also shall annually (for tax years in which Distributions from the Liquidating Trust are made) send to each beneficiary a separate statement setting forth the beneficiary's share of items of income, gain, loss, deduction or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that is not expected to receive any Distribution from the Liquidating Trust. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidating Trust's beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust.

**7.** As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes. The Liquidating Trust may request an expedited determination of taxes of the Liquidating Debtor or of the Liquidating Trust under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Liquidating Debtor and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust. The Liquidating Trust shall be responsible for filing all federal, state, and local tax returns for the Liquidating Debtor and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

**8.** The Liquidating Trust shall be responsible for payments of all Allowed tax obligations of the Liquidating Debtor, and any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets.

**P.**     *Reorganized MOI Reporting Obligations to Liquidating Trustee*

In addition to the other reports required herein, Reorganized Debtor shall provide to the Liquidating Trustee, on a confidential basis: (i) quarterly financial reports for Reorganized Debtor; (ii) all financial reports and financial statements the Reorganized Debtor receives from any other entity, including Falcon JV, within five (5) days from receipt; (iii) explanatory materials selected by the board of managers of Falcon JV in connection with a Liquidation Event for which definitive transaction documents have been fully executed; and (iv) an annual reconciliation of Lee Orgeron's net operating losses and tax attributes. The Liquidating Trustee or his/her designee shall have observation rights on the Reorganized Debtor board of directors.

**Q.**     *Beneficiaries of the Liquidating Trust*

The holders of Allowed Other Secured Claims and Allowed General Unsecured Claims entitled to Distributions shall be the beneficiaries of the Liquidating Trust. Such beneficiaries shall be bound by the Liquidating Trust Agreement. The interests of the beneficiaries in the

Liquidating Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

**R.**     *Preservation of Right to Conduct Investigations*

The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Liquidating Debtor or the Creditors' Committee prior to the Effective Date shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

**S.**     *Prosecution and Resolution of Causes of Action*

**1.**     From and after the Effective Date, prosecution and settlement of all Causes of Action transferred to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust pursuant to this Plan and the Confirmation Order.  From and after the Effective Date, the Liquidating Trust shall have exclusive rights, powers, and interests of the Liquidating Debtor's Estate to pursue, settle or abandon such Causes of Action as the sole representative of the Liquidating Debtor's Estate pursuant to Bankruptcy Code section 1123(b)(3).     Proceeds recovered from all such Causes of Action will be deposited into the Liquidating Trust and will be distributed by the Liquidating Trustee to the beneficiaries in accordance with the provisions of the Plan and Liquidating Trust Agreement.  All MOC Causes of Action that are not expressly released or waived under this Plan are reserved and preserved and vest in the Liquidating Trust in accordance with this Plan.  No Person may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Liquidating Debtor or Liquidating Trustee will not pursue any and all available Causes of Action against such Person.  The Liquidating Trustee expressly reserves all Causes of Action, except for any Causes of Action against any Person that are expressly released or waived under this Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of this Plan.  No claims or Causes of Action against the Releasees that are specifically being released hereunder shall be transferred to the Liquidating Trust, the Liquidating Trustee shall not have standing to pursue such claims or Causes of Action, and all such claims and Causes of Action shall be waived, released and discharged pursuant to the Plan.

**2.**     Settlement by the Liquidating Trust of any Cause of Action transferred to the Liquidating Trust shall require:  (i) approval only of the Liquidating Trustee if the amount claimed by the Liquidating Trust against a defendant is less than one million dollars ($1,000,000); and (ii) approval of the Liquidating Trustee and the Bankruptcy Court, upon notice and a hearing, if the amount claimed by the Liquidating Trust against a defendant is unliquidated or equals or exceeds one million dollars ($1,000,000).

**T.**     *Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets*

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be

owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution from the Liquidating Debtor's Estate of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust's beneficiaries will be treated as the grantors and owners thereof.

**U.**  *Books and Records of the Liquidating Debtor*

As part of the appointment of the Liquidating Trustee, to the extent not already transferred on the Effective Date, the Liquidating Debtor shall transfer dominion and control over all of its books and records to the Liquidating Trustee in whatever form, manner or media those books and records existed immediately prior to the transfer thereof to the Liquidating Trustee. The Liquidating Trustee may abandon all such books and records on or after ninety (90) days from the Effective Date, provided, however, that the Liquidating Trustee shall not dispose or abandon any books and records that are reasonably likely to pertain to pending litigation in which the Liquidating Debtor or its current or former officers or directors are a party or that pertain to General Unsecured Claims without further order of the Bankruptcy Court. Pursuant to section 554 of the Bankruptcy Code, this Article IV.U shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the books and records of the Liquidating Debtor.

**V.**  *Termination of the Liquidating Trust*

The Liquidating Trust shall terminate upon the earlier of (i) the date on which all of the Liquidating Trust Assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the order closing the Chapter 11 Cases is a Final Order or (ii) five (5) years from the date of creation of the Liquidating Trust, unless extended by the Bankruptcy Court as provided herein. The Liquidating Trustee shall at all times endeavor to liquidate expeditiously the Liquidating Trust Assets (or any non-Cash proceeds thereof), and in no event shall the Liquidating Trustee unduly prolong the duration of the Liquidating Trust. The foregoing notwithstanding, in the event that the Liquidating Trustee determines that all of the Liquidating Trust Assets and/or proceeds thereof will not, despite reasonable efforts, be distributed by the date which is five (5) years from the date of creation of the Liquidating Trust, or for any other reason consistent with the Liquidating Trust Agreement and the Plan, and if warranted by the facts and circumstances, the Trustee may petition the Bankruptcy Court to extend the term of the Liquidating Trust. Each and every such extension must be for a reasonable finite period based on the particular facts and circumstances, must be subject to the approval of the Bankruptcy Court and approved upon a finding that the extension is necessary to the liquidating purpose of the Liquidating Trust and must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term. At such time as the Liquidating Trust has been fully administered, and in all events within sixty (60) days after the Trust Disbursement Termination Date, the Liquidating Trustee will file an application for approval of his final report and the entry of the final decree by the Bankruptcy Court. In the event the Trustee intends to abandon any property, it shall first offer to convey such property to the Liquidating Trust Committee. Upon final distribution

pursuant to the Plan and the Liquidating Trust Agreement, the Trustee shall retain the books, records and files that shall have been delivered to or created by the Liquidating Trustee.  At the Liquidating Trustee's discretion, all of such records and documents may be destroyed at any time after two (2) years after the Trust Disbursement Termination Date.

### Provisions Applicable to Each of the Debtors

**W.**     *Operations of the Debtors Between the Confirmation Date and the Effective Date*

The Debtors shall continue to operate as Debtors in Possession during the period from the Confirmation Date through the Effective Date.

**X.**     *Establishment of the Administrative Claims Bar Date*

**1.**     The Confirmation Order shall approve the Administrative Claims Bar Date.

**2.**     Except as otherwise provided in this Article, on or before the Administrative Claims Bar Date, each holder of an Administrative Claim shall File with the Bankruptcy Court a request for payment of its Administrative Claim and serve a copy thereof so it is received substantially contemporaneous with the Filing on counsel to the Reorganized Debtor and the Office of the United States Trustee for the Southern District of Texas.

**3.**     The request for payment of an Administrative Claim will be timely filed only if it is ***actually received*** by the Bankruptcy Court, counsel to the Reorganized Debtor, and the Office of the United States Trustee for the Southern District of Texas by the Administrative Claims Bar Date.

**4.**     Notwithstanding anything in this Article, Professionals shall not be required to file a request for fees and expenses arising under sections 328, 330, 331 or 503(b)(2)–(5) of the Bankruptcy Code, on or before the Administrative Claims Bar Date, as they will instead file final fee applications by the Professional Fee Claim Bar Date.

**Y.**     *Term of Injunctions or Stays*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed.

**Z.**     *Creditors' Committee*

Upon the Effective Date, the Creditors' Committee shall dissolve, and its members and Professionals shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case; provided; however, that the Creditors' Committee shall be deemed to continue to exist and have authority to act in this Chapter 11 Case, and its Professionals shall be deemed retained, after such date solely with respect to: (i) applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code; (ii) review and, if appropriate, objections to any request for compensation or expense reimbursement filed by a Professional; (iii) seek reimbursement of expenses sought by a member of the Creditors' Committee; and (iv) defend against appeals of the Confirmation Order, if any.  The

Reorganized Debtor or the Liquidating Trustee, as applicable, shall pay the fees, costs and expenses of such Professionals incurred after the Effective Date, if such fees, costs and expenses are approved by the Bankruptcy Court.

**AA.** *Debtors' Professionals*

Upon the Effective Date, the Debtors' Professionals shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case; provided, however, that the Debtors' Professionals shall be deemed retained after such date solely with respect to:  (i) applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code; (ii) motions seeking enforcement of the provisions of the Plan or the Confirmation Order; (iii) review and, if appropriate, objections to any request for compensation or expense reimbursement filed by a Professional; and (iv) defend against appeals of the Confirmation Order, if any.  The Reorganized Debtor or the Liquidating Trustee, as applicable, shall pay the fees, costs and expenses of such Professionals incurred after the Effective Date, if such fees, costs and expenses are approved by the Bankruptcy Court.

**ARTICLE V**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.** *Initial Distribution Date*

On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Reorganized Debtor or the Liquidating Trustee, as applicable, shall make, or shall make adequate reserves for, the Distributions required to be made under the Plan with respect to Allowed Claims (other than Allowed Class 1 and Class 2 Claims).  All Distributions to holders of Allowed Claims shall be made pursuant to the terms of Article III.B.

**B.** *Disputed Reserve*

**1.** *Establishment of the Disputed Reserve*

On the Initial Distribution Date, the Reorganized Debtor or the Liquidating Trustee, as applicable, shall establish a Disputed Reserve for Disputed General Unsecured Claims.  The Reorganized Debtor or the Liquidating Trustee, as applicable, shall reserve, in Cash or other property, for Distribution on account of each Disputed Claim, the full asserted amount (or such lesser amount as may be estimated by the Bankruptcy Court in accordance with Article VI.D) with respect to each such Disputed Claim.

**2.** *Maintenance of the Disputed Reserve*

To the extent that the property placed in the Disputed Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account, or other account with fewer fees, whichever preserves the corpus of the Disputed Reserve the most, at the Reorganized Debtor's or Liquidating Trustee's respective sole discretion.  The Reorganized Debtor or the Liquidating Trustee, as applicable, shall hold property in the Disputed Reserve in trust for the benefit of the holders of Disputed Claims ultimately determined to be Allowed.  The Disputed Reserve shall be closed by the Reorganized Debtor or the Liquidating Trustee, as applicable, when all

Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan and all Disputed Claims on account of which the Disputed Reserve was created and funded shall be deemed extinguished upon the last such Disputed Claim becoming Allowed or disallowed by a Final Order of the Bankruptcy Court.  Upon closure of the Disputed Reserve, any remaining funds shall be transferred to the Liquidating Trust.

**C.**     *Subsequent Distributions*

Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be distributed as soon as practicable, and in accordance with the terms of this Plan, after such Claim is Allowed by a Final Order of the Bankruptcy Court.

**D.**     *Delivery of Distributions*

**1.**     *General Provisions; Undeliverable Distributions*

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Reorganized Debtor or the Liquidating Trustee (and not, for the avoidance of doubt, by the Plan Sponsor (or any of its Affiliates), the Falcon JV or Falcon USA Sub or any of their respective subsidiaries), as applicable, at (i) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such holder or (ii) the last known address of such holder if no proof of Claim is Filed or if the Reorganized Debtor or Liquidating Trustee, as applicable, have been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Reorganized Debtor or Liquidating Trustee, as applicable, may, in their discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Reorganized Debtor or Liquidating Trustee deem appropriate, but no Distribution to any holder shall be made unless and until the Reorganized Debtor or Liquidating Trustee have determined the then-current address of the holder, at which time the Distribution to such holder shall be made to the holder without interest from and after the Effective Date through the date of Distribution.  Amounts in respect of any undeliverable Distributions made by the Reorganized Debtor or Liquidating Trustee shall be returned to, and held in trust by, the Reorganized Debtor or Liquidating Trustee, as applicable until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code as set forth below in Article V.D.2.  The Reorganized Debtor or Liquidating Trustee shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that such discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

**2.**     *Unclaimed Property*

Except with respect to property not distributed because it is being held in the Disputed Reserve, Distributions that are not claimed by the expiration of one year from the Effective Date shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code, and the Claims with respect to which those Distributions are made shall be automatically cancelled.

After the expiration of that one-year period, the right of any Entity to those Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require the Reorganized Debtor or Liquidating Trustee to attempt to locate any holder of an Allowed Claim.

E.    *Manner of Cash Payments Under the Plan*

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Reorganized Debtor or the Liquidating Trustee, as applicable, or by wire transfer from a domestic bank, at the option of the Reorganized Debtor or Liquidating Trustee, as applicable.

F.    *Time Bar to Cash Payments by Check*

Checks issued by the Reorganized Debtor or Liquidating Trustee, as applicable, on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Article V.F. shall be made directly to the Reorganized Debtor or Liquidating Trustee, as applicable, by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim.  After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall become unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

G.    *Compliance with Tax Requirements*

In connection with making Distributions under this Plan, to the extent applicable, the Reorganized Debtor and Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Reorganized Debtor and Liquidating Trustee may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Reorganized Debtor or Liquidating Trustee, as applicable, to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article V.D.1 hereof.

H.    *No Payments of Fractional Dollars and Minimum Distributions*

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar. Neither the Reorganized Debtor nor Liquidating Trustee, as applicable, shall be obligated to make any Distribution of less than $10.

I.      *Interest on Claims*

Except as specifically provided for in this Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid on any Claim, or portion thereof, that is a Disputed Claim in respect of the period from the Effective Date to the date such Disputed Claim, or portion thereof, becomes an Allowed Claim and Distributions are made on account thereof.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

J.      *No Distribution in Excess of Allowed Amount of Claim*

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim, shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

K.      *Setoff and Recoupment*

The Liquidating Trustee or the Reorganized Debtor, as applicable, may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any Debtor or Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Liquidating Trustee or the Reorganized Debtor on behalf of the Debtors, the Estates, the Reorganized Debtor or the Liquidating Trustee as a successor in interest of any right of setoff or recoupment that any of them may have against the holder of any Claim.

## ARTICLE VI

## DISPUTED CLAIMS

A.      *No Distribution Pending Allowance*

Notwithstanding any other provision of the Plan, the Liquidating Trustee and the Reorganized Debtor shall not distribute any Cash or other property on account of any Claim that is Disputed unless and until such Claim or portion thereof becomes Allowed.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  Upon allowance, a holder of the Allowed Disputed Claim shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim been Allowed on the Effective Date.

B.      *Resolution of Disputed Claims*.

After the Effective Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to make and File objections to General Unsecured Claims.

After the Effective Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtor shall have the right to make and File objections to all Claims other than General Unsecured Claims. The costs of pursuing the objections to such Claims shall be paid by the Reorganized Debtor.

**C.**     *Objection Deadline*

All objections to Disputed Claims, shall be Filed and served upon the holders of each such Claim not later than one hundred eighty (180) days after the Effective Date, unless otherwise extended by order by the Bankruptcy Court after notice and a hearing.

**D.**     *Estimation of Claims*

At any time the Liquidating Trustee, with respect to General Unsecured Claims, and the Reorganized Debtor, with respect to all other Claims, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether the Debtors, the Reorganized Debtor or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Liquidating Trustee or the Reorganized Debtor, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE VII

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     *Assumption and Rejection of Executory Contracts and Unexpired Leases*

The Plan shall constitute a motion to reject all Executory Contracts and Unexpired Leases other than those Executory Contracts and Unexpired Leases designated for assumption and assignment to either Falcon USA Sub, Falcon JV or the Reorganized Debtor, as applicable, in the Executory Contract and Unexpired Lease Assumption and Assignment Schedule, which schedule shall be filed with the Bankruptcy Court no fewer than five (5) Business Days before the Confirmation Hearing. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all such rejections and assumptions and assignments pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**B.**     *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Claims resulting from the rejection of Executory Contracts and Unexpired Leases pursuant to Article VII.A herein, or the expiration or termination of any Executory Contract or Unexpired Lease after the entry of the Confirmation Order, but prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Liquidating Trustee and MOI (or the Reorganized Debtor, as applicable) no later than thirty (30) days after the Effective Date.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to this Article VII.B. for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estate, the Reorganized Debtor, the Liquidating Trustee, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article IX.E herein.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as a Class 4 Claim and shall be subject to the provisions of Article III.B.

**C.**     *Cure Claims*

The Debtors shall set forth on the Executory Contract and Unexpired Lease Assumption and Assignment Schedule the monetary cure amount the Debtors believe to be owed with respect to each Executory Contract and Unexpired Lease listed thereon.  Unless the counterparty to an Executory Contract or Unexpired Lease agrees to different treatment, the cure amount set forth on the Executory Contract and Unexpired Lease Assumption and Assignment Schedule with respect to such Executory Contract or Unexpired Lease, or any undisputed portion thereof, or a different amount of the cure Claim that is Allowed by a Final Order shall be paid in full, in Cash, by (a) in the case of those Executory Contracts and Unexpired Leases designated for assumption and assignment to Falcon USA Sub or Falcon JV, the Reorganized Debtor in accordance with the terms and conditions of the Contribution Agreement, and (b) in the case of all other Executory Contracts and Unexpired Leases, the Reorganized Debtor, in each case, as applicable, on the later of: (i) fifteen (15) Business Days after the Effective Date and (ii) fifteen (15) Business Days after the date such Claim is Allowed.

**D.**     *Insurance Policies*

Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, unless specifically rejected by order of the Bankruptcy Court, all Insurance Policies shall be assumed under the Plan as executory contracts, and nothing in the Plan or the Confirmation Order shall alter the rights and obligations of the Debtors or the insurers under the Insurance Policies (which rights and obligations shall be determined under the applicable Insurance Policies and applicable non-bankruptcy law relating thereto) or modify the coverage thereunder, and all of the Insurance Policies shall continue in full force and effect according to their terms and conditions.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

The following are conditions precedent to the occurrence of the Effective Date:

**1.**      The Confirmation Order has been entered and become a Final Order.

**2.**      The corporate form of MOI shall have been converted from a Louisiana S corporation to a limited liability company organized under the laws of a jurisdiction acceptable to the Plan Sponsor, which shall be in good standing and shall be treated as a "flow-through" entity for income tax purposes.

**3.**      The JV Agreement and Contribution Agreement have been executed and delivered and become effective, and all conditions to closing set forth therein shall have been satisfied.

**4.**      The Exit Facility Documents have been executed and become effective, and all conditions to closing set forth therein shall have been satisfied.

**5.**      The appointment of the Liquidating Trustee shall have been authorized, approved and confirmed by order of the Bankruptcy Court and such appointment accepted by the Liquidating Trustee.

**6.**      The Alliance Settlement Agreement shall have been executed and delivered and become effective, and all conditions to closing set forth therein shall have been satisfied.

**7.**      All of the foregoing conditions have been satisfied or waived on or before February 16, 2018; provided, however, that the foregoing date may be extended by the Plan Sponsor, in its sole discretion, for up to ninety (90) days thereafter, by written notice delivered by the Plan Sponsor to MOI, if all applicable waiting periods under any Antitrust Law (as defined in the Contribution Agreement) shall not have expired or otherwise been terminated as of February 16, 2018.

**8.**      The Debtors, with the prior written consent of the Plan Sponsor in its sole discretion and, with respect to 4 above, the First Lien Agent, may waive the occurrence of, or modify, any of the foregoing conditions precedent to the Effective Date (except for entry of the Confirmation Order and closing of the Alliance Settlement Agreement).  Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

WEST\278410733.12

## ARTICLE IX

## INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

**A.**     *Compromise and Settlement*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, each Estate and holders of Claims and Equity Interests as well as a finding by the Bankruptcy Court that the auction of the right to be a Plan Sponsor, and the acquisition of the equity interests in the Falcon JV (in the form of the Common Units) by the Reorganized Debtor were completed in good faith and the Plan Sponsor is otherwise a good faith purchaser of the Falcon JV, whose equity interests are owned, in part, by the Reorganized Debtor.

**B.**     *Releases*

**1.**     *Releases by the Debtors and the Estates*.  Notwithstanding anything contained in the Plan to the contrary (except with respect to Causes of Action contributed to the Falcon JV pursuant to the terms and conditions of the Contribution Agreement), as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation, the services of the Releasees in facilitating the expeditious implementation of the Plan and, with respect to certain of the Releasees, that payment contemplated under Section IV(L)(2) of the Plan, the Debtors hereby provide a full release to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtors) from any and all Causes of Action and any other debts (including any loans made by MOI to any of MOI's employees or other Representatives, or any such employees' or other Representatives' family members or trusts), obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtors, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that the Debtors would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtors or their Estates and further including those in any way related to the Estates, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article IX.B.1 shall not operate to waive or release the Releasees from any obligation under this Plan, or the Confirmation Order, as applicable.  For the avoidance of doubt, upon the Effective Date, each Debtor provides a full release to the other on account of any Intercompany Claims owing to the other Debtor.

**2.**        _Releases by Holders of Claims and Interests._        Notwithstanding anything contained in this Plan to the contrary (except with respect to Causes of Action contributed to the Falcon JV pursuant to the terms and conditions of the Contribution Agreement), as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the holders of Claims against and interests in the Debtors and the Reorganized Debtor who vote to accept the Plan or who vote to reject the Plan and do not return Ballot to indicate their refusal to grant the releases provided in this sub-paragraph, shall be deemed to forever release, waive, and discharge each of the Releasees from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever in connection with or in any way relating to the Debtors, the conduct of the Debtors' businesses, the Chapter 11 Cases, the Disclosure Statement or the Plan (other than the rights of the Debtors, the Reorganized Debtor, or a Creditor holding an Allowed Claim to enforce the obligations under the Confirmation Order and the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; provided, however, that nothing in this Article IX.B.2 shall operate as a release, waiver or discharge of any Causes of Action or liabilities arising out of willful misconduct, fraud or criminal acts of any such Releasee as determined by a Final Order; provided further that, for good and valuable consideration and except as otherwise expressly set forth herein, each of the Releasees are deemed to have released all other Releasees hereunder.

**3.**        Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article IX.B pursuant to Bankruptcy Rule 9019 and its finding that they are:  (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all holders of Claims and Equity Interests; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Releasees asserting any Claim or Cause of Action thereby released.

**C.**        _Exculpation_

        Notwithstanding anything contained in the Plan to the contrary, the Releasees shall neither have nor incur any liability to any Entity for any Claims or Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or Disclosure Statement or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Plan; provided, however, that the foregoing provisions of this Article IX.C shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; _provided, further_, that each Releasee shall be entitled to rely upon the advice of counsel concerning its duties; _provided, further_, that the foregoing provisions of this Article IX.C shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or any defenses thereto.

D.    *Injunction*

    **1.**    Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors or the Reorganized Debtor or the Liquidating Trustee, their successors and assigns (including Falcon JV and Falcon USA Sub), and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

    **2.**    Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Debtors in Possession, the Estates, the Creditors' Committee, the Reorganized Debtor, the Liquidating Trustee, their successors and assigns (including Falcon JV and Falcon USA Sub) and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

    **3.**    The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests of any nature whatsoever, against the Debtors or any of their assets or properties.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

    **4.**    Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from:

        (a)    commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, the Reorganized Debtor, their successors and assigns (including, without limitation, Falcon JV and Falcon USA Sub) and their assets and properties;

        (b)    enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, the Reorganized Debtor, their successors and assigns (including, without limitation, Falcon JV and Falcon USA Sub) and their assets and properties;

        (c)    creating, perfecting or enforcing any encumbrance of any kind against any Debtor, the Reorganized Debtor or the property or estate of any Debtor or Reorganized Debtor;

        (d)    asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Debtor or against the property or estate of any Debtor or the Reorganized Debtor, except to the extent a right to setoff, recoupment or subrogation is asserted with respect to a timely filed proof of claim; or

        (e)    commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.

E.      _Release of Liens_

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estates, shall be fully released and discharged, and all of the Debtors' rights, title and interests in such property shall be distributed or transferred in accordance with this Plan.

## ARTICLE X

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and with respect to all matters related to the Chapter 11 Cases, the Debtors, the Estates, all property of the Estates and the Plan as is legally permissible, including, without limitation, jurisdiction to:

**1.**      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance, secured status or priority of Claims or Equity Interests;

**2.**      grant, deny or otherwise resolve any and all applications of Professionals for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

**3.**      resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor was party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

**4.**      ensure that Distributions to holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

**5.**      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee or the Reorganized Debtor after the Effective Date, _provided_, _however_, the right of the Liquidating Trustee or the Reorganized Debtor to commence actions in all appropriate jurisdictions shall be fully reserved;

**6.**      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

**7.**      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.       issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.       enforce Article IX.A, Article IX.B and Article IX.C hereof;

10.       enforce the Injunction set forth in Article IX.E hereof;

11.       resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12.       enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.       resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

14.       enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

**A.**       *Final Fee Applications*

The deadline for submission by Professionals of final applications for Bankruptcy Court approval of Accrued Professional Compensation shall be the Professional Fee Claim Bar Date.

**B.**       *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable.  From and after the Effective Date, the Reorganized Debtor shall be liable for and shall pay the fees under 28 U.S.C. § 1930 assessed against the MOI Estate under 28 U.S.C. § 1930 until entry of a Final Decree closing the case.  In addition, the Reorganized Debtor and/or the Liquidating Trustee shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines, until entry of an order closing or converting the case.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an administrative claim against the Debtors and their Estates.

**C.**       *Modification of the Plan*

Subject to the limitations contained in the Plan:  (i) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan,

with the consent of the Plan Sponsor in its sole discretion, prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Debtors, Reorganized Debtor or the Liquidating Trustee, as the case may be with the prior written consent of the Plan Sponsor in its sole discretion, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**D.**     *Revocation of Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order**,** and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, or if the Contribution Agreement is otherwise terminated by either the Plan Sponsor or MOI in accordance with its terms and conditions, then: (i) the Plan shall be null and void in all respects; (ii) the Contribution Agreement shall be null and void and the Plan Sponsor shall not be required to fulfill its obligations thereunder; (iii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iv) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of the Debtors, the Creditors' Committee, the Plan Sponsor, or any other Entity; or (c) constitute an admission of any sort by the Debtors, the Plan Sponsor, the Creditors' Committee, or any other Entity.  Notwithstanding the foregoing, the Procedures Order shall remain in full force and effect, including with respect to MOI's obligations with respect to the Breakup Fee and Expense Reimbursement (each as defined in the Procedures Order).

**E.**     *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein and the Plan Supplement shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**F.**     *Governing Law and Construction*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Texas, without giving effect to the principles of conflict of laws thereof.  Any inconsistency between the Plan and the Confirmation Order shall be construed in favor of and so as to give effect to the Confirmation Order.  All exhibits and schedules to the Plan and the Plan Supplement shall be incorporated in the Plan by this reference, as though set forth at length herein.

**G.**     *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any

statement or provision contained herein, nor the taking of any action by the Debtors, the Creditors' Committee, the Plan Sponsor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) the Debtors, the Plan Sponsor, or the Creditors' Committee with respect to the holders of Claims or Equity Interests or other parties in interest; or (ii) any holder of a Claim or Equity Interest or other party-in-interest prior to the Effective Date.

**H.**     *Article 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**I.**     *Section 1125(e) Good Faith Compliance*

The Debtors, the Plan Sponsor, the Creditors' Committee and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code, and the Confirmation Order shall including a finding of fact to that effect.

**J.**     *Further Assurances*

The Debtors, the Reorganized Debtor, the Creditors' Committee, the Liquidating Trustee, all holders of Claims and Equity Interests receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**K.**     *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors, Reorganized Debtor or the Creditors' Committee, in addition to any direction of service of notice by any order, shall be sent by first class U.S. mail, postage prepaid as follows:

To the Debtors:

Montco Offshore, Inc.
17751 Hwy 3235
Galliano, Louisiana 70354

Montco Oilfield Contractors, LLC
842 West Sam Houston Pkwy N. #500
Houston, Texas 77024

WEST\278410733.12

<u>*with a copy to*</u>:

        DLA Piper LLP (US)
        444 W. Lake Street, Suite 900
        Chicago, Illinois 60601
        Attn: David Avraham

        -and-

        Drinker Biddle & Reath LLP
        1717 Main Street, Suite 5400
        Dallas, Texas 75201
        Attn: Vince Slusher

To the Plan Sponsor:

        SEACOR LB Holdings LLC
        c/o SEACOR Marine Holdings, Inc.
        7910 Main Street, 2nd Floor
        Houma, Louisiana 70360
        Attn: Jesus Llorca

*with a copy to*:

        Milbank, Tweed, Hadley & McCloy LLP
        28 Liberty Street
        New York, New York 10005
        Attn: Evan Fleck

To the Creditors' Committee:

        Porter Hedges LLP
        1000 Main Street, Suite 3600
        Houston, Texas 77002
        Attn: John F. Higgins, IV

To the First Lien Agent:

        JP Morgan Chase Bank NA
        2200 Ross Avenue, Suite 800
        Mail Code TX1-2939
        Dallas, Texas 75201
        Attn: Steve Milliken

*with a copy to:*

> Norton Rose Fulbright US LLP
> 2200 Ross Avenue, Suite 3600
> Dallas, Texas 75201-7932
> Attn: Kristian W. Gluck

To the Liquidating Trustee:

> Mr. Drew McManigle
> c/o SierraConstellation Partners
> Pennzoil Place
> 700 Milam Street, Suite 1300
> Houston, Texas 77002

**L.**     *Filing of Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**M.**     *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

[*Remainder of page intentionally left blank.*]

WEST\278410733.12

Dated: December 26, 2017     **Montco Offshore, Inc.**
   Houston, Texas

          /s/  *Derek C. Boudreaux*
          By: Derek C. Boudreaux
          Its: Chief Financial Officer


          **Montco Oilfield Contractors, LLC**

          /s/  *Derek C. Boudreaux*
          By: Derek C. Boudreaux
          Its: Manager


Prepared by:

Vincent P. Slusher (State Bar No. 00785480)
**Drinker Biddle & Reath LLP**
1717 Main Street, Suite 5400
Dallas, Texas 75201
Telephone: (469) 357-2500
Facsimile: (469) 327-0860
vince.slusher@dbr.com

Daniel M. Simon (admitted *pro hac vice*)
David E. Avraham (admitted *pro hac vice*)
**DLA Piper LLP (US)**
444 W. Lake Street, Suite 900
Chicago, Illinois 60606-0089
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
daniel.simon@dlapiper.com
david.avraham@dlapiper.com

*Attorneys for the Debtors*