IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
01/18/2018

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 17-31646 |
| MONTCO OFFSHORE, INC., *et al.*,[1] | § | |
| | § | Chapter 11 |
| Debtors. | § | |
| | § | (Jointly Administered) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING THE
DISCLOSURE STATEMENT AND CONFIRMING THE AMENDED PLAN OF
REORGANIZATION OF DEBTOR MONTCO OFFSHORE, INC. AND THE AMENDED
PLAN OF LIQUIDATION OF DEBTOR MONTCO OILFIELD CONTRACTORS, LLC
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned debtors (collectively, the "Debtors") having:

- commenced the Chapter 11 Cases[2] on March 17, 2017 (the "Petition Date"), by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code");

- continued to operate their businesses and remain in possession of their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

- obtained, on December 21, 2017, entry of the *Order (A) Scheduling a Hearing for Approval of the Amended Disclosure Statement and Confirmation of the Amended Plans, and (B) Establishing Objection Deadlines and Related Procedures* [Dkt. 730] (the "Scheduling Order"), which, among other things, (i) directed the Debtors to file the Amended Solicitation Package (as defined in the Scheduling Order), including the Plan and Disclosure Statement, by no later than December 26, 2017 at 5:00 p.m. (CT), (ii) set December 28, 2017 at 12:00 p.m. (CT) as the Solicitation Package Objection Deadline and the deadline to object to conditional approval of the Disclosure Statement, and (iii) set January 2, 2018 as the deadline by which the Debtors were to complete distribution of the Amended Solicitation Packages;

- filed, on December 26, 2017, the *Amended Plan of Reorganization of Debtor Montco Offshore, Inc. and Amended Plan of Liquidation of Debtor Montco Oilfield Contractors, LLC* [Dkt. 740] (collectively, the "Plan") and the *Disclosure Statement for Amended Plan of Reorganization of Debtor Montco Offshore, Inc. and Amended*

---

[1]   The Debtors in these chapter 11 cases, together with the last four (4) digits of each Debtor's federal tax identification number, are Montco Offshore, Inc. (1448) and Montco Oilfield Contractors, LLC (9886). The mailing address for the Debtors, solely for the purposes of notices and communications, is 17751 Hwy 3235, Galliano, Louisiana 70354.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

*Plan of Liquidation of Debtor Montco Oilfield Contractors, LLC* [Dkt. 741] (the "Disclosure Statement");

- filed, on December 28, 2017, the *Notice of Filing of Revised Disclosure Statement for Amended Plan of Reorganization of Debtor Montco Offshore, Inc. and Amended Plan of Liquidation of Debtor Montco Oilfield Contractors, LLC Under Chapter 11 of the Bankruptcy Code* [Dkt. 747] (the "Amended Solicitation Package Notice");

- caused, by January 2, 2018, the Amended Solicitation Package to be distributed, consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Scheduling Order, as evidenced by the *Certificate of Service of Kevin A. Martin* filed on January 9, 2018 [Dkt. 757] (the "Solicitation Certificate");

- filed, on January 8, 2018, the *Notice of Filing of First Amendment to Joint Venture Contribution and Formation Agreement* [Dkt. 755];

- filed, on January 10, 2018, the *Notice Regarding Executory Contract and Unexpired Lease Assumption and Assignment Schedule* [Dkt. 759];

- filed, on January 17, 2018, the *Notice of Filing of Plan Supplement for the Debtors' Amended Plans of Reorganization and Liquidation* [Dkt. 776] (as may be modified, supplemented or amended from time to time, the "Plan Supplement"), which contained, among other things, a form of the Liquidating Trust Agreement;

- filed, on January 17, 2018, filed the *Declaration of Balloting Agent Regarding Solicitation and Tabulation of Votes in Connection with the Combined Disclosure Statement and Plan of Reorganization of Debtor Montco Offshore, Inc. and Plan of Liquidation of Debtor Montco Oilfield Contractors, LLC Under Chapter 11 of the Bankruptcy Code* [Dkt. 777] (the "Voting Declaration"); and

- filed, on January 17, 2018, the *Declaration of Derek C. Boudreaux in Support of Confirmation of Amended Plan of Reorganization of Debtor Montco Offshore, Inc. and Amended Plan of Liquidation of Debtor Montco Oilfield Contractors, LLC Under Chapter 11 of the Bankruptcy Code and Disclosure Statement for the Amended Plan of Reorganization of Debtor Montco Offshore, Inc. and Amended Plan of Liquidation of Debtor Montco Oilfield Contractors, LLC Under Chapter 11 of the Bankruptcy Code* [Dkt. 778] (the "Boudreaux Declaration").

The Bankruptcy Court having:

- ordered, on December 12, 2017 at a hearing, the Debtors and certain parties in interest to attend a mediation to resolve outstanding issues related to the Chapter 11 Cases, and entered a written order to that effect on December 18, 2017 [Dkt. 718];

- approved on a conditional basis, on December 21, 2017 at a hearing and following the Bankruptcy Court-ordered mediation, the Disclosure Statement;

- set, pursuant to the Scheduling Order, January 11, 2018 at 4:00 p.m. (CT) as the deadline to file objections to the Disclosure Statement and/or to confirmation of the Plan;

- set, pursuant to the Scheduling Order, January 16, 2018 at 4:00 p.m. (CT) as the Voting Deadline;

- set the combined hearing for approval of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing" or the "Confirmation Hearing") for January 18, 2018 at 10:30 a.m. (CT);

- reviewed the Disclosure Statement, the Plan, the Voting Declaration, and all filed pleadings, exhibits, statements and comments regarding confirmation of the Plan ("Confirmation") and the record of these Chapter 11 Cases;

- reviewed the objections and statements filed in opposition to Confirmation, including, without limitation, those filed at Docket Nos. 760 to 765 (together, the "Objections"); and

- heard and considered the statements of counsel, all testimony and other evidence proffered and adduced at the Confirmation Hearing, and in respect of, Confirmation.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Combined Hearing, and the opportunity for any party in interest to object to Confirmation, was adequate and appropriate as to all parties in interest and other entities affected, benefitted or bound by or to be affected, benefitted or bound by the Plan and this Order and the transactions contemplated thereby; and upon consideration of and determining that the legal and factual bases set forth in the documents filed in support of Confirmation, the statements of counsel, and all other testimony and other evidence proffered, adduced, admitted into evidence and presented at the Combined Hearing, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.    Jurisdiction and Venue**

1.    <u>Jurisdiction and Core Proceeding (28 U.S.C. §157(b)(2))</u>.  The Bankruptcy Court has jurisdiction under 28 U.S.C. §1334 over the Chapter 11 Cases, the Debtors, all property of the Debtors' Estates and all parties that filed proofs of Claim or otherwise subjected themselves to the jurisdiction of the Bankruptcy Court, and to consider Confirmation of the Plan and all provisions thereof.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings under 28 U.S.C. §157(b)(2) that under the United States Constitution, the Bankruptcy Court may decide by final order and this Court has exclusive jurisdiction to determine whether the Disclosure Statement contains adequate information for purposes of section 1125 of the Bankruptcy Code and whether the Plan should be confirmed.

2.    <u>Venue (28 U.S.C. §§1408 and 1409)</u>.  Venue of the Chapter 11 Cases is proper pursuant to 28 U.S.C. §§1408 and 1409.

3.    Since the Petition Date, the Debtors have continued in possession of their properties and to manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

**B.    Judicial Notice**

4.    The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of the Bankruptcy Court (the "<u>Docket</u>"), including, without limitation, all pleadings, certifications, notices and other documents docketed, all orders entered, and the transcripts of, and all evidence and arguments made, admitted, proffered or adduced at, the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

**C.    Burden of Proof**

5.      The Debtors, as the proponents of the Plan, have met their burden of proof with respect to each element of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard respecting confirmation of a plan under chapter 11. The Bankruptcy Court also finds that the Debtors have satisfied the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**D.    Bankruptcy Rule 3016**

6.      The Plan is dated and identifies the Debtors submitting it, thereby satisfying Bankruptcy Rule 3016(a).   The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfies Bankruptcy Rule 3016(b).

**E.    Transmittal and Mailing of Solicitation Materials; Notice**

7.      As evidenced by the Solicitation Certificate, the Debtors complied with the service requirements and procedures approved in the Scheduling Order.   The Debtors have provided notice of the Confirmation Hearing and solicited ballots accepting or rejecting the Plan by timely transmitting the Amended Solicitation Package to all holders of Claims and Equity Interests, in accordance with the Scheduling Order, the Bankruptcy Code and the Bankruptcy Rules. The notices of the Confirmation Hearing are adequate and sufficient, and no other notice need be given.

**F.    Voting**

8.      Holders of Claims in Class 2 (First Lien Secured Claims), Class 3 (Other Secured Claims), and Class 4 (General Unsecured Claims) under the Plan are impaired and were entitled to vote to accept or reject the Plan.  Holders of Claims in Class 1 (DIP Facility Claims) and Class 5A (Equity Interests in MOI) are unimpaired and were deemed to accept the Plan.  Holders of

Claims in Class 5B (Equity Interests in MOC) are impaired and will receive no distribution under the Plan and, thus, were deemed to reject the Plan.

9.     On January 17, 2018, the Debtors' Claims Agent filed with the Bankruptcy Court the Voting Declaration [Dkt. 777] certifying the method and results of the ballot tabulation for Classes 2, 3, and 4.

10.     Following entry of the Scheduling Order, the Debtors and their respective directors, officers, agents, affiliates, representatives, attorneys and advisors solicited votes to accept or reject the Plan in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Scheduling Order and all other applicable statutes, rules, laws and regulations.

## G.     Voting Report

11.     As evidenced by the Voting Declaration, all ballots were properly tabulated. Pursuant to sections 1124 and 1126 of the Bankruptcy Code, each of Classes 2, 3, and 4, which are the only classes entitled to vote on the Plan, voted to accept the Plan, satisfying the standards required by section 1126(c) of the Bankruptcy Code.

## H.     Compliance With the Requirements of Section 1129 of the Bankruptcy Code[3]

12.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as set forth below:

    (a)     **Section 1129(a)(1):  Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

13.     The Plan complies with all applicable provisions of the Bankruptcy Code, including Bankruptcy Code sections 1122 and 1123.

---

[3]     The following Bankruptcy Code provisions are not applicable in these Chapter 11 Cases and, therefore, not addressed in this Order:  §§ 1129(a)(6), 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16).

(i)     **Section 1122, 1123(a)(1):  Proper Classification**

14.     Article III of the Plan classifies Claims and Equity Interests into six Classes of Claims and Equity Interests.  The respective Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in such Class, and such classifications were otherwise acceptable to each voting Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests designated by the Plan, and the creation of such Classes does not unfairly discriminate between holders of Claims and Equity Interests.  The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)     **Section 1123(a)(2)-(4):  Specified Treatment and No Discrimination**

15.     Article III, Section B of the Plan in accordance with section 1123(a)(2) of the Bankruptcy Code specifies that Claims in Class 1 (DIP Facility Claims) and Class 5A (Equity Interests in MOI) are not impaired under the Plan and in accordance with section 1123(a)(3) of the Bankruptcy Code that Claims in Class 2 (First Lien Secured Claims), Class 3 (Other Secured Claims), and Class 4 (General Unsecured Claims) are impaired and describes the treatment of the Allowed Claims in each such Class.  Further, Article III, Section B of the Plan further specifies that Claims in Class 5B (Equity Interests in MOC) are impaired, are not entitled to receive any distribution, and are deemed to reject the Plan.  As required by section 1123(a)(4) of the Bankruptcy Code, the treatment of each Claim or Equity Interest within a Class is the same as the treatment of each other Claim or Equity Interest in such Class, unless the holder of a Claim or Equity Interest agrees to less favorable treatment on account of its Allowed Claim or Allowed Equity Interest in such Class.

### (iii)   Section 1123(a)(5):  Adequate Means for Plan Implementation

16.     Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article IV of the Plan provides adequate and proper means for the Plan's implementation, including, without limitation, (a) the contribution and transfer by MOI of the MOI Contribution Assets to the Falcon JV; (b) entry by the Falcon USA Sub into the Exit Facility Documents; and (c) the establishment of the Liquidating Trust and the appointment of the Liquidating Trustee.

### (iv)   Section 1123(a)(6):  Non-Voting Equity Securities

17.     The Plan does not provide for the Debtors' issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

### (v)   Section 1123(a)(7):  Designation of Directors and Officers

18.     The Plan complies with section 1123(a)(7) of the Bankruptcy Code and the selection of the Liquidating Trustee is consistent with the interests of holders of Liquidating Trust Interests.

### (vi)   Section 1123(b)(1)-(2):   Impairment/Unimpairment of Classes of Claims and Equity Interests & Executory Contracts

19.     As described above, the Plan impairs certain Classes of Claims and Equity Interests, while leaving others unimpaired.   The Plan therefore modifies the rights of such holders of Claims and Equity Interests and leaves the rights of others unaffected.   In addition, Article VII of the Plan provides for the rejection of all executory contracts and unexpired leases to which the Debtors are parties, except as set forth therein.

### (vii)   Section 1123(b)(3):  Releases, Exculpation and Injunction Discharge

20.     <u>Releases</u>.  The releases of Claims and Causes of Action in favor of the Releasees, to the extent provided in the Plan and pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, are described in Article IX.B of the Plan.  Each of the Releasees has contributed significant value to the Debtors, the Plan, and the reorganization and liquidation efforts that warrant the releases.

Further, section 105(a) of the Bankruptcy Code permits approval of the releases set forth in the Plan and the related injunctions in the Plan and this Order, because, as has been established on the record in the Chapter 11 Cases and the evidence presented and admitted at the Confirmation Hearing, such provisions (a) are integral to the integrated and mutually dependent terms and conditions of the settlement embodied in the Plan and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (b) confer substantial benefits on the Debtors' Estates, (c) are fair, equitable, and reasonable, (d) are in the best interests of the Debtors, their Estates, and all parties in interest, and (e) with respect to the third-party releases, the ballots sent to all holders of Claims entitled to vote on the Plan, in each case, unambiguously stated that the Plan contains third-party releases and provided such holders of Claims with the opportunity to opt-out of such releases.

21.     <u>Exculpation</u>.  The exculpation set forth in Article IX.C of the Plan is an essential and integral provision of the Plan, and is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.

22.     Each of the releases and exculpation provisions set forth in the Plan, as approved, modified or limited, and as ordered and decreed by this Order:  (a) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§1334(a), 1334(b), and 1334(d); (b) are essential to the implementation of the Plan; (c) are an integrated and dependent element of the settlement and transactions incorporated into and contemplated by the Plan; (d) confer material benefits on, and are in the best interests of, the Debtors and their Estates; (e) are important to the overall objectives of the Plan to finally resolve all Claims and Causes of Action among or against the parties in interest in these Chapter 11 Cases; and (f) are consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code.  The record of the Confirmation

Hearing and the Chapter 11 Cases is sufficient to support the releases and exculpation provisions contained in Article IX of the Plan.

**(b)     Section 1129(a)(2):     Compliance by the Debtors With the Applicable Provisions of the Bankruptcy Code**

23.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2), including, without limitation, sections 1123, 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

24.     The Debtors are proper debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.  Furthermore, the solicitation of acceptances or rejections of the Plan: (a) complied with the Scheduling Order, which conditionally approved the Disclosure Statement; and (b) complied with all applicable laws, rules and regulations governing the adequacy of disclosure in connection with such solicitation.

25.     The Debtors, the Plan Sponsor, the Creditors' Committee and each of their respective Representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

**(c)     Section 1129(a)(3):  Proposal of the Plan in Good Faith**

26.     The Debtors proposed the Plan based upon extensive, arm's-length negotiations between and among the Debtors and parties in interest, including the First Lien Lenders, the DIP Lenders, the Creditors' Committee, holders of Other Secured Claims, and the Plan Sponsor, and proposed the Plan in good faith and not by any means forbidden by law, as required by section 1129(a)(3) of the Bankruptcy Code.  The Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases and the process leading to the formulation of the Plan and the Disclosure Statement.  The Chapter 11 Cases were filed, the

Debtors' assets were marketed, and the Plan was proposed, with the legitimate and good faith purpose of reorganizing MOI's Estate and liquidating MOC's Estate, and maximizing each Estate's value.

     (d)     **Section 1129(a)(4):   Bankruptcy Court Approval of Certain Payments Reasonable**

27.     The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, comply with section 1129(a)(4) of the Bankruptcy Code.   As a result, the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied.

     (e)     **Section 1129(a)(5): Disclosure and Identity of Proposed Management**

28.     The Plan complies with Bankruptcy Code section 1129(a)(5) by providing for the appointment of the Liquidating Trustee to administer the Liquidating Trust as of and after the Effective Date, and for the directors and executive officers of MOI who served immediately prior to the Effective Date, and as disclosed in the Plan Supplement, to serve as the directors and officers of the Reorganized Debtor.

     (f)     **Section 1129(a)(7): Best Interests of Creditors**

29.     Each entity that holds a Claim or Equity Interest in a class that is impaired under the Plan either:  (a) has accepted the Plan; or (b) as set forth in the Liquidation Analysis annexed as Exhibit B to the Disclosure Statement, will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the Entity would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  The methodology used and assumptions made in the Liquidation Analysis, as supplemented by the evidence proffered or adduced at the Confirmation Hearing or otherwise in the record of these Chapter 11 Cases, are

reasonable. As a result, the requirements of section 1129(a)(7) of the Bankruptcy Code have been satisfied.

(g)     **Section 1129(a)(8): Acceptance of the Plan by Each Impaired Class**

30.     As set forth in the Voting Declaration, Class 2 (First Lien Secured Claims), Class 3 (Other Secured Claims), and Class 4 (General Unsecured Claims) are impaired Classes entitled to vote on the Plan and each such Class voted to accept the Plan.

31.     Class 1 (DIP Facility Claims) and Class 5A (Equity Interests in MOI) are unimpaired and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

32.     Class 5B (Equity Interests in MOC) is impaired and will receive no distribution and, therefore, Class 5B is deemed to reject the Plan under section 1126(g) of the Bankruptcy Code.

33.     Because Class 5B is impaired and conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code, the Debtors sought Confirmation under section 1129(b), rather than section 1129(a), of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to Class 5B, the Bankruptcy Court finds the Plan is confirmable, because the Plan otherwise satisfies all elements of section 1129(a) of the Bankruptcy Code and does not discriminate unfairly and is fair and equitable with respect to Class 5B. All voting Classes, not including the votes of insiders, have voted to accept the Plan. As a result, the requirements of section 1129(b) of the Bankruptcy Code have been satisfied.

(h)     **Section 1129(a)(9): Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

34.     The treatment of Allowed Administrative Claims, Allowed Claims for Accrued Professional Compensation, and Allowed Priority Claims, respectively, under Article II of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

      (i)     **Section 1129(a)(10): Acceptance by at Least One Impaired Class**

35.    As set forth in the Voting Declaration and above, at least one impaired class, other than Class 5B, which was deemed to reject, voted to accept the Plan by the requisite majorities, determined without including the acceptance of the Plan by any insider. Accordingly, section 1129(a)(10) of the Bankruptcy Code is satisfied.

      (j)     **Section 1129(a)(11): Feasibility of the Plan**

36.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence proffered or adduced and admitted at the Confirmation Hearing demonstrates that the Debtors will have sufficient funds to satisfy their obligations under the Plan and confirmation of the Plan is not likely to be followed by the further reorganization or liquidation of the Debtors or any successor to the Debtors that is not otherwise contemplated by the Plan. As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

      (k)     **Section 1129(a)(12): Payment of Bankruptcy Fees**

37.    In accordance with section 1129(a)(12) of the Bankruptcy Code, Article XI.B of the Plan provides for the payment of all fees payable under 28 U.S.C. §1930(a). As a result, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

      (l)     **Section 1129(b): Confirmation of the Plan Over Nonacceptance of Impaired Classes**

38.    Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that not all impaired classes voted to accept the Plan. All classes of impaired Claims, other than Class 5B, which was deemed to reject, voted to accept the Plan.

39.    The requirements of section 1129(b)(2) of the Bankruptcy Code are satisfied with respect to Class 5B because there are no holders of Claims or Equity Interests that are junior to Class 5B that will receive or retain any property under the Plan, in respect of section 1129(b)(2)(C)(ii) of the Bankruptcy Code.

(m)   **Satisfaction of Confirmation Requirements**

40.     Based on the foregoing, the Plan and Plan Proponents satisfy the requirements for Confirmation set forth in section 1129(b) of the Bankruptcy Code and the Plan may be confirmed notwithstanding the deemed rejection by Class 5B (Equity Interests in MOC).

(n)   **Section 1129(c):  Only One Plan**

41.     Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases.  As a result, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

(o)   **Section 1129(d):  Principal Purpose of the Plan is Not the Avoidance of Taxes or Application of the Securities Law**

42.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).  As a result, the requirements of section 1129(d) of the Bankruptcy Code are satisfied.

I.     **Executory Contracts and Unexpired Leases**

43.     The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment and rejection of executory contracts and unexpired leases under the Plan.  The Debtors have exercised reasonable and sound business judgment in determining whether to assume, assume and sell and assign, or reject each of their executory contracts and unexpired leases, and such determination is in the best interests of the Debtors, their Estates, and all parties in interest in these Chapter 11 Cases.  Accordingly, the Plan satisfies the provisions of section 1123(b)(2) of the Bankruptcy Code.

<u>**ORDER**</u>

**IT IS SO ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

44.     **Combined Hearing**.  It was appropriate to hold the Combined Hearing on the Debtors' request for approval of the Disclosure Statement and Confirmation of the Plan under

sections 105(d)(2)(B)(vi) and 1125(g) of the Bankruptcy Code, and Bankruptcy Rule 3018(b), and notice of the Combined Hearing was appropriate and satisfactory and is approved in all respects.

45.     **Solicitation**.  The Amended Solicitation Package and solicitation thereof were appropriate and satisfactory and were in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.  The solicitation of the Plan is approved in all respects.

46.     **Ballots**.  The forms of ballots annexed to the Amended Solicitation Package Notice, as amended pursuant to the Court's instructions on the record of the hearing held on December 28, 2017, are adequate and appropriate, are in compliance with Bankruptcy Rule 3018(c), and are approved in all respects.  No other ballots are or were required.

47.     **Disclosure Statement**.  The Disclosure Statement contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and is approved in all respects.

48.     **Confirmation of the Plan**.  All requirements for Confirmation of the Plan have been satisfied.  The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan, including all Exhibits thereto and the Plan Supplement, each as may be modified in accordance with their terms, are incorporated by reference into and are an integral part of the Plan and this Order.

49.     **Further Technical Modifications to the Plan**.  Prior to the Effective Date, the Debtors may make additional appropriate technical adjustments and modifications to the Plan and documents contained in the Plan Supplement without further order or approval of the

Bankruptcy Court; *provided, that*, such technical adjustments and modifications shall be consistent with this Confirmation Order and shall be satisfactory to the Plan Sponsor.

50.     **Plan Supplement and Exhibits to the Plan**.  The documents contained in the Plan Supplement (including, without limitation, the Contribution Agreement and the exhibits thereto) and exhibits to the Plan and any amendments, modifications, and supplements to any such documents, and the execution, delivery, and performance thereof by the Debtors, and the terms and conditions of such documents, in each case, are authorized and approved in all respects.

51.     **Objections**.  To the extent that any Objections to Confirmation have not been resolved, withdrawn, waived or settled prior to entry of this Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on their merits.

52.     **Findings of Fact and Conclusions of Law**.   The findings of fact and the conclusions of law stated in this Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 Cases and this matter by Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

53.     **Provisions of Plan and Order Nonseverable and Mutually Dependent**.  The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

54.     **Record Closed**.  The record of the Confirmation Hearing is closed.

55.     **Plan Classification Controlling**.  The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the Distributions to be made thereunder.  The classifications set forth on the ballots tendered to or returned by the Debtors'

Creditors in connection with voting on the Plan: (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes; (c) may not be relied upon by any Creditor as representing the actual classification of such Claims under the Plan for distribution purposes; and (d) shall not bind the Debtors or their successors in interest.

56.  **MOI Contribution Assets**.  All persons that are currently in possession of some or all of the MOI Contribution Assets are hereby directed to surrender possession of such assets to the Falcon JV, or its wholly owned Subsidiary designee, pursuant to the terms and conditions of the Contribution Agreement as of the consummation of the transactions contemplated by the Contribution Agreement (the "Closing").  All persons are prohibited from taking any action to adversely affect or interfere with the Debtors' ability to transfer and contribute the MOI Contribution Assets to the Falcon JV in accordance with this Order and the Contribution Agreement.  If any person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person has with respect to the MOI Contribution Assets, then with regard to the MOI Contribution Assets (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person with respect to the MOI Contribution Assets, and (b) the Plan Sponsor is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, and other Encumbrances against the MOI Contribution Assets.  This Order is deemed to

be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county or local government agency, department or office.

57.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan.

58.     **Effectuation of the Plan**.  No action of the boards of directors, members or managers of either Debtor is necessary in order to authorize the Debtors to execute, deliver, file or record all documents and instruments, take all actions necessary or desirable to implement the Plan (including, without limitation, the Contribution Agreement and the other documents contained in the Plan Supplement and, in each case, the exhibits thereto) and this Order, and effect any other transactions contemplated therein or thereby.  To effectuate the Plan and such transactions, the officers or responsible representatives of the Debtors are authorized, without further notice or application to or order of the Bankruptcy Court, to execute, deliver, file or record such agreements or documents, and to take such other actions as any such individual may determine to be necessary or desirable to effectuate the Plan and such transactions, regardless of whether such actions or documents are specifically referred to in the Plan or this Order.  To the extent that, under applicable non-bankruptcy law, any of these actions otherwise would require

the consent or approval of the shareholders, boards of directors or managing member(s) of the Debtors, this Order constitutes such consent, approval and direction.

59.     **Activities in Anticipation of the Effective Date**.   The Debtors are hereby authorized and empowered to take all necessary steps, and pay all related expenses, in anticipation of the Effective Date, including, without limitation, the steps necessary to consummate the transactions contemplated by the Contribution Agreement.

60.     **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to be substantially consummated pursuant to sections 1101 and 1127(b) of the Bankruptcy Code.

61.     **Vesting of Assets in the Reorganized Debtor**.  Except as otherwise provided in the Plan or this Order, and except for any and all assets (whether tangible or intangible) or property (whether real or personal) intended to be, or that is, transferred to the Falcon JV or Falcon USA Sub or any of their subsidiaries pursuant to the terms and subject to the conditions of the Contribution Agreement or the Plan, all of MOI's rights, title and interests in all property of MOI's estate, whether it be real or personal, shall vest or revest in the Reorganized Debtor (a) free and clear of all Claims, Liens, and other Encumbrances, and other Equity Interests, and (b) subject to all rights of the Debtors under section 544 of the Bankruptcy Code as such rights existed during the pendency of the Chapter 11 Cases so that the Reorganized Debtor may assert any such rights.  From and after the Effective Date, the Reorganized Debtor may operate (or liquidate and wind up) its business and use, acquire, and dispose of property and settle and compromise claims or interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Order.  Without limiting the generality of the foregoing, the Reorganized Debtor may, without application to or approval by the Bankruptcy Court or any other person or party, pay professional fees and expenses that it incurs after the Effective Date.

To the extent that the retention by the Reorganized Debtor of assets held immediately prior to emergence in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Reorganized Debtor (a) is or shall be a legal, valid, and effective transfer of property, (b) vests or shall vest the Reorganized Debtor with good title to such property, free and clear of all Liens, Claims, charges, or other Encumbrances, except as expressly provided in the Plan or this Order, (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable non-bankruptcy law, and (d) does not and shall not subject the Reorganized Debtor to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including by laws affecting successor or transferee liability.

62.     **Liquidating Trustee**.  Drew McManigle of SierraConstellation Partners shall be appointed, and is hereby approved, as the Liquidating Trustee for the sole purpose of administering the Liquidating Trust pursuant to the terms and conditions provided in the Liquidating Trust Agreement, including without limitation, the duty and obligation to liquidate Liquidating Trust Assets, to make Distributions therefrom in accordance with the provisions of the Plan, and to pursue, settle or abandon any Liquidating Trust Causes of Action, all in accordance with the Liquidating Trust Agreement.  Following the Effective Date, the Liquidating Trustee is given full power of attorney and has the authority to execute and/or endorse any documentation on behalf of MOC in furtherance of the Plan and MOC's liquidation, including but not limited to, the filing of final tax returns and the dissolution of MOC.

63.     From and after the Effective Date, subject to the terms of the Plan and Liquidating Trust Agreement, the Liquidating Trustee may administer the Liquidating Trust and use, acquire, and dispose of property, and settle and compromise claims or interests, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or

Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Liquidating Trust Agreement and this Order. Without limiting the generality of the foregoing, the Liquidating Trustee may, without application to or approval by the Bankruptcy Court or any other person or party, pay professional fees and expenses that the Liquidating Trust incurs after the Effective Date. The transfer of any assets to the Liquidating Trust under the Plan (a) is or shall be a legal, valid, and effective transfer of property, (b) vests or shall vest the Liquidating Trust with good title to such property, free and clear of all Liens, Claims, charges, or other Encumbrances, except as expressly provided in the Plan or this Order, (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable non-bankruptcy law, and (d) does not and shall not subject the Liquidating Trustee or the Liquidating Trust to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including by laws affecting successor or transferee liability.

64.     **Liquidating Trust**. The Liquidating Trust Agreement, in substantially the form filed with the Plan Supplement, is hereby approved, and all of the Debtors' right, title and interest in the Liquidating Trust Assets shall be transferred to, and vest in, the Liquidating Trust on the Effective Date. The Liquidating Trustee shall have all the liabilities, duties, powers, rights, title, discretion and privileges designated in the Plan, this Order and in the Liquidating Trust Agreement. The Debtors and the Liquidating Trustee shall be, and hereby are, authorized to enter into the Liquidating Trust Agreement, in substantially the form filed with the Plan Supplement, and the terms of the Liquidating Trust Agreement are hereby incorporated in this Order by reference as if fully set forth in this Order. The Liquidating Trust is intended to be a "liquidating trust" (a) as such term is defined in Section 301.7701-4(d) of U.S. Treasury Regulations, and (b) in accordance with the requirements set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

65.    **Contribution of Assets**.  On the Effective Date, (a) MOI (or the Reorganized Debtor) will contribute and transfer the MOI Contribution Assets to the Falcon JV (a subset of which will then be contributed and transferred to Falcon USA Sub or Falcon JV's wholly owned subsidiary designee), and (b) the Plan Sponsor will contribute and transfer the Plan Sponsor Contribution Assets to the Falcon JV (a subset of which will then be contributed and transferred to Falcon USA Sub or Falcon JV's wholly owned subsidiary designee), in each case pursuant to the terms and conditions of the Contribution Agreement, entry into which by MOI (or the Reorganized Debtor) is authorized and approved by the Bankruptcy Court.  Except as otherwise expressly set forth in the Contribution Agreement or this Order, the MOI Contribution Assets and the Plan Sponsor Contribution Assets shall be contributed and transferred to the Falcon JV (and such contribution and transfer shall constitute a legal, valid, binding and effective contribution and transfer of all interests in such MOI Contribution Assets and Plan Sponsor Contribution Assets to the Falcon JV) free and clear of all Liens (including, without limitation, any Maritime Liens), Claims, charges, interests, rights of set off (except setoffs exercised prior to the Petition Date), netting and deductions, any derivative, transferee, vicarious, successor, or successor-in-interest liability theory, if any, to the fullest extent allowed by applicable law a (collectively, the "Encumbrances").  Upon the Closing, the Falcon JV or its subsidiary designee pursuant to the terms and conditions of the Contribution Agreement, as applicable, shall take title to and possession of the MOI Contribution Assets.  The contribution and transfer of each of the MOI Contribution Assets and the Plan Sponsor Contribution Assets to the Falcon JV shall be free and clear of all Encumbrances of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, including, but not limited to in respect of the following: (v) all Liens or security interests in or asserted against the MOI Contribution Assets, including, without limitation, any Maritime Liens; (w) any bulk, bulk transfer, sales or similar law; (x) any

tax statutes or ordinances, including without limitation the Internal Revenue Code of 1986, as amended; (y) any environmental liens or claims; and (z) any theories of derivative vicarious, transferee, successor, or successor-in-interest liability, to the fullest extent allowed by applicable law, except as otherwise set forth in this Order.  For the purposes of this Order, "Maritime Liens" means any and all maritime liens, including, without limitation, any liens or security interests asserted under the Commercial Instruments and Maritime Lien Act, 46 U.S.C. § 31342.

66.     Without limiting the foregoing, the sale and transfer of MOI Contribution Assets that are vessels (the "Vessels") to the Falcon JV, or its applicable subsidiary designee pursuant to the terms and conditions of the Contribution Agreement, will be a legal, valid, and effective transfer of the Vessels and will vest the Falcon JV, or its applicable subsidiary designee pursuant to the terms and conditions of the Contribution Agreement, with all right, title, and interest to the applicable Vessels free and clear of all Encumbrances arising from circumstances and conditions first existing on or prior to the simultaneous closing of the transaction contemplated by the Contribution Agreement, whether such Encumbrances are known or unknown, contingent or otherwise, whether arising prior or subsequent to the Closing, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to claims otherwise arising under doctrines of derivative vicarious, transferee, successor, or successor-in-interest liability.   The National Vessel Documentation Center is hereby ordered to erase, discharge, and deem satisfied any existing liens, mortgages, and encumbrances recorded or bearing against the Vessels.  The contribution and transfer of Vessels to the Falcon JV, or its applicable subsidiary designee, shall be deemed to be an admiralty sale, pursuant to 46 U.S.C. § 31326.

67.     **Exit Facility**.  The Exit Facility is an essential element of the Plan, is necessary for confirmation and consummation of the Plan, and is critical to the overall success and

feasibility of the Plan. Entry into the Exit Facility and the Exit Facility Documents is in the best interest of the Debtors, their Estates, and all holders of Claims or Interests. The Debtors and the Plan Sponsor have exercised reasonable business judgment in negotiating the terms of the Exit Facility Documents. The terms and conditions are fair and reasonable, and were negotiated in good faith and at arm's-length, and any credit extended pursuant to the Exit Facility shall be deemed to have been extended, made, issued, or made in good faith.

68.     On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents shall be legal, binding, and enforceable first priority Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, and shall be deemed automatically attached and perfected on the Effective Date of the Plan. Upon the granting of guarantees, mortgages, pledges, Liens and other security interests in accordance with the Exit Facility Documents, the guarantees, mortgages, pledges, Liens and other security interests granted to secure the obligations arising under the Exit Facility Documents shall be granted in good faith as an inducement to the First Lien Lenders to agree to the treatment in the Plan, shall be fully enforceable against the obligors under the Exit Facility Documents in accordance with their terms and shall be deemed not subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. From the Confirmation Date and continuing until the execution of the Exit Facility Documents, no Lien shall be permitted on any collateral securing the obligations arising under the Exit Facility or the Exit Facility Documents.

69.     **Treatment Is in Full Satisfaction**. Except as provided in the Plan or this Order or otherwise agreed in writing and approved by the Bankruptcy Court, the treatment set forth in

the Plan and the payments and Distributions to be made pursuant to the terms and subject to the conditions thereof shall be in full and complete satisfaction of all Claims released in the Plan and this Order.  Except as otherwise provided in the Plan or this Order, such treatment supersedes and replaces any agreements with or rights any Entity may have in or against the Debtors or their respective property.

70.     **Discharge of the Debtors and Cancellation of Existing Securities and Agreements**.  Except for purposes of evidencing a right to Distributions under the Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or rights of any holder of a Claim against either Debtor, and all Equity Interests in MOC, including, but not limited to, all indentures, notes, bonds and share certificates evidencing such Claims and Equity Interests, and any agreements or guarantees related thereto, shall be canceled, terminated, deemed null and void and satisfied, as against the Debtors (and in the case of Equity Interests, as against MOC) but not as against any other Person or Entity.

71.     **Non-Debtor Obligations**.  Anything in the Plan or this Order to the contrary notwithstanding, no promissory notes, loan agreements, instruments, security documents, mortgages, deeds of trust or other agreements to which any non-Debtor is a party (or that encumbers or affects their respective property), and no claim, right, remedy, lien, interest, liability or obligation arising thereunder shall be modified, affected, impaired, enjoined discharged, canceled or annulled, except as provided in paragraph 101 of this Order; *provided, however*, that the obligations of and Claims against the Debtors thereunder shall be as provided for in the Plan.

72.     **Releases, Exculpation, Injunction and Related Provisions Under the Plan**. The following release, exculpation, and injunction provisions set forth in Article IX of the Plan

are approved and authorized in their entirety, and such provisions are effective and binding on all parties and Entities to the extent provided therein:

### *Releases*

73.     ***Releases by the Debtors and the Estates*.**  Notwithstanding anything contained in the Plan to the contrary (except with respect to Causes of Action contributed and transferred to the Falcon JV or its subsidiary designee pursuant to the terms and conditions of the Contribution Agreement), as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation, the services of the Releasees in facilitating the expeditious implementation of the Plan and, with respect to certain of the Releasees, that payment contemplated under Section IV(L)(2) of the Plan, the Debtors hereby provide a full release to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtors) from any and all Causes of Action and any other debts (including any loans made by MOI to any of MOI's employees or other Representatives, or any such employees' or other Representatives' family members or trusts), obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including, without limitation, actions in connection with indebtedness for money borrowed by the Debtors, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that the Debtors would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtors or their Estates and further including those in any way related to the

Estates, the Chapter 11 Cases or the Plan; *provided, however*, that the foregoing provisions shall not operate to waive or release the Releasees from any obligation under the Plan or this Order, as applicable.  For the avoidance of doubt, upon the Effective Date, each Debtor provides a full release to the other on account of any Intercompany Claims owing to the other Debtor.

74.     ***Releases by Holders of Claims and Interests***. Notwithstanding anything contained in the Plan to the contrary (except with respect to Causes of Action contributed and transferred to the Falcon JV or its subsidiary designee pursuant to the terms and conditions of the Contribution Agreement), as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the holders of Claims against and interests in the Debtors and the Reorganized Debtor who voted to accept the Plan or who voted to reject the Plan and did not return a Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed to forever release, waive, and discharge each of the Releasees from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever in connection with or in any way relating to the Debtors, the conduct of the Debtors' businesses, the Chapter 11 Cases, the Disclosure Statement or the Plan (other than the rights of the Debtors, the Reorganized Debtor, or a Creditor holding an Allowed Claim to enforce the obligations under the Confirmation Order and the Plan and the contracts, instruments, releases, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; *provided, however*, that nothing in this paragraph shall operate as a release, waiver or discharge of any Causes of Action or liabilities arising out of willful misconduct, fraud or criminal acts of any such Releasee as determined by a Final Order;

*provided further* that, for good and valuable consideration and except as otherwise expressly set forth herein, each of the Releasees are deemed to have released all other Releasees hereunder.

75.     Entry of this Order constitutes the Bankruptcy Court's approval of the foregoing releases pursuant to Bankruptcy Rule 9019 and constitutes a finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all holders of Claims and Equity Interests; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Releasees asserting any Claim or Cause of Action thereby released.

### *Exculpation*

76.     Notwithstanding anything contained in the Plan to the contrary, the Releasees shall neither have nor incur any liability to any Entity for any Claims or Causes of Action arising on or after the Petition Date, including, without limitation, any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or Disclosure Statement or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Plan; *provided, however*, that the foregoing provisions of this paragraph shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; *provided, further*, that each Releasee shall be entitled to rely upon the advice of counsel concerning its duties; *provided, further*, that the foregoing provisions shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or any defenses thereto.

### *Injunction*

77.     Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors or the Reorganized Debtor or the Liquidating Trustee, their successors and assigns (including Falcon JV and Falcon USA Sub and their subsidiaries), and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or this Order.

78.     Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Debtors in Possession, the Estates, the Creditors' Committee, the Reorganized Debtor, the Liquidating Trustee, their successors and assigns (including Falcon JV and Falcon USA Sub and their subsidiaries) and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

79.     The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests of any nature whatsoever, against the Debtors or any of their assets or properties.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.  Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from: commencing or continuing in any manner any action or other proceeding of any kind against any

Debtor, the Reorganized Debtor, their successors and assigns (including, without limitation, Falcon JV and Falcon USA Sub and their subsidiaries) and their assets and properties; enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, the Reorganized Debtor, their successors and assigns (including, without limitation, Falcon JV and Falcon USA Sub and their subsidiaries) and their assets and properties; creating, perfecting or enforcing any encumbrance of any kind against any Debtor, the Reorganized Debtor or the property or estate of any Debtor or Reorganized Debtor; asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Debtor or against the property or estate of any Debtor or the Reorganized Debtor, except to the extent a right to setoff, recoupment or subrogation is asserted with respect to a timely filed proof of claim; or commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.

### *Release of Liens*

80.     Except as otherwise expressly provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estates, shall be deemed to be fully released and discharged, and all of the Debtors' rights, title and interests in such property shall be distributed or transferred in accordance with the Plan or this Order, as applicable.

81.     **Governmental Unit Limitations on Release**.  Nothing in this Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; or (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to

under applicable non-bankruptcy law on account of its status as the owner or operator of property after the Confirmation Date, nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence.

82.      **Exemption from Transfer Taxes and Recordation Fees**.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan or this Order shall not be subject to any stamp tax, transfer tax or other similar tax or governmental assessment in the United States.   The appropriate state or local governmental officials or agents, as applicable, shall forego the collection of any such tax or governmental assessment and accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

83.      **The Creditors' Committee**.  Upon the Effective Date, the Creditors' Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases.  The retention and employment of the Professionals retained by the Creditors' Committee shall terminate as of the Effective Date, *provided, however*, that the Creditors' Committee shall exist, and their Professionals shall be retained, after such date with respect to applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and motions seeking the enforcement of the provisions of the Plan or this Order or any appeals thereof.

84.      **Executory Contracts and Unexpired Leases**.  Other than as expressly provided herein, this Order constitutes the approval under sections 363 and 365 of the Bankruptcy Code of the deemed rejection of all Executory Contracts that exist between the Debtors and any Person or Entity as of immediately prior to the Confirmation Date, except for any Executory Contract or Unexpired Lease (i) that has been assumed or rejected pursuant to another order of the

Bankruptcy Court entered prior to the Effective Date, or (ii) as to which a motion or notice for approval of the assumption of such Executory Contract or Unexpired Lease has been filed and served prior to the Effective Date. Any Claims resulting from the rejection of Executory Contracts and Unexpired Leases, or the expiration or termination of any Executory Contract or Unexpired Lease after the entry of the Confirmation Order, but prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Liquidating Trustee and MOI (or the Reorganized Debtor, as applicable) no later than thirty (30) days after the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estate, the Reorganized Debtor, the Liquidating Trustee, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article IX.E of the Plan. Unless otherwise ordered by the Bankruptcy Court, any such Claim that is timely filed as provided herein shall be treated as a Class 4 Claim and shall be subject to the provisions of Article III.B of the Plan.

85. **Administrative Claims and Final Fee Applications**. The request for payment of an Administrative Claim will be timely filed only if it is actually received by the Bankruptcy Court, counsel to the Reorganized Debtor, and the Office of the United States Trustee for the Southern District of Texas by the first Business Day that is thirty (30) days after entry of this Order (the "Administrative Claims Bar Date"). Requests for payment of an Administrative Claim must include at a minimum: (a) the name of the holder of the Administrative Claim; (b) the amount of the Administrative Claim; (c) the basis of the Administrative Claim; and (d) all supporting documentation for the Administrative Claim. Requests for payment of Administrative Claims may not be delivered by facsimile, telecopy, or electronic mail

transmission. Notwithstanding anything to the contrary herein, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability, including interest thereon, described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code.

86.     Allowed Administrative Claims shall be paid in full by the Reorganized Debtor and the Liquidating Trust based on amounts allocable to each Debtor from Cash held by the Reorganized Debtor and Liquidating Trustee, as applicable; *provided, however*, that any Administrative Claim filed after the Administrative Claims Bar Date shall not be Allowed, unless the Liquidating Trust or the Reorganized Debtor, as applicable, and in their discretion, chooses to Allow such Administrative Claim.

87.     The deadline for submission by Professionals for Bankruptcy Court approval of Accrued Professional Compensation shall be forty five (45) days after the Effective Date (the "Professional Fee Claim Bar Date"). Any Professional or other Person or Entity that is required to file and serve a request for approval of Accrued Professional Compensation and fails to timely file and serve such request on or before such date shall be forever barred, estopped and enjoined from asserting such request or participating in Distributions under the Plan on account thereof. All Professionals employed by the Debtors or the Creditors' Committee shall provide to the Debtors an estimate of their Accrued Professional Compensation through the Effective Date (including an estimate for fees and expenses expected to be incurred after the Effective Date to prepare and prosecute allowance of final fee applications) before the Effective Date. Parties in interest shall have thirty (30) days from the Professional Fee Claim Bar Date to formally object to any such fee requests. The Bankruptcy Court shall hear and determine all applications for final allowances of compensation or reimbursement of expenses under sections 328, 330 or 503(b) of the Bankruptcy Code on a date to be determined by the Bankruptcy Court and as

mutually agreed upon by the relevant parties. Allowed Claims for Accrued Professional Compensation shall be paid in full, immediately upon allowance, from the Professional Fee Reserve to the extent of such reserve and, if insufficient funds remain in the reserve, by the Reorganized Debtor and/or the Liquidating Trustee based on amounts allocable to each Debtor from their respective Cash on hand and proceeds of Contributed AR.

88.     **Transfers of Claims After the Effective Date**. The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Effective Date. In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim filed with respect thereto or on the Schedules as the holder thereof and upon such other evidence or record of transfer or assignment that was known to the Debtors as of the Effective Date and is available to the Liquidating Trustee.

89.     **Exemption from Securities Laws**. Pursuant to Section 1145 of the Bankruptcy Code the offer, issuance, sale and transfer of any security in accordance with the Plan or this Order shall be exempt under section 5 of the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration for the offer, issuance, dissolution, or sale of a security. Any transfer of the beneficial interests in the Debtors shall be restricted as set forth in the Debtors' organizational documents and subject to the provisions of Section 1145 of the Bankruptcy Code relating to the definition of an underwriter in Section 2(11) of the Securities Act of 1933, as amended, and compliance with any applicable rules and regulations of the Securities and Exchange Commission.

90.     **Payment of Statutory Fees**. All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable. From and after the Effective Date, the Reorganized Debtor shall

be liable for and shall pay the fees under 28 U.S.C. § 1930 assessed against the MOI Estate under 28 U.S.C. § 1930 until entry of a Final Decree closing the case.   In addition, the Reorganized Debtor and/or the Liquidating Trustee shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines, until entry of an order closing or converting the case.   The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an administrative claim against the Debtors and their Estates.

91.   **References to Plan Provisions**.   The Plan is confirmed in its entirety and hereby incorporated into this Order by reference and as modified hereby.   The failure to reference or discuss any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of, or otherwise affect, the validity, binding effect and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect and enforceability as if fully set forth in this Order.

92.   **Headings**.   Headings utilized herein are for convenience and reference only, and shall not constitute a part of this Order for any other purpose.

93.   **Effect of Conflict Between Plan and Order**.   The provisions of the Plan, the Plan Supplement, any other Plan document and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each.   If there is any conflict between the terms of the Plan, the Plan Supplement any other Plan document on the one hand, and the terms of this Order on the other, the terms of this Order shall control solely to the extent of the conflict. If there is any conflict between the terms of the Plan on the one hand, and the Plan Supplement or any other Plan document on the other, the terms of the Plan shall control.

94. **Notice of Entry of Confirmation Order**. On or before the 14th day following the date of entry of this Order, the Debtors shall serve notice of entry of this Order in accordance with Bankruptcy Rules 2002 and 3020(c) on all holders of Claims and Equity Interests.

95. **Notice of Effective Date**. As soon as reasonably practicable, but in no event later than five (5) Business Days after the Effective Date, the Debtors, with the assistance of the Debtors' Claims Agent, shall serve a notice of the Effective Date on all holders of Claims and Equity Interests and all counterparties to executory contracts and unexpired leases. The notice of Effective Date shall include notice of (a) the bar date for filing rejection damage claims (or other claims for damages) arising from the rejection under the Plan of executory contracts and unexpired leases, which shall be thirty (30) days after service of notice of the Effective Date; (b) the bar date to file Administrative Claims; and (c) the last day for filing final applications or motions for professional fees and expenses, which shall be no later than forty five (45) days after the Effective Date.

96. **Final Order and Waiver of Stay**. This Order is a Final Order and judgment and the period in which an appeal must be filed shall commence upon the entry hereof. Notwithstanding the possible applicability of Bankruptcy Rule 3020(e), 6004(h), 7062, or 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry. If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan and this Order prior to the Debtors' receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all

respects by the provisions of this Order and the Plan and all related documents or any amendments or modifications thereto.

97.     **Authorization to Consummate**.  The Debtors are authorized to consummate the Plan and the transactions contemplated thereby (including, without limitation, the Contribution Agreement) at any time after the entry of this Order, subject to the satisfaction or waiver of the conditions precedent to the Effective Date set forth in Article VIII of the Plan.

98.     **Alliance Settlement Agreement**.  The Alliance Settlement Agreement, a true and correct copy of which is included in the Plan Supplement, and the transactions contemplated by the Alliance Settlement Agreement, are hereby authorized and approved in their entirety, and the Debtors are authorized to execute, deliver, file or record such agreements or documents, and to take such other actions as any such individual may determine to be necessary or desirable to effectuate the Alliance Settlement Agreement, regardless of whether such actions or documents are specifically referred to in the Plan or this Order.

99.     **Aqueos Corporation**.  Consistent with the Court's ruling on estimation of its claim and an agreement between the Debtors, the Creditors' Committee and Aqueos Corporation, Aqueos Corporation shall have an Allowed Other Secured Claim in the amount of $2,100,000.00.

100.     **Black Elk Adversary Proceeding**.  The Court hereby takes judicial notice of the Memorandum Opinion and Order (collectively the "Adversary Order") dated October 3, 2017, entered at Docket Nos. 146 and 147 in Adversary No. 17-03249.  Notwithstanding any other language in the Plan or this Confirmation Order, (i) nothing in the Plan or Confirmation Order shall affect or alter the Adversary Order and (ii) nothing in the Plan or Confirmation Order shall affect, impair, alter, release, discharge, or enjoin any claims, defenses, counterclaims, rights of setoff and recoupment, or other rights of any defendant or former defendant in Adversary No.

17-03249 that were asserted, may be asserted or could have been asserted in connection with Adversary No. 17-03249 against any Debtors or any asserted successor to the Debtors under the Plan. Notwithstanding anything contained in this Order or the Plan to the contrary, the Black Elk Litigation Trust and the Black Elk Liquidation Trust each elect not to grant the releases contained in Article IX of the Plan.

101. **Alta Mesa Holdings, LP, Cairn Energy USA, LLC and Furth Oil Company**. In compromise, settlement, and resolution of (i) MOC's *Motion of Debtor Montco Oilfield Contractors, LLC (A) Ordering the Turnover of Certain Undisputed Funds Due and Owing to the Debtor, (B) Authorizing the Debtor to Segregate and Escrow the Collected Funds, and (C) Granting Related Relief* [Dkt. 487] (the "Turnover Motion"), (ii) the response to the Turnover Motion [Dkt. 525] of Alta Mesa Holdings, LP and Cairn Energy USA, LLC (collectively, "Cairn"), (iii) Cairn's objection to the Plan and Disclosure Statement [Dkt. 760] (the "Cairn Objection"), (iv) Furth Oil Company's ("Furth") joinder to the Cairn Objection [Dkt. 763], and (v) the limited objection to the Plan and Disclosure Statement [Dkt. 765] filed by Thomas Energy Services, LLC, d/b/a Thomas Tools, LLC ("Thomas Energy"), Cairn, Furth, Thomas and the Debtors have agreed to resolve the disputed issues described in the above-referenced pleadings, as follows:

(a) **Settlement between Debtors and Cairn**. By this Order, the Court approves a settlement between the Debtors and Cairn, whereby Cairn shall pay MOC, within five (5) Business Days from the time this Order becomes a Final Order, the amount of $315,000 (which reflects a reduction of $21,364.74, as stipulated reasonable and necessary fees, costs and expenses of Cairn, as an interpleading stakeholder subjected to multiple claims against the subject funds), for amounts due and owing by Cairn to MOC in connection with MOC's decommissioning work performed at Galveston 343 ("GA 343") under the Black Elk Contract (as described in the Disclosure Statement), which funds shall be held in escrow by MOC and, if necessary, the Liquidating Trustee, until such time as any claims asserted against such funds in connection with GA 343 have been fully and finally resolved, pursuant to the procedures described below.

(b) **Settlement between Debtors and Furth**.  By this Order, the Court approves a settlement between the Debtors and Furth, whereby Furth shall pay MOC, within five (5) Business Days from the time this Order becomes a Final Order, the amount of $210,000 (which reflects a reduction of $8,446.38 as stipulated reasonable and necessary fees, costs and expenses of Cairn, as an interpleading stakeholder subjected to multiple claims against the subject funds), for amounts due and owing by Furth to MOC in connection with MOC's decommissioning work performed at South Timbalier 185A ("ST 185A") under the Black Elk Contract (as described in the Disclosure Statement), which funds shall be held in escrow by MOC and, if necessary, the Liquidating Trustee, until such time as any claims asserted against such funds in connection with ST 185A have been fully and finally resolved, pursuant to the procedures described below.

(c) **Release of Cairn and Furth**.  The settlement payments described above (the "Settlement Payments") reflect the agreed, full and final compromise amounts that each of Cairn and Furth shall pay to MOC, in exchange for the release and discharge of any and all claims that have been or could have been asserted by the Debtors or any third parties, including materials and mechanics lien creditors or other subcontractors, against Cairn and Furth, respectively, in connection with (i) as to any third party without notice, the Settlement Payments; and (ii) as to the Debtors and persons with notice of the confirmation hearing held on January 18, 2018, the Settlement Payments and any decommissioning work performed at GA 343 and ST 185A. Any person objecting to this Release must file an objection not later than 14 days after receipt of a copy of this Order.

(d) **Claims Against the Settlement Payments**.  Any person or entity that seeks to assert a claim against, and priority interest in, the escrowed Settlement Payments shall, not later than February 8, 2018, file a pleading with this Court (i) identifying the claimant party, (ii) identifying the amount claimed, and (iii) identifying the basis for which the claimant is entitled to payment specifically from the Settlement Payments. The Debtors or the Liquidating Trustee shall have fourteen (14) days to respond to any such pleading.  To the extent the parties are not able to resolve the dispute, if any, the Court shall set a date, mutually agreeable to the parties, for a hearing.  Upon resolution of all timely asserted disputes related to the Settlement Payments, the escrowed funds shall be released and paid (i) first to parties who the Court has determined hold a valid priority interest in the funds, and (ii) second to the Liquidating Trust, for distribution to creditors in accordance with the distribution scheme set forth in the Plan. For the avoidance of doubt, nothing in this paragraph shall waive or diminish the deadlines set forth in the *Notice of Chapter 11 Bankruptcy Case* [Dkt. 86] (the "Chapter 11 Notice"), nor shall this paragraph create, extend or expand the rights of any creditors in connection with such deadlines.

(e) **Thomas Energy**.  Thomas Energy Services, LLC d/b/a Thomas Tools, LLC ("Thomas Energy") asserts a claim against certain amounts which may be received by the Debtors in connection with the decommissioning of GA 343 and Galveston 424 ("GA 424").  On December 21, 2017, the Court approved that certain *Stipulation and Agreed Order Resolving Debtors' Objection to Claim*

*Filed by Thomas Energy Services, LLC d/b/a Thomas Tools, LLC* [Dkt. 727] (the "Thomas Energy Stipulation"). Nothing in this Order waives or diminishes the relief set forth in the Thomas Energy Stipulation. Within 7 days of receipt of payment, if any, in connection with decommissioning of the GA 343 and/or GA 424, the Debtors or the Liquidating Trustee, as applicable, shall notify Thomas or its counsel of the receipt of such payment.

102.     **Plan Sponsor Not a Successor to Debtors.**  The Plan Sponsor is not a successor to the Debtors under the Plan or otherwise.

103.     **Retention of Jurisdiction.**     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction over the matters set forth in Article X of the Plan.

Dated:     January 18, 2018
           Houston, Texas

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE