# **EXHIBIT A**

**Charter**

10348566v3

## MASTER TIME CHARTER AGREEMENT

THIS MASTER TIME CHARTER AGREEMENT (the "Agreement"), made by and between Offshore Specialty Fabricators, LLC, its affiliated, subsidiary and interrelated companies, hereinafter referred to as "OWNER", and Montco Oilfield Contractors, LLC, their affiliated, subsidiary, or interrelated companies, hereinafter collectively referred to as "CHARTERER":

### W I T N E S S E T H

WHEREAS, OWNER owns and operates two offshore derrick barges, the DB SWING THOMPSON (1320 ton derrick barge) and the DB WILLIAM KALLOP (1765 ton derrick barge) ; and

WHEREAS, from time to time, CHARTERER may require the services of OWNER'S derrick barges (hereinafter referred to as Vessel, whether one or more), for the purpose of performing vessel services for CHARTERER within the navigable waters of the Gulf of Mexico, or for such other purpose within such waters as CHARTERER may desire, it is hereby agreed that all services, will be performed under the following terms and conditions;

1. CHARTERER shall designate the vessel or vessels it desires from time to time to hire by notifying OWNER of particular vessel or particular size vessel desired, specifying the date that CHARTERER desires the vessel to be available, and the intended term of its use. OWNER shall indicate its willingness to furnish a particular vessel or particular size vessel by furnishing the vessel for CHARTERER's operations. OWNER agrees that the vessel will be available for CHARTERER's use, and if not available, will provide sixty (60) days written notice to CHARTERER that the vessel will not be available for CHARTERER's use during a particular time frame.

2. This agreement does not obligate CHARTERER to order or hire any vessel from OWNER, but it does obligate OWNER to accept such orders at a mutually agreed upon price. All applicable work orders shall govern all work to be performed by OWNER and shall define and govern all rights and obligations of the parties hereto for the duration of this Agreement. The Agreement is deemed to be in effect between CHARTERER and OWNER for any charter order regardless of the initiating agency of said work and /or service payment agency of work performed under that work order. At such time as CHARTERER desires to hire a vessel from OWNER, CHARTERER shall issue a Charter Order in the form annexed as Exhibit "A" hereto. Regardless of whether such Charter Order is issued, the terms and conditions of this Agreement shall control any charter of vessels by OWNER to CHARTERER.

3. OWNER agrees to furnish the services of said vessel from the place designated to such anchorage or place designated by CHARTERER, at which the vessel can safely lie afloat at all stages of the tide.

4. It is hereby warranted and agreed by OWNER that all vessels furnished by it shall be fully found and in a thoroughly efficient state in hull, equipment and machinery.

5. OWNER shall furnish, at its own cost and expense, a skillful and qualified crew sufficient to operate the Vessel and carry out CHARTERER's assignments properly, and with good seamanship and workmanlike performance. OWNER shall, at its own cost and expense, man, provide victuals for OWNER's crew, operate and supply any vessel chartered hereunder. OWNER shall comply with all State and Federal laws, regulations and executive orders concerning the operation, manning, etc., of Vessel; and shall keep in effect all licenses, documents, or permits, which are required in connection either with Vessel or crew thereof. Unless otherwise provided in the work order, CHARTERER shall furnish, or reimburse OWNER for the cost of, any fuel, oil, water, greases, meals, lodging, replacement cordage, assist tugs, or pilotage associated with the work to be performed hereunder, unless otherwise agreed in the charter order issued for the work being performed.

7. In performing the services contemplated herein, OWNER shall act as and be an independent contractor. CHARTERER shall designate the work or services it desires performed, and the ultimate results it desires OWNER to obtain, but shall leave to OWNER the method and details of performing such work or services, CHARTERER being interested only in the overall result obtained and having no control or supervision over or responsibility for the performance of such work or services, said control or supervision being retained solely and exclusively by OWNER.

8. Charter hire, at the rate set forth in Schedule "A", and as adjusted in writing from time to time, shall commence when Vessel departs to perform its assignment after being ordered by CHARTERER, provided that Vessel is then ready for orders under said assignment and is in all respects fit for the service for which chartered, and hire shall terminate on each hiring occasion when Vessel is released by CHARTERER in accordance with the terms of the applicable Charter Order, unless otherwise agreed upon and confirmed in writing.

Charter hire shall be suspended during all periods in excess of 24 hours per month that the chartered Vessel is mechanically unable to perform the services contemplated hereunder, unless such mechanical failure is caused by the sole fault of CHARTERER. Charter hire shall not be suspended during periods of inclement weather, nor during periods of deviation permitted under this Agreement. Charter hire shall be suspended during all periods whilst the vessel is under arrest and unavailable to CHARTERER, unless such arrest shall have been procured or occasioned by the acts of CHARTERER.

Charter hire shall be payable within thirty (30) days following receipt of invoices substantiated by CHARTERER for the service performed in the preceding month. OWNER shall attach such substantiating documents to its invoices as may be reasonably requested by CHARTERER. CHARTERER shall not have the right to withhold

payment or offset based upon any claim which CHARTERER may have against OWNER arising out of the services provided for hereunder.

If the vessel shall be deemed a constructive total loss, hire shall be paid up to and including the date the vessel was last seen or heard from.

9. CHARTERER shall not be liable to OWNER or to any other party for loss of, or damage to, Vessel, including loss of use, in any way connected with or related to the performance or the service or job herein contemplated including but not limited to those periods when Vessel is en route to or from any location or place for the performance of said services or jobs, and/or when Vessel is standing by. OWNER agrees to defend, indemnify, and hold CHARTERER harmless from and against any and all claims for loss, destruction, or damage, including loss of use, of any vessel chartered hereunder, regardless of whether such loss, destruction, or damage is caused by the sole and/or contributing fault, breach of warranty, strict liability, or negligence of CHARTERER, its agents, employees, or subcontractors.

OWNER agrees to protect, defend, indemnify and hold CHARTERER harmless from and against any and all claims and causes of action asserted by members of the crew and employees of OWNER and OWNER's agents and subcontractors on account of injuries suffered by, or death of such person or persons and damage to any property of such person or persons in any way resulting from or related to the operation of Vessel, or alleged unseaworthiness of vessel, and/or the acts or omissions of the Master or Crew of Vessel in any way related to the performance of any jobs or services contemplated herein, regardless of whether such death or injury is caused by the sole and/or contributing fault, strict liability, or negligence of CHARTERER, its agents, employees, or subcontractors.

CHARTERER agrees to protect, defend, indemnify and hold OWNER harmless from and against any and all claims and causes of action asserted by or on behalf of employees and agents of CHARTERER on account of injuries suffered by, or death of such person or persons and damage to the property of such person or persons in any way resulting from or related to the operations of Vessel, or alleged unseaworthiness of vessel, and/or the acts or omission of OWNER in any way related to the performance of any jobs or services contemplated herein, regardless of whether such death or injury is caused by the sole and/or contributing fault, strict liability, or negligence of OWNER, its agents, employees, or subcontractors.

CHARTERER shall use commercially reasonable efforts to procure from its other contractors a hold harmless and indemnity in favor of OWNER for loss of or damage to the property of such other contractors and for personal injury or death of the employees of such other contractors. If CHARTERER is unable to obtain such hold harmless and indemnity, it shall so advise OWNER prior to OWNER'S signing a Charter Order for work involving the customer.

OWNER shall report to CHARTERER immediately after their occurrence, all accidents or occurrences of whatever nature arising out of or in any way related to services performed in connection with this agreement which might give rise to a claim of any sort and shall furnish CHARTERER upon request with a copy of all reports concerning such accidents or occurrences made by or in the possession of OWNER and/or its insurer.

Excepting only damages caused by intentional breach of this Agreement or any agreed Charter Order, Neither OWNER nor CHARTERER shall be liable to the other for loss of use or other consequential damage, regardless of whether such loss of use or consequential damage is caused by the sole and/or contributing negligence, strict liability (including unseaworthiness), or other fault of OWNER, CHARTERER, or other persons.

10. OWNER shall procure the following insurance:

(1) Basic Workers' Compensation Policy, including coverage for Longshoremen's and Harbor Worker's Compensation Act and Outer Continental Shelf Lands Act with statutory limits.

(2) Employers' Liability, including coverage for Voluntary Compensation, Borrowed Servant/Alternate Employer Endorsement, and, to the extent not covered by the Protection and Indemnity Insurance described below, endorsed to cover Jones Act and Death on the High Seas Act liability, and to treat a claim in rem as a claim in personam, with limits of not less than $1,000,000.00 each accident.

(3) Comprehensive General Liability Insurance, with limits of $1,000,000 per occurrence, including endorsements for Broad Form Comprehensive General Liability, Broad Form Contractual Liability, Independent Contractor/Owners, and Products and Completed Operations; the watercraft exclusion shall be deleted unless liability and contractual liability insurance is afforded under the Protection and Indemnity Policies; said insurance shall be on a "claims arising" form.

(4) Comprehensive Automobile Liability Insurance covering all owned automobiles with a minimum combined single limits for bodily injury and property damage of $1,000,000.00 each occurrence.

(5) Hull and Machinery Insurance in the minimum amount of the full value of the Vessel, covering full Hull and Machinery insurances as per American Institute Hull Clauses (or equivalent), including full collision and if towage operations are contemplated, Tower's Liability (unless fully covered under Protection and Indemnity).

(6) Protection and Indemnity Insurance on Form SP-23 or equivalent, with minimum limits equal to $1,000,000.00, including full cargo coverage, coverage for liability to crew and employees of OWNER, and coverage for wreck removal.

4

(7) Excess Protection and Indemnity Insurance on a following form, including excess Collision and Tower's liability, with limits of not less than $19,000,000.00.

(8) Umbrella and/or following form excess liability insurance covering excess liabilities for Employer's Liability, Comprehensive General Liability, and Comprehensive Automobile Liability, with limits of not less than $19,000,000.00.

(9) Pollution Liability Insurance for any work performed that could accidentally cause the pollution of waters or the environment, said insurance to cover clean-up, fines, penalties, assessments, and third party liability risks in the minimum of $20,000,000.00 per occurrence.

(10) Contractual Liability Insurance, to the extent not afforded under the policies described above, with minimum limits of $20,000,000.00 insuring OWNER's defense and indemnity obligations under this agreement.

In the Hull and Machinery and Protection and Indemnity policies described herein, OWNER shall name CHARTERER, its affiliates, subsidiaries, and each of their officers, directs, employees, and any vessel towed hereunder and its owners and operators, as Additional Assureds and waive subrogation against such Additional Assureds, but such naming and waiving shall only apply with respect to the obligations and risk assumed by OWNER in this Agreement. CHARTERER shall only be considered an additional insured in OWNER's policies and subrogation waived against CHARTERER in those policies with respect to claims for which OWNER has agreed to defend and indemnify CHARTERER hereunder.

11. OWNER further shall keep, in accordance with good marine practice, maintain and make available at CHARTERER's request all logs, daily reports, records, or other documents pertaining to any vessel used or operated pursuant to this Agreement.

12. This agreement shall be effective from the date hereof and continue in force until either party gives ___180___ days written notice of termination in writing to the other by mail (whether by regular post, registered, certified or electronic), and shall automatically apply to the hiring and assignment, during the term hereof, of any and all vessel(s) by CHARTERER from or through OWNER.

13. This agreement is to be considered as having been executed in the State of Louisiana, and is to be governed by the General Maritime Law of the United States.

14. No officer, employee or other representative of OWNER shall have authority to waive or modify any of the provisions hereof. Any modifications, if agreed upon, can only be by written agreement executed by a duly authorized officer of CHARTERER and representative of OWNER.

15. It is expressly understood that CHARTERER shall be without authority to create or incur any maritime lien against any vessel chartered hereunder, and shall

5

defend, indemnify, and hold OWNER harmless from and against any lien arising against any vessel chartered hereunder by the acts of CHARTERER.

16. Nothing hereunder shall be construed to create a personal contract nor to deny either party of any rights it may have to seek limitation from or exoneration of liability pursuant the Shipping Laws of the United States or any other nation.

17. Nothing herein shall be deemed to create a demise or bareboat charter of any vessel hired hereunder.

18. OWNER shall be responsible for and pay any local, state, or federal income taxes associated with the payments made to OWNER pursuant to this Agreement. CHARTERER shall be responsible for the payment of any sales taxes due with respect to items furnished by CHARTERER pursuant to this Agreement.

19. OWNER agrees to abide by Executive Order 11246 regarding Equal Employment Opportunity. OWNER further agrees to make available a copy of its Drug-Free Workplace Policy to CHARTERER, and represents that its policy is at least as stringent as that of CHARTERER.

20. CHARTERER shall not have the right to subcharter or assign this Master Time Charter without the express written consent of OWNER.

21. Any vessel chartered hereunder shall have the right to deviate, without reduction in hire, for the purpose of saving life and/or property. All salvage or towage paid as a consequence of salvage efforts shall be divided, after awards to the master and members of the crew, 50% to OWNER, and 50% to CHARTERER.

22. OWNER agrees that it shall be responsible to pay all brokerage commissions that may be due as a result of said Charter agreement directly to the broker, and upon request, shall furnish evidence of said payments to CHARTERER.

23. This Master Time Charter, together with the conditions of any charter order issued in connection herewith, shall constitute the entire agreement of the parties. This Agreement supersedes all prior agreements and understandings between the parties, whether oral or written.

24. Should any provision of this Agreement or any charter order issued hereunder be declared in contravention of law, unenforceable, or invalid, such declaration shall not have the effect of voiding any other term and condition of this Agreement.

25. The addresses of the parties for the purpose of notices hereunder are:

| OWNER: | CHARTERER: |
|---|---|
| Offshore Specialty Fabricators, LLC<br>115 Menard Road<br>Houma, Louisiana 70363 | Montco Oilfield Contractors, LLC<br>842 W. Sam Houston Pkwy. Suite 500<br>Houston, Texas 77024 |
| Attention: Steve Williams | Attention: Carroll Price |

[Signature Page Follows]

Executed this 2nd day of June, 2016.

OFFSHORE SPECIALTY FABRICATORS, LLC

BY: _____
Steve Williams, CEO

MONTCO OILFIELD CONTRACTORS, LLC

BY: _____
Carroll Price, President

8