

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
07/15/2020

| | | |
|---|---|---|
| IN RE: | § | |
| **MONTCO OFFSHORE, INC.**, *et al* | § | **CASE NO: 17-31646** |
| | § | |
| **MONTCO OILFIELD CONTRACTORS,** | § | **CASE NO: 17-31647** |
| **LLC** | § | |
| | § | **Jointly Administered Order** |
| Debtor(s) | § | |
| | § | **CHAPTER  11** |

## MEMORANDUM OPINION

On March 17, 2017, both Montco Oilfield Contractors, LLC and Montco Offshore, Inc. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

On July 28, 2017, Offshore Specialty Fabricators, LLC, filed Proofs of Claim Nos. 213 and 214.  Through Proof of Claim No. 213, Offshore Specialty Fabricators asserted two claims against both Montco Oilfield Contractors, and Montco Offshore, Inc.—one claim for alleged unpaid invoices totaling $9,622,888.21, and a contingent claim for "any and all amounts awarded against" Offshore Specialty Fabricators pursuant to Adversary Proceeding No. 17-03248. Offshore Specialty Fabricators premised Montco Offshore, Inc.'s liability on the argument that Montco Offshore was bound through agency principles to a Charter Agreement between Montco Oilfield Contractors and Offshore Specialty Fabricators, even though Montco Offshore was not a signatory to the Agreement, in light of the Charter's reference to "affiliated or interrelated companies."

Offshore Specialty Fabricators' Proof of Claim No. 214, similar to Claim No. 213, rested on the basis of two separate claims, but allocated the liability differently.  In contrast to Claim No. 214, Claim No. 213 asserted claims solely against Montco Offshore, Inc.—a $9,622,888.21

claim pursuant to alleged unpaid invoices and contingent claims "for all amounts awarded against OSF" in certain Louisiana district court lawsuits.

On December 6, 2019, Drew McManigle, the Liquidating Trustee, filed a motion for summary judgment, seeking disallowance of Proof of Claim No. 213 against Montco Offshore and a reduction of Proof of Claim No. 214 against Montco Oilfield from $11,363,024.16 to $11,080,763.29.  (ECF No. 1057 at 1).

For the reasons set forth below, the Court grants summary judgment in favor of Drew McManigle, the Liquidating Trustee.

### Background[1]

On June 2, 2016, Montco Oilfield Contractors, Inc. ("MOC") entered into a Master Time Charter Agreement ("Charter") with Offshore Specialty Fabricators, LLC ("OSF").  (ECF No. 1043 at 4).  The opening provision of the Charter, which contains language at issue before the Court, provides as follows:

> THIS MASTER TIME CHARTER AGREEMENT (the "Agreement"), made by and between Offshore Specialty Fabricators, LLC, its affiliated, subsidiary and interrelated companies, hereinafter referred to as "OWNER", and Montco Oilfield Contractors, LLC, *their affiliated, subsidiary, or interrelated companies*, hereinafter collectively referred to as "CHARTERER". . . .

(ECF No. 1057-1 at 2) (emphasis added).  Pursuant to the Charter, "MOC was granted the use of OSF's derrick barges"—the *William Kallop* and the *Swing Thompson*.  (ECF No. 1057 at 3).  In accordance with the Charter language, both the *William Kallop* and the *Swing Thompson* were to be used "for the purpose of performing vessel services for" Montco Oilfield Contractors, Inc. and "their affiliated, subsidiary, or interrelated companies . . . within the navigable waters of the Gulf of Mexico, or for such purpose within such waters as [MOC] may desire."  (ECF No. 1057-1 at

---

[1] A substantial portion of this background section was written in reliance on the parties' briefing.  It is included solely for background.  The statements in this background section do not constitute findings by the Court.

2).  The parties do not dispute that the Charter was an agreement between, and only signed by OSF and MOC.  (ECF No. 1057-1 at 9 (noting that the Charter was signed by the CEO of OSF, Steve Williams, and the President of MOC, Carroll Price)).  Rather, the issue before the Court is whether the words "their affiliated, subsidiary, or interrelated companies" bound Montco Offshore, Inc ("MOI"), a nonsignatory to the Charter, thereby also making MOI liable under such Agreement.

On March 17, 2017, both Montco Oilfield Contractors, LLC and Montco Offshore, Inc. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  (Case No. 17-31646; *see* ECF No 1; Case No. 17-316467; *see* ECF No 1).  On March 17, 2017, this Court entered an order directing the joint administration of MOI and MOC's chapter 11 cases.  (*See* ECF No. 14 at 1).

On May 16, 2017, Montco Oilfield Contractors initiated an adversary proceeding against Offshore Specialty Fabricators, LLC, *et al.*[2] for the purpose of enabling "it to perform its obligations under its prepetition agreement effective as of February 8, 2016 . . . with Black Elk Energy Offshore Operations, LLC . . . ."  (Case No. 17-03248; *see* ECF No. 1).  Thereafter, on June 6, 2017, MOC filed a notice voluntarily dismissing all claims against Offshore Specialty Fabricators, LLC, *et al.* without prejudice.  (Case No. 17-03248; *see* ECF No. 35); *see also* (ECF No. 1043 at 4 ("Neither the Debtors nor the Liquidating Trustee has refiled a similar complaint against [OSF]")).

---

[2] The Defendants in that adversary proceeding included Alliance Energy Services, LLC, Alliance Special Venture Funds, LLC, Bayou Black Electric Supply, LLC, Spartan Industrial Products, LLC, Morgan City Rentals, Delta Rigging & Tools, Inc., Central Dispatch, Inc., DHD Offshore Services, LLC, Viral Investments, LLC, Work Boat Electric Services, LLC, Smith Marine Towing Corporation, Versabar, Inc, Crosby Tugs, LLC, Encore Food Services, LLC, and DeepCor Marine, Inc.  (Case No. 17-03248; ECF No. 1 at 1–2).

On July 28, 2017, Offshore Specialty Fabricators, LLC, filed Proof of Claim No. 213 asserting a general unsecured claim against MOI in the amount of $9,622,888.21. (ECF Nos. 1043 at 4; *see* 1049 at 4 (admitting the Liquidating Trustee's allegation)). Along with Claim No. 213, OSF included an attachment, which provided that OSF was asserting two claims against *both* MOI and MOC—one claim for alleged unpaid invoices totaling $9,622,888.21, and a contingent claim for "any and all amounts awarded against OSF in *Montco Oilfield Contractors, LLC v. Offshore Specialty Fabricators, LLC, et. al.* Adversary Proceeding No. 17-3248, pending with this Court." (ECF No. 1043 at 4).

Offshore Specialty Fabricators also filed Proof of Claim No. 214 on July 28, 2017. (*See* ECF Nos. 1043 at 4; 1049 at 4 (admitting the Liquidating Trustee's allegation)). Through Claim No. 214, OSF asserted a $11,363,024.16 general unsecured claim solely against MOC. (ECF No. 1043 at 4). OSF's Claim No. 214, similar to Claim No. 213, rested on the basis of two separate claims, but allocated liability differently. In contrast to Claim No. 214, Claim No. 213 asserted a $9,622,888.21 in alleged unpaid invoices solely against MOC, and contingent claims (also as against MOC only) "for all amounts awarded against OSF" in certain Louisiana district court lawsuits. (*See* ECF No. 1043 at 4–5 (listing lawsuits filed "in the United States District Court for the Eastern District of Louisiana", which were: "(i) Case No. 17-CV-5724; (ii) Case No. 17-CV-1595; and (iii) Case No. 17-CV-2179")).[3]

---

[3] On November 17, 2017, the Louisiana district court administratively closed all cases, which had previously been consolidated, in light this Court's Order:

> On November 9, 2017, Judge Isgur signed an order approving the sale and bidding procedures in connection with the sale of OSF's assets, approving the form and manner of notice, scheduling the auction and sale hearing, authorizing procedures governing assumption and assignment of certain executory contracts and unexpired leases, and granting related relief. The parties have notified the District Court that the issues currently pending in this Court have been resolved by the Bankruptcy Court in the Southern District of Texas.

On October 1, 2017, Offshore Specialty Fabricators filed a voluntary petition under Chapter 11 of the Bankruptcy Code. (Case No. 17-35623; *see* ECF No. 1).

On November 2, 2017, Drew McManigle was designated to serve as Liquidating Trustee under the plans proposed for both Montco Oilfield Contractors and Montco Offshore, Inc. (*See* ECF No. 543-3 at 1). Subsequently, on January 18, 2018, this Court entered an ordered confirming Montco Offshore, Inc's Amended Plan of Reorganization and Montco Oilfield Contractors' Amended Plan of Liquidation (the "Confirmation Order")[4]. (ECF No. 1043 at 6).

Thereafter, on June 19, 2019, Drew McManigle, as the Liquidating Trustee of the Liquidating Trust for the estate of Montco Oilfield Contractors, LLC filed an objection to Offshore Specialty Fabricators' Proofs of Claim Nos. 213 and 214. (*See* ECF No. 1043). In his objection McManigle requests that the Court disallow Proof of Claim No. 213 in its entirety and reduce Claim No. 214 to $11,080,763.29. (ECF No. 1043 at 7). McManigle's objections are premised on the following: (i) MOI was not a signatory to the Charter Agreement between MOC and OSF, meriting disallowance of Claim No. 213; (ii) certain claims were reduced by payment, meriting a reduction of Claim No. 214; and (iii) alternatively, the $9,622,88.21 claim, which is based upon alleged unpaid invoices, asserted against both MOI and MOC, is duplicative in light of the MOI's and MOC's consolidated estates. (ECF No. 1043 at 6–7).

On July 19, 2019, David Weinhoffer, in his capacity as the Liquidating Trustee of the OSF Trust, filed a response to the McManigle's objection. (*See* ECF No. 1049 at 1). OSF agrees that Claim No. 214 should be reduced to $11,080.763.29 in light of the fact that "the indemnification claim has since been liquidated." (ECF No. 1049 at 2). OSF, however, contests

---

(ECF No. 1043 at 5).

[4] McManigle claims that under MOI's Amended Plan of Reorganization and MOC's Liquidation Plan, the classes of general unsecured claims were consolidated for distribution purposes. (ECF No. 1043 at 2).

McManigle's other two objections.  (*See* ECF No. 1049).  OSF asserts that MOI, although not a signatory to the Charter, is bound where MOC signed on behalf of "their affiliated, subsidiary, or interrelated companies" as set forth in the Charter's opening provision.  (ECF No. 1049 at 2). Accordingly, both MOC and MOI are "responsible for satisfying the payment obligations in the Charter."  (ECF No. 1049 at 2).  Moreover, OSF also argues that Claim No. 213 and Claim No. 214 are not duplicative where "the Montco Plan" did not substantively consolidate MOC's and MOI's estates.  (ECF No. 1049 at 2–3).

On December 6, 2019, McManigle filed a motion for summary judgment, seeking disallowance of Proof of Claim No. 213, and a reduction of Proof Claim No. 214 to $11,080,763.39, based on OSF's own concession that Claim No. 214 should be reduced.  (*See* ECF No. 1057 at 1–2).  McManigle contests OSF's argument that MOI could be bound to the Charter solely through the Charter's reference to "interrelated companies."  (ECF No. 1057 at 4). Specifically, McManigle notes that MOC's and MOI's separate corporateness, which exists and is recognized under Louisiana law, precludes such finding.  (ECF No. 1057 at 5 ("Under Louisiana law, '[t]he mere fact that two corporations are affiliated in some way (e.g. parent-subsidiary) does not mean that a contract with one of those corporations is a contract with the other.'" (citations omitted))).  Therefore, McManigle contends that he is entitled to summary judgment disallowing Proof of Claim No. 213 in its entirety in light of the fact that MOI is not bound by the Charter where: (i) MOI was not a signatory to the Charter Agreement; and (ii) the Charter's opening language referring to MOC's "affiliated, subsidiary, or interrelated companies" cannot on its own bind MOI to the Charter Agreement.  (ECF No. 1057 at 5 ("The fact that MOC entered into the Charter with OSF cannot bind MOI, as its parent, for the debts of its subsidiary")).

On January 10, 2020, OSF filed a response to McManigle's motion for summary judgment.  (*See* ECF No. 1060).  OSF contends that summary judgment is not appropriate where "an unresolved factual issue regarding whether MOC had the authority to bind MOI to the Charter" exists.  (ECF No. 1060 at 2).  Specifically, OSF, citing agency principles, argues that in signing "the Charter in its individual capacity and on behalf of its 'affiliated, subsidiary, or interrelated companies'" MOC *may have had* authority, "whether actual or apparent, to bind its other affiliated and interrelated companies, including MOI, to the Charter."  (ECF No. 1060 at 2).

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bank P. 7056 incorporates Fed. R. Civ. P. 56 in adversary proceedings.  A party seeking summary judgment must demonstrate the absence of genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder in favor of the non-moving party.  *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d. Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in light most favorable to the non-moving party at all times. *Plumhoff v. Rickard*, 572 U.S. 765 768 (2014). Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusion allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enter., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

## Analysis

On December 6, 2019, Drew McManigle, as the Liquidating Trustee of the Liquidating Trust for the estate of Montco Oilfield Contractors, LLC filed a motion for summary judgment, seeking disallowance of Proof of Claim No. 213, and a reduction of Proof Claim No. 214 to $11,080,763.39.  (*See* ECF No. 1057 at 1–2).

*Claim No. 214*

In light of OSF's own concession that "Claim No. 2014 against MOC should be reduced to $11,080,763.29", such claim shall be reduced the amount agreed by the parties.  (ECF No. 1049 at 2).

*Claim No. 213*

As noted above, MOC entered into the Master Time Charter Agreement with OSF on June 2, 2016.  (ECF No. 1043 at 4).  The opening provision of the Charter, which contains the language currently at issue before the Court, provides as follows:

> THIS MASTER TIME CHARTER AGREEMENT (the "Agreement"), made by and between Offshore Specialty Fabricators, LLC, its affiliated, subsidiary and interrelated companies, hereinafter referred to as "OWNER", and Montco Oilfield Contractors, LLC, *their affiliated, subsidiary, or interrelated companies*, hereinafter collectively referred to as "CHARTERER". . . .

(ECF No. 1057-1 at 2) (emphasis added).  Pursuant to the Charter, "MOC was granted the use of OSF's derrick barges"—the *William Kallop* and the *Swing Thompson*.  (ECF No. 1057 at 3).  In accordance with the Charter language both the *William Kallop* and the *Swing Thompson* to be used "for the purpose of performing vessel services for" MOC, their affiliated, subsidiary, or interrelated companies, "within the navigable waters of the Gulf of Mexico, or for such purpose within such waters as [MOC] may desire."  (ECF No. 1057-1 at 2).

MOI was not a signatory to the Charter.  OSF does not "dispute that MOC is a wholly owned subsidiary of MOI."  (*See* ECF No. 1060 at 1).  Rather, OSF, relying on the Charter's Preamble, argues that MOC signed the Charter on behalf of itself *and* on behalf of its "affiliated, subsidiary, or interrelated companies;" which includes and therefore binds MOI to the Charter, making both corporations liable for any and all payment obligations under the Agreement.  (ECF No. 1060 at 3).  Specifically, OSF claims that although not a signatory to the Charter, MOI is

bound by agency principles.  (ECF No. 1060 at 3–4).  Therefore, OSF maintains that summary judgment is inappropriate where "there *could be* actual or apparent authority for MOC to bind MOI to the Charter."  (ECF No. 1060 at 4) (emphasis added).

"In Louisiana, corporations are generally recognized as separate legal entities."  *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility*, 872 So.2d 1147, 1155 (La. App. 1st Cir.).  Under Louisiana principles, therefore, McManigle argues that, as a nonsignatory, MOI cannot be bound to the Charter, where it is a separate legal entity from MOC, who is a party to the Agreement along with OSF.  (ECF No. 1057 at 4 ("[T]he only entities that executed the Charter were MOC and OSF.")).  Although OSF is correct that Louisiana law recognizes corporate separateness, "[t]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."  *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631 (2009) (internal quotations omitted) (citations omitted); *see Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2nd Cir. 1995) ("Traditional principles of agency law may bind a nonsignatory to an arbitration agreement.").  Notably, the Fifth Circuit has held that "[o]rdinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so."  *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003).

The parties have not cited, and the Court has not found, a case applying Louisiana law which presents a similar issue than the one before the Court.  Therefore, the Court will look to outside courts to determine whether summary judgment is appropriate in this instance.  Moreover, most of the case law, which looks to ordinary principles of contract law in

determining whether a nonsignatory is bound by an agreement, does so in reference to arbitration clauses.

Although the Fifth Circuit has held that there are instances in which agency principles or "traditional principles of state law" such as piercing the corporate veil, allow for a nonparty to be bound by an agreement, OSF does not even purport to have any basis for its allegation that the signature by an officer of MOC could bind MOI in the proof of claim that it filed.  The Court does not doubt that such a possibility could exist in a theoretical sense, but there is no indication that it exists here.

*Single Business Entity*

"In Louisiana, corporations are generally recognized as separate entities."  *Grayson v. R.B. Ammon and Assoc., Inc.*, 778 So. 2d 1, 14 (La. App. 1st Cir.) (citing *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257 (La. App. 1st Cir.), *writ. denied*, 580 S.2d 668 (La. 1991)).  "[T]he legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled so as to make it merely an instrumentality or adjunct of another corporation."  *Id*. "If one corporation is wholly under the control of another the fact that it is a separate entity does not relieve the dominant corporation from liability."  *Id.*  "In such instance, the former corporation is merely an alter ego or business conduit of the dominant corporation."  *Id*.  "Thus, when supposedly separate corporations are operated under a single business enterprise courts may pierce the corporate veil to reach the dominant corporation."  *Id*; *see Thomson-CSF, S.A.*, 64 F.3d at 777 ("In some instances, the corporate relationship between a parent and its subsidiary are sufficiently close as to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other.").  In determining whether a group of entities constitutes a single enterprise, certain factors similar to the factors used in "piercing the corporate veil"

cases should be utilized." *Grayson*, 778 So. 2d at 14 (citations omitted); *see Holly & Smith Architects, Inc.* 872 So. 2d at 1155 (listing factors considered in determining whether to pierce the corporate veil). Moreover, "courts will pierce the corporate veil 'in two broad situations: to prevent fraud or other wrong, or where a parent dominates or controls a subsidiary.'" *Thomson-CSF, S.A.*, 64 F.3d at 777; *see Brown v. Auto. Cas. Ins. Co.*, 644 So. 2d 723, 727 (La. App. 1st Cir.) ("Upon finding that a group of affiliated corporations constitute a 'single business enterprise,' the court may disregard the concept of corporate separateness and extend liability to each of the affiliated corporations to prevent fraud or to achieve equity.").

OSF has not set forth any allegations of fraud or control, nor has OSF cited or referenced any evidence on the record, using the single business enterprise factors, which would indicate that the Court should ignore the corporate separateness of both corporations.

*Agency*

OSF, however, maintains that by virtue of the corporation's relationship, MOC as the wholly owned subsidiary of MOI, may bind MOI to the Charter using the Charter's language along with agency principles. Specifically, OSF argues that MOC signed the Charter on behalf of itself *and* on behalf of its "affiliated, subsidiary, or interrelated companies" as noted in the preamble, which bound MOI to the Charter, making both MOI and MOC "responsible for satisfying the payment obligations in the Charter." (ECF No. 1060 at 3). Similar to the issue of corporate separateness above, OSF has not pointed to any evidence—other than the Charter's opening provision—or made any other allegations, which would demonstrate that MOI is bound to the Charter through agency principles. That MOI and MOC have a parent-subsidiary relationship alone does not suffice to show or create a genuine issue of material fact, precluding summary judgment.

"A mere parent-subsidiary relationship does not create the relation of principal and agent or alter ego between the two." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005); *see Thomson-CSF, S.A.* 64 F.3d at 777 ("As a general matter, however, a corporate relationship alone is not sufficient to bind a nonsignatory to an arbitration agreement."). "Generally, an 'affiliate' is defined as a '[c]ompany effectively controlled by another company. A branch, division or subsidiary . . . Corporations which are related parent and subsidiary, characterized by identify of ownership of capital stock.'" *Almaria v. Telcor Intern Inc.,* 920 F. Supp. 658, 673 (D. M.D. 1996) (citing BLACK'S LAW DICTIONARY 58 (6th ed. 1990)). "Agency principles have been held to permit nonsignatory corporations to compel under arbitration clauses signed by their corporate parents, subsidiaries, or affiliates, at least when the allegations against the nonsignatory corporation do not differ substantially from those against its signatory affiliate." *Farfan v. SSC Carmichael Operating Co., L.P.*, No. 18-cv-01472-HSG, 2019 WL 415577, at *5 (N.D. Cal. Feb. 1, 2019) (citations omitted). In holding that there was an agency relationship "sufficient to allow the non-signatory Defendants" to enforce the agreements, the *Farfan* court noted:

> Here, Plaintiffs allege that all Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single entity and/or joint employer for purposes of the instant action. Plaintiffs allegations against each Defendant are identical, and Plaintiffs allege that at all relevant times each Defendant was the officer, director, employee, agent, representative, alter ego, joint employer, co-employer, or co-conspirator of each of the other Defendants.

*Farfan*, 2019 WL 415577, at *5 (internal quotations omitted).

As noted above, OSF has not cited any evidence or made any other allegations referencing MOI and MOC's relationship, such that agency principles could be used to bind MOI to the Charter. Rather, OSF contends that summary judgment is not appropriate where "an

unresolved factual issue regarding whether MOC had the authority to bind MOI to the Charter" exists.  (ECF No. 1060 at 2).  Specifically, OSF, citing agency principles, argues that in signing "the Charter in its individual capacity and on behalf of its 'affiliated, subsidiary, or interrelated companies'" MOC *may have had* authority, "whether actual or apparent, to bind its other affiliated and interrelated companies, including MOI, to the Charter."  (ECF No. 1060 at 2). OSF's argument that MOI and MOC's relationship alone creates a genuine issue of material fact, because there *could have existed* actual or apparent authority to bind MOI to the agreement, without more, fails.

McManigle is entitled to summary judgment disallowing of Proof of Claim No. 213. (*See* ECF No. 1057 at 1–2).

### Conclusion

The Court will issue an order consistent with the Memorandum Opinion.

SIGNED **July 15, 2020.**

_____

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE